# EXHIBIT B
## to Notice of Removal

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Edward D. Reiskin, in his official capacity as the Director of
Transportation [ADDITIONAL PARTIES FORM IS ATTACHED]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

James Smith

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco Superior Court

400 McAllister St.
San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):*
**CPF-18-516045**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Claire Johnson Raba BAY AREA LEGAL AID 1800 Market St. 3rd Fl. San Francisco, CA 94102

DATE:
*(Fecha)* FEB 1 3 2018 DEPUTY CLERK Clerk, by _____, Deputy
*(Secretario)* *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

| SHORT TITLE: Smith v. Reiskin et al. | CASE NUMBER: CPF-18-516045 |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** (*Check only one box. Use a separate page for each type of party.*):

| | Plaintiff | ✓ | Defendant | | Cross-Complainant | | Cross-Defendant |

of the San Francisco Municipal Transit Authority; the SAN FRANCISCO MUNICIPAL TRANSIT AUTHORITY; TEGSCO LLC dba SAN FRANCISCO AUTORETURN; DOES 1-10, inclusive.

Page _____ of _____

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1  Claire Johnson Raba SBN 271691
   Rebekah Evenson SBN 207825
2  BAY AREA LEGAL AID
   1035 Market Street, 6th Floor
3  San Francisco, CA 94103
   Telephone: (415) 982-1300
4  Fax: (415) 982-4243
   cjohnson@baylegal.org
5  revenson@baylegal.org

6  Elisa Della-Piana SBN 226462
   Jude Pond SBN 299229
7  LAWYERS' COMMITTEE FOR CIVIL RIGHTS
   131 Steuart Street, Ste. 400
8  San Francisco, CA 94105
   Telephone: (415) 543-9444
9  Fax: (415) 543-0296
   edellapiana@lccr.com
10 jpond@lccr.com

11

12 ATTORNEYS FOR PETITIONER
   James Smith

13

14        SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
                        UNLIMITED CIVIL JURISDICTION
15

16

17 JAMES SMITH,

18 Petitioner and Plaintiff,                 **CPF-18-516045**

19 v.                                        Case No. _____

20 EDWARD D. REISKIN in his official         **Verified Complaint and Petition**
   capacity as the Director of Transportation of  **for Writ of Mandate**
21 the San Francisco Municipal Transit       **Cal. Code Civ. Proc § 1094.5, § 1085**
   Authority; the SAN FRANCISCO
22 MUNICIPAL TRANSIT AUTHORITY;              **Jury Trial Demanded**
   TEGSCO LLC dba SAN FRANCISCO
23 AUTO RETURN; DOES 1-10, inclusive,

24

25 Respondents and Defendants.

26

27

28

FILED
Superior Court of California
County of San Francisco

FEB 13 2018

CLERK OF THE COURT
BY: _____
Deputy Clerk

BOWMAN LIU

                 VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
                                         1

## I.    INTRODUCTION

1.   This action challenges: (1) Defendants/Respondents' tow and impoundment, without notice, of Plaintiff/Petitioner James Smith's safely parked vehicle, in violation of the Fourth and Fourteenth Amendments; (2) Respondents' policy and practice of seizing vehicles without notice where there is no community caretaking rationale; and (3) Respondents' policy and practice of towing vehicles without notice and without a reasonable opportunity to be heard from vehicle owners who cannot afford to pay parking tickets.

2.   San Francisco Municipal Transit Authority ("SFMTA") is a municipal agency responsible for ground transportation in San Francisco, California, including towing vehicles as ordered by SFMTA's Enforcement Division or the San Francisco Police Department.

3.   Mr. Smith is a 64-year-old disabled resident of San Francisco. After losing his housing in November 2017, he was sleeping in his vehicle, a 2007 Honda Accord, until it was towed by Respondents.

4.   SFMTA ordered Mr. Smith's car towed under Vehicle Code section 22651(i) to coerce payment on several outstanding parking citations, none of which was more than three months overdue at the time of the tow. SFMTA did not provide Mr. Smith notice that the car would be towed, nor a meaningful opportunity to resolve the citations before tow.

5.   As a result of this tow and his inability to pay the fees, Mr. Smith has experienced total deprivation of his only asset and shelter.

6.   Towing a vehicle constitutes a seizure under the Fourth Amendment to the United States Constitution and under the California Constitution Article 1, Section 13. Exceptions to the warrant requirement for seizures are limited, and even statutorily authorized tows must comply with constitutional requirements. This tow did not.

7.   Mr. Smith was deprived of his property without the procedural due process protections required by the Fourteenth Amendment and by Article 1, Section 7 of

1    the California Constitution, because he did not receive notice or an opportunity to
2    be heard before SFMTA ordered his car towed. Additionally, Mr. Smith was denied
3    a meaningful opportunity to be heard after the tow when the SFMTA hearing
4    officer would not allow Mr. Smith a meaningful opportunity to confront the
5    evidence against him, and declined to consider any evidence or legal authority
6    beyond the fact of past-due parking citations. As a result, Mr. Smith's vehicle is
7    scheduled to be sold on or after February 14, 2018.

8.   Respondents also violated the Due Process and Equal Protection clauses of the
     California and federal constitutions, by towing and depriving Mr. Smith of his car
     as punishment for Mr. Smith's failure to pay parking citations, even though Mr.
     Smith cannot afford to pay the full cost of the citations or the tow and storage fees.

9.   Mr. Smith seeks an order of administrative mandate under CCP § 1094.5
     overturning the SFMTA hearing decision and immediately returning the
     impounded vehicle to him at no cost.

10.  Mr. Smith seeks a temporary restraining order to stop the sale of his vehicle and
     return his vehicle and a peremptory writ of mandate pursuant to CCP § 1085
     directing Respondents to comply with their legal duties under the United States and
     California Constitutions.

11.  Mr. Smith requests injunctive relief under 42 U.S.C. section 1983, to prevent
     Respondents from continuing to hold his vehicle and to stop other unconstitutional
     tows.

12.  Finally, Mr. Smith asks the Court to award damages for the harm caused by loss of
     his vehicle.

## II.    THE PARTIES

13.  Plaintiff/Petitioner JAMES SMITH is a 64-year-old disabled resident of San
     Francisco, California. Prior to the agency decisions that are the subject of this
     petition, Mr. Smith lived in his now-towed vehicle in San Francisco.

14. Defendant/Respondent EDWARD D. REISKIN is the Director of Transportation of the SFMTA and is responsible for managing SFMTA and its vehicle tows in accordance with the law. Respondent is sued in his official capacity as the municipal official responsible for ensuring that the SFMTA and its agents act in conformity with federal and state law.

15. Defendant/Respondent SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY ("SFMTA" or "Respondent") is the municipal agency responsible for ensuring lawful administration of vehicle tows and impounds within the City of San Francisco.

16. Defendant/Real party in interest TEGSCO, LLC dba SAN FRANCISCO AUTORETURN ("AutoReturn") is the exclusive provider of all tow-related services for the City and County of San Francisco. AutoReturn carried out the tow of Mr. Smith's Car, continues to maintain possession of Mr. Smith's Car, and plans to sell Mr. Smith's Car at auction on or after February 14, 2018.

17. AutoReturn has contracted with San Francisco to provide dispatch, towing, impound management and vehicle disposal services to the City and County of San Francisco since 2004. In 2015, AutoReturn was awarded the San Francisco contract for a five-year term beginning on April 1, 2016. Mandate lies against AutoReturn because serves a city function by performing city-ordered tow and storage services as part of the City's enforcement of local and state laws. *See Anchor Pacifica Mgmt. Co. v. Green*, 205 Cal. App. 4th 232, 244 (2012) (holding that private landlord was taking state action for purposes of constitutional analysis because landlord's administration of city-subsidized housing was "subject to City oversight and approval"); *City of King City v. Community Bank of Central California*, 131 Cal. App. 4th 913, 927 (2005) ("[M]andate will sometimes lie against a private person to compel performance of a duty.").

18. The true names and capacities, whether individuals, corporate, associate, or otherwise, of DOES 1 through 10 are unknown to Mr. Smith, who therefore sue

these Respondents by such fictitious names. Mr. Smith is informed and believes, and based upon such information and belief, alleges that at all times material herein, each of the Doe Respondents was an agent or employee of one or more of the named Respondents, and was acting within the course and scope of said agency or employment. Mr. Smith is further informed and believes, and based thereon alleges, that each of the Doe Respondents is legally responsible in some manner for the occurrences herein alleged. All allegations in this Petition that refer to the named Respondents refer in like manner to those Respondents identified as Respondents DOES 1-10, inclusive. Mr. Smith will amend this Petition to allege the true names and capacities of the Doe Respondents when the same have been ascertained.

## III.  LEGAL FRAMEWORK

### A.  Reasonableness Under the Fourth Amendment to the United States Constitution and Article I, Section 13 of the California Constitution

19.  The Fourth Amendment to the United States Constitution bars "unreasonable searches and seizures" of a person's property. U.S. Const. amend. IV.

20.  Article I, Section 13 of the California Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches may not be violated," a provision that provides at least as much protection as does the Fourth Amendment. *See People v. Brisendine*, 13 Cal. 3d 528, 548-52 (1975), *abrogated on other grounds as discussed in In re Lance W.*, 37 Cal. 3d 873, 879 (1985).

21.  A seizure "occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

22.  Impounding a vehicle constitutes a seizure within the meaning of the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005).

23. Warrantless seizures are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993).

24. No exception to the Fourth Amendment's warrant requirement permits warrantless vehicle tows for the purpose of satisfying a municipal debt.

25. The only warrant exception relevant to vehicle impoundment is for "community caretaking." *Miranda*, 429 F.3d at 862.

26. The community caretaking exception permits warrantless towing "only to impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017); *see also South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

27. A tow conducted under the community caretaking doctrine must be reasonably related to furthering one of these caretaking purposes to be valid. *Miranda*, 429 F.3d at 863 (noting that the U.S. Supreme Court "has limited the discretion of the impounding officer and has taken a more finely tuned approach to determining reasonableness under the Fourth Amendment").

28. Legal violations such as parking citations are not relevant to justify the constitutionality of a tow under the community caretaking doctrine. *Miranda*, 429 F.3d at 864.

29. An officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers. *Miranda*, 429 F.3d at 866; *accord United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996) ("The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets.").

30. "The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale." *Miranda*, 429 F.3d at 866.

31. California Vehicle Code 22651(i) provides that an officer "may remove" a vehicle if "it is known that the vehicle has been issued five or more notices of parking violations…."

32. However, a local statute authorizing impoundment "does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment, as applied to the states by the Fourteenth Amendment." *Miranda*, 429 F.3d at 864; *see also United States v. Cervantes*, 703 F.3d 1135, 1142 (9th Cir. 2012); *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1029 (9th Cir. 2012) ("Violation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property. Were it otherwise, the government could seize and destroy any illegally parked car or unlawfully unattended dog without implicating the Fourth Amendment.").

**B. Procedural Due Process Under the Fourteenth Amendment and Article 1, Section 7 of the California Constitution**

33. A state cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

34. "A person may not be deprived of life, liberty, or property without due process of law." Cal. Const. art. I, § 7.

35. The U.S. Supreme Court has determined that the process due depends on "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

36. Generally, these *Mathews v. Eldridge* factors are interpreted in the vehicle tow context to require notice before the tow and the opportunity for a meaningful hearing within two days of an owner's request after the tow. *See Clement v. City of*

1  *Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008) (pre-tow notice generally required);

2  *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1325 (9th Cir. 1982) (post-tow

3  hearing required within forty-eight hours of a request).

4  37.  Under the California Constitution, there is a fourth element of the analysis: "the

5  dignitary interest in informing individuals of the nature, grounds and consequences

6  of the action and in enabling them to present their side of the story before a

7  responsible governmental official." *People v. Ramirez*, 25 Cal. 3d 260, 269 (1979).

8  **a.  Notice**

9  38.  Under the Fourteenth Amendment, "the government may not take property like a

10  thief in the night; rather, it must announce its intentions and give the property

11  owner a chance to argue against the taking." *Clement*, 518 F.3d at 1093 (requiring

12  the government to present "strong justification" for not providing notice to a

13  vehicle owner prior to a non-emergency tow because "removal of an automobile is

14  a big deal" that disrupts an individual's life, imposes significant retrieval costs, and

15  can create anxiety at the unexplained loss of a vehicle).

16  39.  Pre-deprivation notice has been required in the context of tows unless there is "an

17  emergency, []or if notice would defeat the entire point of the seizure, []or when the

18  interest at stake is small relative to the burden that giving notice would impose."

19  *Clement*, 518 F.3d at 1093-94. The use of one's automobile is a significant interest

20  compared to the small burden of notice. *Id.* at 1094; *Scofield*, 862 F.2d at 762 ("The

21  uninterrupted use of one's vehicle [on public roads] is a significant and substantial

22  private interest.").

23  **b.  Post-Tow Hearing**

24  40.  "The fundamental requirement of due process is the opportunity to be heard 'at a

25  meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting

26  *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

27

28

41. An agency violates a vehicle owner's post-tow due process rights if it adopts a policy of not offering hearings or not conducting those hearings in a meaningful time and manner. *Scofield*, 862 F.2d at 765.

42. In addition, an agency violates a vehicle owner's post-tow due process right to a meaningful hearing if there is no opportunity to examine the evidence on which the hearing officer relies or to confront the towing officer. *See Mathews*, 424 U.S. at 335. The Supreme Court has taken for granted that a City must bring the officer who ordered the tow to the administrative tow hearing. *City of Los Angeles v. David*, 538 U.S. 715, 718 (2003) (noting that "the city has to contact the towing officer and arrange for his appearance") in detailing the administrative steps required for tow hearings).

43. For a hearing to be meaningful, an agency should give notice of the criteria that will determine the administrative decision. *Anderson v. Superior Court*, 213 Cal. App. 3d 1321, 1330 (1989). Further, an agency must permit presentation of all relevant claims as required in order to exhaust the administrative remedy. *See Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917, 933 (2004) (exhaustion requires agency decision of "entire controversy"); *Bleeck v. State Bd. of Optometry* 18 Cal. App. 3d 415, 432 (1971) (exhaustion requires "a full presentation to the administrative agency upon all issues of the case and at all prescribed stages of the administrative proceedings").

## C. Due Process and Equal Protection Under the Fourteenth Amendment

44. Using the principles of both Due Process and Equal Protection, the Supreme Court has held it is "fundamentally unfair" to punish indigent individuals for their inability to pay fines and fees. *See Bearden v. Georgia*, 461 U.S. 660, 668–69 (1983) (holding that it is unconstitutional to revoke probation for failure to pay a fine); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956) (holding that it is fundamentally unfair to deny access to an appeal solely because of inability to pay court costs).

45. The *Bearden* analysis requires that an ability-to-pay determination be part of the pre-punishment process, and requires the consideration of alternatives to punishment. *Bearden*, 461 U.S. at 674 (finding punishment unconstitutional because it was imposed "simply because [the person] could not pay the fine, without considering the reasons for the inability to pay or the propriety of reducing the fine or extending the time for payments or making alternative orders....").

## D. Trespass to Chattels/Conversion

46. Trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1565 (1996).

47. Alleging that a vehicle has been towed and held for a prolonged time in storage with exorbitant tow and storage fees is sufficient to state a claim for trespass to chattels. *Garcia v. City of King*, 2017 WL 5194519, at *9 (N.D. Cal. Nov. 9, 2017).

48. Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015).

49. The wrongful act in question need not be in bad faith to be the basis of a conversion claim; intent is not relevant. *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014) (finding that in deciding a conversion claim, "questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial").

## IV. FACTUAL ALLEGATIONS

50. Mr. Smith is a 64-year-old disabled man. He has lived his whole life in San Francisco, and became homeless for the first time in October 2017.

51. Mr. Smith accrued several parking tickets during fall 2017 when his disability largely immobilized him and he could not leave his apartment to move his car. He

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE

| | |
|---|---|
| 1 | asked his caretaker to move his car for street sweeping, and report any parking |
| 2 | tickets to Mr. Smith. Only after his car was towed did Mr. Smith learn that the |
| 3 | caretaker had failed to do this multiple times. |
| 4 | 52. When Mr. Smith was forced to move out of his apartment in October 2017, he lived |
| 5 | and slept in his vehicle until it was towed on December 28, 2017. |
| 6 | **A.  The Tow** |
| 7 | |
| 8 | 53. Mr. Smith's vehicle was towed from 1125 Hyde Street in San Francisco. |
| 9 | 54. At the time of the tow, Mr. Smith's vehicle, a 2007 Honda Accord, was fully |
| 10 | operational, insured, and had current registration. |
| 11 | 55. At the time of the tow, Mr. Smith had displayed a valid disability parking placard |
| 12 | in the front window of his car. |
| 13 | 56. Mr. Smith did not receive any notice that the car was going to be towed. |
| 14 | 57. After his car was towed, Mr. Smith believed it had been stolen, and only learned it |
| 15 | had been towed after the police suggested calling AutoReturn. |
| 16 | 58. Mr. Smith called AutoReturn to find out how to reclaim his car, and was told he |
| 17 | had to pay both $2848 in citation fees and $2061 in tow and storage fees before his |
| 18 | vehicle would be released. |
| 19 | 59. Each day that Mr. Smith has been unable to pay, the fees have increased by at least |
| 20 | $71 per day. |
| 21 | 60. Mr. Smith's only income is Social Security Disability Insurance (SSDI), from |
| 22 | which he receives $1140 a month. |
| 23 | 61. At the time his car was towed, Mr. Smith could not afford to pay $4904—more |
| 24 | than four times his monthly income—in fines and fees. |
| 25 | 62. The tow inventory that Mr. Smith later obtained said that his car was towed |
| 26 | because he was a "scofflaw," citing a law that gives enforcement agencies the |
| 27 | discretion to tow a vehicle with more than five delinquent parking tickets. |
| 28 | |

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE

63. Mr. Smith's car was not impeding traffic, was not disabled, and there was no public safety or traffic related exigency that required that SFMTA order Mr. Smith's car towed without providing notice.

64. Mr. Smith is aware of no attempts SFMTA made to collect the parking ticket debt beyond mailed notices, which Mr. Smith received for some but not all of the citations. At the time the car was towed, the oldest parking citation was less than three months overdue.

65. Now the car has been held for 46 days as a result of Mr. Smith's inability to pay, and the total owed in tow and storage fees is over $3700.

66. The daily rate for storage at AutoReturn's San Francisco facility is $71. AutoReturn's San Francisco storage lot is at 450 7th Street. The daily rate for other parking lots in that same neighborhood is approximately $30.

67. When Mr. Smith attempted to get his car back, the AutoReturn employee did not inform Mr. Smith about his right to a tow hearing.

68. The AutoReturn employee did not inform Mr. Smith that there was a discounted tow fee for those who can prove their indigency.

69. According to SFMTA's website, the low-income fee reduction only takes $180 off the total amount owed in tow and storage fees. Even with the low-income reduction, Mr. Smith would not have been able to afford to pay the full amount required to retrieve his vehicle.

70. SFMTA maintains a policy of not providing pre-tow notice to vehicle owners. This policy was confirmed by the hearing officer, speaking for the agency, at Mr. Smith's tow hearing. Ex. A, Tow Hearing Tr. at p. 8, lines 12-16.

71. AutoReturn maintains a policy of not providing pre-tow notice to vehicle owners.

72. By ordering the tow, SFMTA incurred the cost of paying its contractor AutoReturn to tow and store Mr. Smith's vehicle.

73. SFMTA pays a yearly flat rate fee to AutoReturn per their contract. Additionally, for each car towed, SFMTA must reimburse AutoReturn $66.55 for a tow fee,

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE

11

1    $40.63 for a dolly/flatbed fee, $31.05 for a transfer fee when stored cars are moved,
2    and, once a vehicle is sold, SFMTA pays $15.42 for a lien sale fee, and $73.59 for
3    an auction fee. The City must pay these fees even if the tow is later found invalid.
4    The City therefore has a financial incentive to find tows valid. If the legal basis for
5    the tow is upheld, the owner of the vehicle has to pay an amount that is higher than
6    the City's fee, or forfeit the vehicle to lien sale that profits AutoReturn and
7    SFMTA.

8  74.  To obtain the return of his car, Mr. Smith, would have to pay $6825.50 (as of
9        February 9, 2018). If he does not pay this entire sum immediately, Mr. Smith's car
10       is scheduled to be sold on February 14, 2018.

11   **B.    The Tow Hearing**
12

13  75.  After searching for a lawyer, Mr. Smith was eventually referred to Lawyers'
14       Committee for Civil Rights.

15  76.  Between January 11 and January 17, Mr. Smith, through counsel, attempted to
16       arrange for an alternative way to resolve the parking and towing fines and fees
17       other than paying the full amount up front.

18  77.  When the appeal for an alternative fee arrangement failed, Mr. Smith, through
19       counsel, attempted to request a hearing to contest the tow on January 17, 2018 via
20       phone call to SFMTA.

21  78.  Mr. Smith's counsel called SFMTA as directed by a disclaimer on the tow hearing
22       scheduling website to call SFMTA immediately if unable to pay to retrieve vehicle.

23  79.  Counsel was unable to speak with an SFMTA employee at that time.

24  80.  Mr. Smith's counsel was told via phone call on January 18, 2018, that it was not
25       necessary to schedule a tow hearing in advance, and that Mr. Smith should appear
26       at the SFMTA office instead.

27
28

81. Mr. Smith, through counsel, requested copies of all evidence to be used against him in the tow hearing. The SFMTA tow hearing desk employee stated that he had to appear in person in order to obtain evidence to be relied on at the tow hearing.

82. Mr. Smith's counsel called the SFMTA tow hearing desk on January 19, 2018 at approximately 10:45 AM, again requesting copies of all evidence to be used against him in the tow hearing.

83. SFMTA tow hearing employee Carol Alexander emailed a copy of the tow inventory to Mr. Smith's counsel at 10:48 AM on January 19, 2018.

84. Mr. Smith appeared at SFMTA's office at 11 South Van Ness Ave on January 19, 2018 at approximately 12:40 PM with counsel.

85. Mr. Smith was initially told that it was not possible to have a tow hearing that day, and that SFMTA would schedule a hearing for another day.

86. Mr. Smith, through counsel, recounted the conversation with the SFMTA tow hearing desk employee on January 18, 2018 in which Mr. Smith was instructed to appear for a tow hearing without scheduling it beforehand.

87. Mr. Smith's counsel spoke to three SFMTA employees and recounted this phone conversation with each person.

88. Counsel filled out a tow hearing request form for Mr. Smith.

89. After approximately 40 minutes, Mr. Smith and his counsel were called into a hearing room with M. Hawkins, SFMTA Hearing Officer.

90. Upon notice and consent from all parties, counsel for Mr. Smith made an audio recording of the hearing. A true and correct copy of the certified transcript from the recording is attached hereto as Exhibit A.

91. Mr. Smith, through counsel, stated that he would be raising constitutional arguments. The Hearing Officer informed Mr. Smith that "you're in the wrong forum for [those constitutional arguments]." Exhibit A at p. 15 lines 19-20.

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE

13

92.  Mr. Smith's counsel asked which documents and evidence would be taken into account during the hearing. The Hearing Officer stated that he would be referring to a list of citations.

93.  Mr. Smith's counsel asked if the officer who ordered the tow was present; the Hearing Officer stated the officer was not present. Counsel asked if she could cross-examine the officer who ordered the tow. The Hearing Officer said that cross-examination was not required by the Vehicle Code.

94.  Mr. Smith's counsel asked if there was any record of notice given before the tow. The Hearing Officer stated, "We don't send notices that it was going to be towed. The fact is if you have five or more then it will be towed."

95.  The Hearing Officer asked Mr. Smith if he had received citations. Mr. Smith explained his disability, and that he had asked his caretaker to help him avoid citations, and inform him of any citations that were placed on the vehicle, but she had not.

96.  Counsel for Mr. Smith explained that the tow was invalid under the Fourth and Fourteenth Amendments of the U.S. Constitution. The Hearing Officer stated that this was "the wrong forum" to raise issues beyond whether Mr. Smith owed five or more parking tickets.

97.  Mr. Smith testified about the harm he was experiencing as a result of losing his car. He explained his disability, and how the car had been his shelter and his protection. He stated that he could not afford to pay the fees to get the car back from AutoReturn.

98.  Officer Hawkins refused to consider Mr. Smith's inability to pay the outstanding parking fines, tow fees, or storage fees, stating that the agency is "not allowed to take into consideration the economic status of the person."

99.  Officer Hawkins issued a final agency determination finding that the tow was valid.

100.  The SFMTA decision makes no findings on the constitutional grounds on which Mr. Smith challenged the tow.

## C.    The Harm

101.    Without his car, Mr. Smith has spent most nights sleeping outside, in bus stops or in doorways because he cannot afford to rent an apartment or obtain other secure housing. This is the first time he has been homeless and had to sleep on the street.

102.    Mr. Smith has tried staying in shelters, but had to wait in line for long periods of time each day to get a bed for that night, which was physically too hard to do as a result of his disability.

103.    The average cost of renting just one room in an apartment in San Francisco is $1815 per month.[1] Mr. Smith had gone through an extensive process to get a Section 8 voucher for affordable housing, but lost it when he and his wife separated.

104.    Homeless people are more likely than the average person to be the victims of violent crime.[2] One night in January 2018, without the protection of his car, Mr. Smith was sleeping in a doorway. At 4:00am, Mr. Smith was awakened by people kicking him. They demanded his wallet. When he initially refused, one of them kicked him in the face. He gave them the wallet.

105.    As a result of being robbed and beaten, while still not having a safe place to be at night, Mr. Smith is constantly afraid. He is suspicious of everyone and experiences racing thoughts. This is the first time in his life he has had this kind of struggle with mental health.

106.    Mr. Smith's health is deteriorating since his car was towed. His already severe knee and back pain increased once he began having to spend nights outside sleeping in the cold on hard surfaces. As is common among homeless people, Mr. Smith is experiencing the negative health impacts of sleep deprivation because he does not

---

[1] Adam Brinklow, Average cost for a spare room in San Francisco: $1,815/month, available at https://sf.curbed.com/2017/7/20/16002776/room-rent-trulia-boomers-roomate-cost-sf.
[2] Meinbresse, Molly et al. Exploring the Experiences of Violence Among Individuals Who Are Homeless Using a Consumer-Led Approach. Violence and Victims, Volume 29, Number 1, 2014 at page 123.

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
15

1    have a safe place to sleep. As of February 9, 2018, Mr. Smith has the flu, and

2    cannot heal because he has no safe place to rest.

3 107.   Homeless people are 3-4 times more likely to die prematurely than the average

4    person.[3] A 2016 UCSF study found that significant periods of homelessness can

5    reduce a person's life expectancy by 25 years.

6 108.   Even with the discounted tow cost, Mr. Smith will not be able to pay to retrieve his

7    seized vehicle from AutoReturn.

8 109.   Because SFMTA did not follow due process requirements, Mr. Smith was not

9    afforded a meaningful opportunity to be heard either prior to or after the tow, and

10    was unable to obtain the return of his car. As a result, Mr. Smith has been

11    effectively deprived of his shelter and sole asset with no means of redress.

## FIRST CAUSE OF ACTION

### Administrative Mandate (CCP § 1094.5): Denial of Fair Hearing and Prejudicial Abuse of Discretion

110.   Mr. Smith re-alleges and incorporates by reference each allegation contained in

   paragraphs 1 through 109, inclusive.

111.   Mr. Smith seeks a writ of administrative mandate under CCP § 1094.5 because

   SFMTA denied Mr. Smith a fair hearing and prejudicially abused its discretion.

112.   By not making available the evidence relied on at the tow hearing, SFMTA denied

   Mr. Smith a fair hearing.

113.   By not presenting the officer who ordered the tow for examination, SFMTA denied

   Mr. Smith a fair hearing.

114.   By not considering Mr. Smith's constitutional claims, his inability to pay, or the

   facts beyond the five delinquent tickets when determining the validity of the tow

   and continued storage of his vehicle, SFMTA denied Mr. Smith a fair hearing.

---

[3] O'Connell JJ. Premature Mortality in Homeless Populations: A Review of the Literature, 19 pages. Nashville: National Health Care for the Homeless Council, Inc., 2005 at page 13.

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE

16

115. SFMTA's decision, which summarily "find[s] the tow and storage valid," does not make findings that connect the evidence presented to the ultimate decision. *See Topanga Assn. for a Scenic Cmty. v. Cty. of Los Angeles*, 11 Cal. 3d 506, 515 (1974) ("[I]mplicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order.").

116. Respondents' hearing decision finding the tow and storage valid is arbitrary and capricious and lacking substantial evidentiary support. The decision therefore constitutes a prejudicial abuse of discretion by SFMTA.

117. Government Code § 54951 expressly authorizes review of Respondents' administrative hearing decisions by means of writ of mandamus pursuant to CCP § 1094.5.

118. Mr. Smith is beneficially interested in the outcome of the proceeding, has exhausted all administrative remedies, and lacks a plain, speedy, and adequate remedy at law.

## SECOND CAUSE OF ACTION

**Ordinary Mandamus (CCP § 1085), Unconstitutional Seizure
Fourth Amendment to the United States Constitution
Article 1, Section 13 of the California Constitution**

119. Paragraphs 1 through 118 are incorporated herein by reference.

120. Mr. Smith seeks a writ of ordinary mandate under CCP § 1085.

121. Respondents have a ministerial duty to conduct vehicle tows, which constitute seizure of property, in accordance with the Fourth Amendment to the United States Constitution and Article I, Section 13 of the California Constitution.

122. The Fourth Amendment requires that seizures of property, including vehicle tows, be reasonable. Without a warrant, and in the absence of an applicable exception to the warrant requirement, towing a vehicle is unconstitutional.

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
17

123. SFTMA's tow of Mr. Smith's car was unreasonable because Mr. Smith's car was operational and not in a condition that would justify a tow for community caretaking purposes.

124. In conducting an unconstitutional seizure via an unreasonable tow, Respondents have violated their ministerial duty to act in accordance with the law.

125. Mr. Smith is beneficially interested in the outcome of the proceeding, has exhausted all administrative remedies, and lacks a plain, speedy, and adequate remedy at law.

## THIRD CAUSE OF ACTION

**Ordinary Mandamus (CCP § 1085): Due Process**
**Fourteenth Amendment to the United States Constitution**
**Article 1, Section 13 of the California Constitution**

126. Paragraphs 1 through 125 are incorporated herein by reference.

127. Respondents have a ministerial duty to conduct vehicle tows in accordance with the Fourteenth Amendment to the United States Constitution and Article 1, Section 13 of the California Constitution.

128. The Due Process clauses require the government to provide notice and a meaningful opportunity to be heard prior to depriving individuals of their property.

129. By its policy of depriving car owners of their vehicles without due process, SFMTA violates its ministerial duty to ensure due process.

130. By not making available the evidence relied on at the tow hearing, not presenting the officer who ordered the tow for examination, and not considering Mr. Smith's constitutional claims, ability to pay, or evidence other than delinquent parking tickets when determining the validity of the tow, SFMTA denies vehicle owners a meaningful opportunity to be heard, thereby violating its ministerial duty to ensure due process.

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
18

131. Mr. Smith is beneficially interested in the outcome of the proceeding, has exhausted all administrative remedies, and lacks a plain, speedy, and adequate remedy at law.

## FOURTH CAUSE OF ACTION

**Ordinary Mandamus (CCP § 1085): Equal Protection**
**Fourteenth Amendment to the United States Constitution**
**Article 1, Section 13 of the California Constitution**

132. Paragraphs 1 through 131 are incorporated herein by reference.

133. Mr. Smith seeks a writ of ordinary mandate under CCP § 1085.

134. Respondents have a ministerial duty to conduct vehicle tows in accordance with the Fourteenth Amendment to the United States Constitution and Article 1, Section 13 of the California Constitution.

135. Respondents' scheme of towing vehicles for failure to pay parking tickets without taking into account ability to pay impermissibly classifies and punishes similarly situated persons differently on the basis of wealth, in violation of the federal and state equal protection clauses. People who can afford to pay parking tickets can simply pay the tickets and avoid the towing of their vehicle; for those who cannot afford the tickets, the resulting tow constitutes nothing less than punishment for being poor.

136. Towing a vehicle of an indigent person or a person who is unable to pay the high cost of parking tickets serves no rational, much less a compelling, governmental interest.

137. The Equal Protection and Due Process clauses prohibit governments from punishing indigent individuals for their inability to pay fines and fees. The *Bearden* doctrine requires that an ability-to-pay determination be part of the pre-punishment process, and requires the consideration of alternatives to punishment.

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
19

1   138.  By towing Mr. Smith's vehicle because he failed to pay parking citations, without

2         an ability-to-pay determination or alternatives to paying fines for indigent people

3         like Mr. Smith, SFMTA violates its ministerial duty to ensure equal protection and

4         due process.

5   139.  Mr. Smith is beneficially interested in the outcome of the proceeding, has

6         exhausted all administrative remedies, and lacks a plain, speedy, and adequate

7         remedy at law.

8

9

                              **FIFTH CAUSE OF ACTION**
10

11                    **Right to Be Secure from Unreasonable Seizures**
                         **42 U.S.C. § 1983 – Fourth Amendment**
12                        **Article 1, Sec. 13, California Constitution**

13
    140.  Paragraphs 1 through 139 are incorporated herein by reference.
14
    141.  Defendants/Respondents have violated Mr. Smith's right to be secure from
15
          unreasonable seizure of his property without a warrant.
16
    142.  Defendant/Respondent SFMTA has a policy and practice of ordering cars,
17
          including Mr. Smith's, to be towed without a warrant, without notice, and without
18
          any public safety or urgent traffic convenience purpose. Respondents' seizure of his
19
          car deprived Mr. Smith of his right to be free of unreasonable seizure of his
20
          property.
21
    143.  Defendant/Respondent AutoReturn has a policy and practice of towing cars,
22
          including Mr. Smith's car, without a warrant, without notice, and without any
23
          public safety or urgent traffic convenience purpose. AutoReturn continues to hold
24
          Mr. Smith's car without any public safety or traffic convenience purpose. These
25
          acts are depriving Mr. Smith of his right to be free of unreasonable seizure of his
26
          property.
27
    144.  Mr. Smith is informed and believes that the acts of the Defendants/Respondents
28
          were intentional in seizing and destroying Plaintiffs' property and/or deliberately

                    VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
                                              20

1  indifferent to the likely outcome that Plaintiffs' property would be seized and
2  destroyed.

3  145.  As a direct and proximate consequence of the acts of the Defendants, and their
4  unconstitutional policies and practices, Plaintiff continues to suffer from the seizure
5  and impoundment of his car, which is his shelter, transportation and only asset. He
6  requests injunctive relief to stop the current impoundment of his car by Defendants
7  and require Defendants to adopt constitutionally-sound policies.

9  **SIXTH CAUSE OF ACTION**
   **Right to Due Process of Law**
10  **42 U.S.C. § 1983 – Fourteenth Amendment**
   **Art. 1, § 7, California Constitution**
11

12  146.  The allegations of paragraphs 1 through 145 are incorporated by reference as if set
13  forth in their entirety herein.

14  147.  Defendants/Respondents owe Mr. Smith a duty under the Due Process Clause of
15  the U.S. Constitution and California Constitution to not deprive him of his property
16  without due process of law.

17  148.  Defendants/Respondents' policy and practice of towing cars, including Mr. Smith's
18  car, without notice and without a meaningful opportunity to be heard violated and
19  continues to violate Plaintiffs' right to due process of law.

20  149.  Defendants/Respondents' policy and practice of failing to provide a meaningful
21  opportunity to be heard at a pre- or post-tow hearing, not making available the
22  evidence relied on at the tow hearing, not presenting the officer who ordered the
23  tow for examination, and not considering constitutional claims, ability to pay, or
24  evidence other than delinquent parking tickets when determining the validity of the
25  tow, denies vehicle owners including Mr. Smith a meaningful opportunity to be
26  heard, and violates their duty to ensure due process.

27  150.  Mr. Smith is informed and believes that the acts of the Defendants were intentional
28  in seizing Plaintiffs' property without due process of law and/or were deliberately

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
21

1    indifferent to the likely outcome that Mr. Smith's property would be seized and
2    held without due process of law.

3  151.   As a direct and proximate consequence of the acts of the Defendants, and their
4        unconstitutional policies and practices, Plaintiff continues to suffer from the
5        impoundment of his car without due process of law. He requests injunctive relief to
6        stop the current impoundment of his car by Defendants and require Defendants to
7        adopt constitutionally-sound policies.

## SEVENTH CAUSE OF ACTION AGAINST DEFENDANT AUTORETURN

### Conversion and Trespass to Chattels

152.   The allegations of paragraphs 1 through 151 are incorporated by reference as if set
       forth in their entirety herein.

153.   Mr. Smith was at all relevant times the owner of the vehicle seized and held by
       Defendants/Respondents. Mr. Smith remains entitled to the possession of his car,
       which is Mr. Smith's shelter, main transportation, and only asset.

154.   Defendant/Respondent AutoReturn's conduct continues to interfere with and deny
       Mr. Smith possession of his property. Mr. Smith has made a demand for the return
       of his car, and Defendant/Respondent AutoReturn has refused to return this
       property to Mr. Smith.

155.   As a direct and proximate consequence of the acts of Defendant/Respondent
       AutoReturn, Mr. Smith has suffered and continues to suffer from the seizure and
       impoundment of his car, and thus is entitled to damages.

## CLAIM FOR ATTORNEYS' FEES

156. This action will result in a benefit to the public, and Mr. Smith is entitled to an award of attorneys' fees and costs pursuant to CCP § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff/Petitioner prays for relief as follows:

157. For a writ of administrative mandate pursuant to CCP § 1094.5 directing Respondent to set aside SFMTA's hearing decision for Mr. Smith and directing Respondent SFMTA to issue a new hearing decision finding the tow of Mr. Smith's vehicle invalid and ordering its contractor AutoReturn to return Mr. Smith's car to Mr. Smith at no cost;

158. For a temporary restraining order and preliminary injunction, during the pendency of this action, to prevent the sale of Mr. Smith's vehicle or the release to any individual or company other than Mr. Smith and to return the vehicle to Mr. Smith at no cost;

159. For a temporary restraining order, preliminary injunction, and peremptory writ of mandate requiring Defendants/Respondents and their agents to:

    *a.* Immediately cease vehicle impoundment where the impoundment is not related to a caretaking function and is undertaken for the purpose of satisfying a municipal debt;

    *b.* Immediately cease vehicle impoundment where no notice of the impending tow is given to the car owner and there is no caretaking exigency;

    *c.* Amend SFMTA's stated policy of never providing notice to vehicle owners prior to a non-emergency tow;

160. For damages proximately and actually caused by the tow and impoundment of Mr. Smith's vehicle;

161. For an order granting Mr. Smith costs and attorneys' fees; and

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
23

162.    For such other relief as is just and equitable.

Date: February 12, 2018

Respectfully submitted,

BAY AREA LEGAL AID
LAWYERS' COMMITTEE FOR CIVIL RIGHTS

_____
Elisa Della-Piana

BY FACSIMILE

# EXHIBIT A

**In the Matter Of:**

Protest of Vehicle Tow and/or Storage for CA5YVV308

---

*January 19, 2018*

---

**Court Reporters, Videography, Trial Preparation**

**Videoconference Center**

**Oakland ◆ San Francisco ◆ San Jose**

**Sacramento ◆ Irvine ◆ Los Angeles**

**877.451.1580**

**www.aikenwelch.com**



1     SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY

2

3

4   Protest of Vehicle Tow and/or Storage

5   For CA5YVV308

6   Before M. Hawkins, Hearing Officer

7   _____/

8

9

10

11

12

13

14           TRANSCRIPTION OF ADMINISTRATIVE HEARING

15                  Date: January 19, 2018

16

17

18               Taken before Kaylin Bush

19                    CSR No. 14267

20                   February 5, 2018

21

22

23           Aiken Welch Court Reporters
             one Kaiser Plaza, Suite 250
             Oakland, California 94612
24        (510) 451-1580/(877) 451-1580
             Fax:  (510) 451-3797
25             www.aikenwelch.com

1        TRANSCRIPTION OF ADMINISTRATIVE HEARING

2

3                      ---oOo---

4

5

6    APPEARANCES

7    For the James Smith:

8                    ELISA DELLA-PIANA
                     DANICA RODARMEL
9                    Lawyers' Committee for Civil Rights
                     Of the San Francisco Bay Area
10                   131 Steuart Street, Suite 400
                     San Francisco, CA 94105
11                   (510) 847-3001
                     Edellapiana@lccr.com
12

13   Administrative Hearing Officer:

14                   M. Hawkins
                     SFMTA Hearing Section
15                   11 South Van Ness Avenue
                     San Francisco, CA 94103
16                   (415) 701-5401

17   ALSO PRESENT:

18                   Victoria Larsen, Law Student

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2                        ---oOo---

3

4          MS. DELLA-PIANA:  Okay.  Thanks.  Is that all

5    right with you?

6          HEARING OFFICER:  It's okay.

7          MS. DELLA-PIANA:  Okay.  Thanks.

8          HEARING OFFICER:  If you have five more

9    delinquent citations, you can be towed.  I'm not here to

10   talk about the individual citations, only whether you

11   have five or more.  I guess it is your turn now.

12         MS. DELLA-PIANA:  Okay.  Great.  Thanks.  I just

13   had a couple of initial questions about how the -- the

14   way that it works.

15         So who is the citing officer in this case or the

16   officer who ordered the tow?

17         HEARING OFFICER:  W-Y, Badge No. 426.

18         MS. DELLA-PIANA:  Okay.  And is that officer

19   present today?

20         HEARING OFFICER:  No.

21         MS. DELLA-PIANA:  And what evidence will you be

22   relying on other than what we -- I realize this is our

23   chance to present evidence.  What other evidence will you

24   be relying on in making a decision?

25         HEARING OFFICER:  Again, as I said, whether

1　there are five or more delinquent citations.

2　　　　　MS. DELLA-PIANA:　And how do you determine that?

3　　　　　HEARING OFFICER:　Well, we keep a record of

4　citations in addition to a record of the notices that

5　were sent out.

6　　　　　MS. DELLA-PIANA:　And do you have copies --

7　　　　　HEARING OFFICER:　Let me check the record.

8　　　　　MS. DELLA-PIANA:　Okay.　Okay.　Do you have

9　copies of the notices that were sent out that we can see?

10　　　　　HEARING OFFICER:　I don't.

11　　　　　MS. DELLA-PIANA:　And is there a chance for us

12　to examine -- cross-examine the officer who ordered the

13　tow?

14　　　　　HEARING OFFICER:　It's not required by the

15　vehicle code.

16　　　　　MS. DELLA-PIANA:　So is that no, we can't have

17　that opportunity?

18　　　　　HEARING OFFICER:　It's not required by the

19　vehicle code.

20　　　　　MS. DELLA-PIANA:　So even if we request it, the

21　answer would be no, we can't bring the officer in to

22　answer questions?

23　　　　　HEARING OFFICER:　I can't determine what the

24　answer would be, but it's not required by the vehicle

25　code.

1      MS. DELLA-PIANA:  And that's not the norm -- and

2  that's not the -- normally at a tow hearing, you all

3  don't produce the -- ask the officer to come testify?

4      HEARING OFFICER:  No.  Because there's no

5  reason.  Again, if there are five or more on the record,

6  then it can be towed.

7      MS. DELLA-PIANA:  Okay.  And then, so it sounds

8  like that's the basis for towing; although, that's not

9  the basis for towing in every case, but in this case the

10  reason for the tow was five or more unpaid parking

11  tickets.

12      HEARING OFFICER:  22651(i), five or more unpaid

13  tickets. That's correct.

14      MS. DELLA-PIANA:  Okay.  And so there wasn't --

15      HEARING OFFICER:  I believe you know that

16  already though.

17      MS. DELLA-PIANA:  We did get a copy of the tow

18  inventory after a couple of requests.  So that was

19  helpful to see.  Is there any other -- and it looks like

20  before you that's what you have as well as the record you

21  say you're checking and a copy of the vehicle code.

22      Is there any other evidence that you'll look at

23  in making a determination?

24      HEARING OFFICER:  No.

25      MS. DELLA-PIANA:  Okay.  So I just wanted to

1  double-check. I think that we know this, but there was
2  no warrant in this -- issued in this case?
3          HEARING OFFICER: This is a civil proceeding.
4  We don't issue warrants.
5          MS. DELLA-PIANA: And no crimes -- no crime --
6          HEARING OFFICER: This is a civil proceeding.
7          MS. DELLA-PIANA: Okay. And thank you for
8  answering these. And then the car wasn't blocking a
9  driveway?
10          HEARING OFFICER: I can't say. I don't know.
11          MS. DELLA-PIANA: But there's no evidence of
12  that that's before you?
13          HEARING OFFICER: I can't say.
14          MS. DELLA-PIANA: And that -- there was not --
15  the reason for tow was not a public safety reason? No
16  traffic?
17          HEARING OFFICER: 22451(i) is the reason.
18          MS. DELLA-PIANA: Okay. Okay. And do you have
19  record of any notices about -- that happened before the
20  tow?
21          HEARING OFFICER: Let me stop you here.
22          MS. DELLA-PIANA: Yeah.
23          HEARING OFFICER: Again, the purpose of this is
24  whether there were five or more citations. That's it.
25  In this case, there are 16 that are eligible. I mean,

1   whether there are notices or not -- you get a notice.

2   The initial notice is the citation that's put on the car,

3   so you are notified.  Now, we do send out two other

4   notices, and we do keep track of them.

5          MS. DELLA-PIANA:  But we don't have those here

6   today.

7          HEARING OFFICER:  No.  But the fact is, if you

8   have --

9          MS. DELLA-PIANA:  And those would have been sent

10  to which address?

11         HEARING OFFICER:  The address that was provided.

12         MS. DELLA-PIANA:  The address that was

13  provided --

14         HEARING OFFICER:  By the owner.

15         MS. DELLA-PIANA:  So the address linked to the

16  registered -- the vehicle registration?

17         HEARING OFFICER:  Yes.  The address I have here

18  is apartment 114, 1370 California; is that correct?

19         MR. SMITH:  Yes.

20         HEARING OFFICER:  Okay.

21         MS. DELLA-PIANA:  Are you still living in that

22  address, or no longer?

23         MR. SMITH:  No.

24         MS. DELLA-PIANA:  And when did you move out of

25  that place?

1        MR. SMITH:  Well, I've been living in my car

2    actually off and on because of the recent -- financially,

3    I'm not making enough money.  I'm not having enough

4    money.  So I've been living in my car and they tell me to

5    do better with my health and with my financial situation.

6    I don't know.

7        MS. DELLA-PIANA:  And Mr. Smith, did you receive

8    a notice saying that the car was going to be towed?

9        MR. SMITH:  No, I didn't.

10        MS. DELLA-PIANA:  Okay.

11        MR. SMITH:  No, I didn't.

12        HEARING OFFICER:  We don't send notices that it

13    was going to be towed.  The fact is if you have five or

14    more then it will be towed.  Now, we don't always know

15    which cars do or not, but, you know, if we come upon a

16    car that has five or more, then it is towed.

17        MS. DELLA-PIANA:  All right.  All right.  That's

18    helpful.  So if it's all right with you, just to get a

19    little bit of evidence before you, take advantage of this

20    opportunity.  Is that all right?

21        HEARING OFFICER:  Is there a reason for that?

22        MS. DELLA-PIANA:  Yeah.  We want to enter --

23    this is the chance -- this is the tow hearing, as you

24    said at the beginning.  We want to enter a little bit of

25    evidence and to make the record on this case, and then I

1  can present our reasons why the car should not have been

2  towed.

3           HEARING OFFICER:  Okay.

4           MS. DELLA-PIANA:  Thank you.

5           So Mr. Smith, you said you didn't get any notice

6  that the car was going to be towed.

7           MR. SMITH:  No.

8           MS. DELLA-PIANA:  Are you -- can you afford to

9  pay the -- well, let me back up a little bit.  Do you

10 have a valid driver's license?

11          MR. SMITH:  Yes, I do.

12          MS. DELLA-PIANA:  And was the car registered --

13          HEARING OFFICER:  Well, could I see your

14 license?

15          MR. SMITH:  I don't have it with me.

16          HEARING OFFICER:  Do you have any photo ID?

17          MR. SMITH:  I don't have any ID with me.  This

18 was a rush.

19          MS. DELLA-PIANA:  And was the car legally

20 registered --

21          MR. SMITH:  Yes.

22          MS. DELLA-PIANA:  -- in your name?  Do you --

23 when you came out and found that the car was missing, did

24 you talk to Auto Return, the company that -- or did you

25 talk to anyone about the car being towed?

1     MR. SMITH:  I actually thought the car was

2  stolen.

3          MS. DELLA-PIANA:  Okay.

4     MR. SMITH:  So I called the police station, and

5  they said, "Mr. Smith, we checked in the last 15 minutes,

6  and it hasn't been stolen so far,"  and you should call

7  towing.  And I did that, and he said they had it.

8          MS. DELLA-PIANA:  Okay.

9     MR. SMITH:  Well, he told me they didn't have

10  it; then he called me back and said they did have it.

11          MS. DELLA-PIANA:  Okay.  And when you talked to

12  the towing company, which towing company was that?

13     MR. SMITH:  It was 7th -- 7th and Bryant Street

14  towing.

15          MS. DELLA-PIANA:  Okay.  And did you tell them

16  -- what did they say you had to do to get your car back?

17     MR. SMITH:  I had to furnish $2,000 cash.

18          MS. DELLA-PIANA:  Okay.

19     MR. SMITH:  To get my car back.

20          MS. DELLA-PIANA:  And did you tell them that you

21  couldn't afford that?

22     MR. SMITH:  I could not afford it.  I was living

23  in my car.  I couldn't afford it.

24          MS. DELLA-PIANA:  And did they offer you a

25  payment plan?

1        MR. SMITH:  No.  I wish they had.

2        MS. DELLA-PIANA:  Would you -- would you be able

3   to make payments on it if you had a plan?

4        MR. SMITH:  Oh, by all means.  I'd give up

5   anything to keep the car.  It's my roof.  It's my life.

6   It's my warmness, keep me warm and everything else.  I

7   bought the car actually not knowing that I was going to

8   be homeless and the possibility was coming up.  And sure

9   enough and I was unable to get an apartment -- afford an

10  apartment.  The car was everything I had to keep me off

11  the streets and out of trouble and keep me warm.

12       MS. DELLA-PIANA:  And now that you don't have

13  the car, where are you?

14       MR. SMITH:  Well, it's very hard for me due to

15  the fact of my back problems I have (unintelligible)

16  crushed.  Everything is crushed up in my back.  And a

17  very serious operation should be done shortly, and it

18  will be.  Also, I have three knee replacements, two in my

19  right and one in my left.

20       It's very hard to get around.  I wake up in the

21  morning and I can't move.  I just can't move because I'm

22  just so stiff.  I'm so cold, and I'm so stiff

23  (unintelligible).  And me detoxing off these medications

24  like I have surgery, and it was very hard for me to not

25  have a place where I could be warm at to get around.  I

1    have to get around to get to these doctors or whatever,

2    so it's hard for me not having my car.

3            MS. DELLA-PIANA:  Thank you.  What's you source

4    of income?

5            MR. SMITH:  I have SSI, Social Security.

6            MS. DELLA-PIANA:  So that's disability

7    insurance?

8            MR. SMITH:  Disability.

9            MS. DELLA-PIANA:  And how much is that?

10           MR. SMITH:  About $1042.

11           MS. DELLA-PIANA:  When you left your car, was it

12   blocking a driveway?

13           MR. SMITH:  No, ma'am.

14           MS. DELLA-PIANA:  Was it safely parked?

15           MR. SMITH:  Yes, ma'am.

16           MS. DELLA-PIANA:  Was it blocking any traffic?

17           MR. SMITH:  No, ma'am.

18           MS. DELLA-PIANA:  Causing any hazards?

19           MR. SMITH:  No, ma'am.

20           MS. DELLA-PIANA:  Okay.  I think -- I think

21   that's -- oh.  And does the car have a valid disability

22   placard?

23           MR. SMITH:  Yes.  It does have a valid

24   disability placard.

25           MS. DELLA-PIANA:  Okay.  And that was displayed

1  at the time?

2          MR. SMITH:  Absolutely.

3          MS. DELLA-PIANA:  Okay.

4          HEARING OFFICER:  So you want to summarize?  Is

5  that the idea here?

6          MS. DELLA-PIANA:  That's the idea here.  So the

7  legal basis for tow depends on giving proper due process,

8  and there has to be, unless there is an emergency or a

9  crime -- public exigency or a crime, there has to be

10 notice given before the tow -- the car is towed.  In this

11 case there was no notice.

12         Here are two legal cases: Clement versus

13 Glendale from the 9th Circuit, Brewster versus Beck from

14 the 9th Circuit.  We'll provide copies for you of those,

15 and those say -- there are highlighted quotes there that

16 say the car cannot be legally towed under the 4th

17 amendment unless notice is provided with the exception

18 being if there is an emergency -- and you can see the

19 language there in those cases -- a crime or an exigent

20 circumstance.  And so because in this case Mr. Smith did

21 not receive the required -- the constitutionally required

22 notice, we request that the vehicle be released to him

23 and the tow be found illegal.

24         HEARING OFFICER:  Well, I got a few questions.

25         MS. DELLA-PIANA:  Great.

1          HEARING OFFICER:  Did you get any citations on

2    your vehicle?

3          MR. SMITH:  I'm sorry, sir?

4          HEARING OFFICER:  Did you get any citations on

5    your vehicle?

6          MR. SMITH:  If I did -- yes, I did.

7          HEARING OFFICER:  How many?

8          MR. SMITH:  I don't remember exactly.

9          HEARING OFFICER:  Was it one?

10         MR. SMITH:  No.  It was more than one.

11         HEARING OFFICER:  Were there four?

12         MR. SMITH:  Sir, as I said, I don't remember

13   exactly.

14         HEARING OFFICER:  Well, it was more than one and

15   less than ten?

16         MR. SMITH:  Well, sir --

17         MS. DELLA-PIANA:  Well, you know, he's answered

18   that.  I understand why you're asking, but if he doesn't

19   remember the exact number --

20         MR. SMITH:  I don't remember.

21         MS. DELLA-PIANA:  -- I think continuing to ask

22   is probably not --

23         MR. SMITH:  Because if I knew it was that many,

24   I would've paid it.  I would've paid it.

25         HEARING OFFICER:  Are you aware there's a way to

1   find out?

2          MR. SMITH:  I'm sorry, sir?

3          HEARING OFFICER:  Are you aware that there's a

4   way to find out how many tickets there are?

5          MS. DELLA-PIANA:  It might -- it might be

6   helpful to note you -- could you tell us if you were

7   always the person who went to your car?  It sounded like

8   you had a caretaker sometimes.

9          MR. SMITH:  No.  I have a caretaker that's --

10  when I can't get around, she's there with me every day.

11  And she goes out, and I ask her to check my tickets or

12  check my car make sure it's all right, everything's okay

13  and she does.  But she's not too compliant with telling

14  the truth.  If I have a ticket and if I haven't gone out

15  in a couple days and I go out and there's a ticket there.

16  So she wasn't too good at doing that for me, and that was

17  kind of frustrating.

18         HEARING OFFICER:  Okay.  I think I have enough

19  here.  So -- well, as for your case law, I think you're

20  in the wrong forum for this, but, you know, I have looked

21  at it.  I will include it.

22         I got to say this is a good tow.  Reason is, if

23  more than five, five or more at sixteen, we're not

24  allowed to take into consideration the economic status of

25  the person; that is, you can get a payment plan or public

```
 1   service anytime before the vehicle's towed, but
 2   afterwards, it's not available.
 3            I don't know.  I see you've already been down to
 4   or at least you talked to someone from the towing agency?
 5            MR. SMITH:  Yes, sir.
 6            HEARING OFFICER:  And I think they've already
 7   told you about first-time tow and low income.  I don't
 8   know if you filled that out.
 9            MS. DELLA-PIANA:  Yeah.  I think the issue is --
10   well, you can say I think the discount wasn't sufficient
11   for Mr. Smith to be able to afford the full amount at
12   once.
13            But did they tell you about the low-income
14   program?
15            MR. SMITH:  No.
16            MS. DELLA-PIANA:  Okay.  They didn't even let
17   him know about that.
18            HEARING OFFICER:  I don't know.
19            MR. SMITH:  I've always paid my tickets, way
20   back in (unintelligible).
21            HEARING OFFICER:  You have anything, a rebuttal
22   here?
23            MS. DELLA-PIANA:  Just the -- Mr. Smith's
24   inability to pay raises constitutional due process issues
25   about the taking of the vehicle, the 4th amendment issues
```

1  about the reasonableness of the tow, and the due process

2  issues, the 14th amendment issues raised by the lack of

3  notice in the tow.  Those are the three reasons that we

4  would give that this is not a legal tow.

5           And I understand about your point about the

6  forum.  As you know, we're sort of required to take this

7  administrative step before we can get to a different

8  forum.  So we're raising those issues here, both bring

9  the request to you to find the tow illegal and, like I

10  said, presenting a record in case the decision is

11  unfavorable and we need to appeal.

12           HEARING OFFICER:  Yes.  Do you have a record of

13  the citations by the way?

14           MS. DELLA-PIANA:  Yes.

15           HEARING OFFICER:  Okay.  Because this is a

16  48-hour hearing, although, you were towed on 12/28, I do

17  have to make a decision presently.  Because this goes up

18  every day, storage and fees.

19           MS. DELLA-PIANA:  Yeah.

20           HEARING OFFICER:  Well, usually I don't write

21  that much for these.  I mean, it's really not much to

22  respond to other than the fact that there are five or

23  more citations.

24           MS. DELLA-PIANA:  They probably don't provide

25  training on constitutional issues for the hearing

1  officers.

2          HEARING OFFICER:  I know the issues.

3          MS. DELLA-PIANA:  Okay.  You are familiar.  I

4  hear that.

5          HEARING OFFICER:  Thanks.  Excuse me.

6          MS. DELLA-PIANA:  No problem.

7          HEARING OFFICER:  Well, this is my decision.  He

8  can appeal this decision.  This is a claim form,

9  instructions on the back.  Goes across the street, Fox

10  Plaza.

11          MS. DELLA-PIANA:  Okay.  Okay.

12          HEARING OFFICER:  They'll review the problem,

13  make another decision.

14          MS. DELLA-PIANA:  Thank you for your time on

15  this.

16          HEARING OFFICER:  You're welcome.

17          MS. DELLA-PIANA:  Well, hopefully Mr. Smith will

18  not be back in this situation, but it was good to meet

19  you.

20          HEARING OFFICER:  Nice to meet you as well.

21          MS. DELLA-PIANA:  Take care.

22          All right.  Oh.  Here, Mr. Smith.  This is --

23  we'll -- we'll make a copy of that at our office.  All

24  right.  Thank you.

25          HEARING OFFICER:  You're welcome.

1

2

3    I, KAYLIN BUSH, do hereby certify:

4

5    That the proceedings in the provided audio

6 CD were transcribed by me to the best of my ability.

7 Parts of the audio CD that I was not able to decipher or

8 could not hear, the word "unintelligible" or "inaudible"

9 has been placed.

10

11    I will further certify that I am not a

12 party to this action and am disinterested in the outcome

13 of said action.

14

15    IN WITNESS WHEREOF, I have hereunder

16 subscribed my hand this 7th day of February, 2018.

17

18

19

20

     *Kaylin Bush*

21    ————————————————————————

     Kaylin Bush , Transcriptionist

22

23

24

25



**$**

**$1042** 12:10
**$2,000** 10:17

**-**

**---ooo---** 3:2

**1**

**114** 7:18
**12/28** 17:16
**1370** 7:18
**14th** 17:2
**15** 10:5
**16** 6:25

**2**

**2018** 19:16
**22451(i)** 6:17
**22651(i)** 5:12

**4**

**426** 3:17
**48-hour** 17:16
**4th** 13:16 16:25

**7**

**7th** 10:13 19:16

**9**

**9th** 13:13,14

**A**

**ability** 19:6
**Absolutely** 13:2
**action** 19:12,13

**addition** 4:4
**address** 7:10,11,12,15, 17,22
**administrative** 17:7
**advantage** 8:19
**afford** 9:8 10:21,22,23 11:9 16:11
**agency** 16:4
**allowed** 15:24
**amendment** 13:17 16:25 17:2
**amount** 16:11
**answering** 6:8
**anytime** 16:1
**apartment** 7:18 11:9, 10
**appeal** 17:11 18:8
**audio** 19:5,7
**Auto** 9:24
**aware** 14:25 15:3

**B**

**back** 9:9 10:10,16,19 11:15,16 16:20 18:9,18
**Badge** 3:17
**basis** 5:8,9 13:7
**Beck** 13:13
**beginning** 8:24
**bit** 8:19,24 9:9
**blocking** 6:8 12:12,16
**bought** 11:7
**Brewster** 13:13
**bring** 4:21 17:8
**Bryant** 10:13
**Bush** 19:3,21

**C**

**California** 7:18

**call** 10:6
**called** 10:4,10
**car** 6:8 7:2 8:1,4,8,16 9:1,6,12,19,23,25 10:1, 16,19,23 11:5,7,10,13 12:2,11,21 13:10,16 15:7,12
**care** 18:21
**caretaker** 15:8,9
**cars** 8:15
**case** 3:15 5:9 6:2,25 8:25 13:11,20 15:19 17:10
**cases** 13:12,19
**cash** 10:17
**Causing** 12:18
**CD** 19:6,7
**certify** 19:3,11
**chance** 3:23 4:11 8:23
**check** 4:7 15:11,12
**checked** 10:5
**checking** 5:21
**Circuit** 13:13,14
**circumstance** 13:20
**citation** 7:2
**citations** 3:9,10 4:1,4 6:24 14:1,4 17:13,23
**citing** 3:15
**civil** 6:3,6
**claim** 18:8
**Clement** 13:12
**code** 4:15,19,25 5:21
**cold** 11:22
**company** 9:24 10:12
**compliant** 15:13
**consideration** 15:24
**constitutional** 16:24 17:25
**constitutionally** 13:21

**continuing** 14:21
**copies** 4:6,9 13:14
**copy** 5:17,21 18:23
**correct** 5:13 7:18
**couple** 3:13 5:18 15:15
**crime** 6:5 13:9,19
**crimes** 6:5
**cross-examine** 4:12
**crushed** 11:16

**D**

**day** 15:10 17:18 19:16
**days** 15:15
**decipher** 19:7
**decision** 3:24 17:10,17 18:7,8,13
**delinquent** 3:9 4:1
**DELLA-PIANA** 3:4,7, 12,18,21 4:2,6,8,11,16, 20 5:1,7,14,17,25 6:5,7, 11,14,18,22 7:5,9,12, 15,21,24 8:7,10,17,22 9:4,8,12,19,22 10:3,8, 11,15,18,20,24 11:2,12 12:3,6,9,11,14,16,18, 20,25 13:3,6,25 14:17, 21 15:5 16:9,16,23 17:14,19,24 18:3,6,11, 14,17,21
**depends** 13:7
**determination** 5:23
**determine** 4:2,23
**detoxing** 11:23
**disability** 12:6,8,21,24
**discount** 16:10
**disinterested** 19:12
**displayed** 12:25
**doctors** 12:1
**double-check** 6:1
**driver's** 9:10
**driveway** 6:9 12:12

**due** 11:14 13:7 16:24 17:1

---

**E**

**economic** 15:24

**eligible** 6:25

**emergency** 13:8,18

**enter** 8:22,24

**everything's** 15:12

**evidence** 3:21,23 5:22 6:11 8:19,25

**exact** 14:19

**examine** 4:12

**exception** 13:17

**Excuse** 18:5

**exigency** 13:9

**exigent** 13:19

---

**F**

**fact** 7:7 8:13 11:15 17:22

**familiar** 18:3

**February** 19:16

**fees** 17:18

**filled** 16:8

**financial** 8:5

**financially** 8:2

**find** 15:1,4 17:9

**first-time** 16:7

**form** 18:8

**forum** 15:20 17:6,8

**found** 9:23 13:23

**Fox** 18:9

**frustrating** 15:17

**full** 16:11

**furnish** 10:17

---

**G**

**give** 11:4 17:4

**giving** 13:7

**Glendale** 13:13

**good** 15:16,22 18:18

**Great** 3:12 13:25

**guess** 3:11

---

**H**

**hand** 19:16

**happened** 6:19

**hard** 11:14,20,24 12:2

**hazards** 12:18

**health** 8:5

**hear** 18:4 19:8

**hearing** 3:6,8,17,20,25 4:3,7,10,14,18,23 5:2,4, 12,15,24 6:3,6,10,13, 17,21,23 7:7,11,14,17, 20 8:12,21,23 9:3,13,16 13:4,24 14:1,4,7,9,11, 14,25 15:3,18 16:6,18, 21 17:12,15,16,20,25 18:2,5,7,12,16,20,25

**helpful** 5:19 8:18 15:6

**hereunder** 19:15

**highlighted** 13:15

**homeless** 11:8

---

**I**

**ID** 9:16,17

**idea** 13:5,6

**illegal** 13:23 17:9

**inability** 16:24

**inaudible** 19:8

**include** 15:21

**income** 12:4 16:7

**individual** 3:10

---

**initial** 3:13 7:2

**instructions** 18:9

**insurance** 12:7

**inventory** 5:18

**issue** 6:4 16:9

**issued** 6:2

**issues** 16:24,25 17:2,8, 25 18:2

---

**K**

**Kaylin** 19:3,21

**kind** 15:17

**knee** 11:18

**knew** 14:23

**knowing** 11:7

---

**L**

**lack** 17:2

**language** 13:19

**law** 15:19

**left** 11:19 12:11

**legal** 13:7,12 17:4

**legally** 9:19 13:16

**license** 9:10,14

**life** 11:5

**linked** 7:15

**living** 7:21 8:1,4 10:22

**longer** 7:22

**looked** 15:20

**low** 16:7

**low-income** 16:13

---

**M**

**make** 8:25 11:3 15:12 17:17 18:13,23

**making** 3:24 5:23 8:3

**means** 11:4

---

**medications** 11:23

**meet** 18:18,20

**minutes** 10:5

**missing** 9:23

**money** 8:3,4

**morning** 11:21

**move** 7:24 11:21

---

**N**

**Nice** 18:20

**norm** 5:1

**note** 15:6

**notice** 7:1,2 8:8 9:5 13:10,11,17,22 17:3

**notices** 4:4,9 6:19 7:1, 4 8:12

**notified** 7:3

**number** 14:19

---

**O**

**offer** 10:24

**office** 18:23

**officer** 3:6,8,15,16,17, 18,20,25 4:3,7,10,12, 14,18,21,23 5:3,4,12, 15,24 6:3,6,10,13,17, 21,23 7:7,11,14,17,20 8:12,21 9:3,13,16 13:4, 24 14:1,4,7,9,11,14,25 15:3,18 16:6,18,21 17:12,15,20 18:2,5,7, 12,16,20,25

**officers** 18:1

**operation** 11:17

**opportunity** 4:17 8:20

**ordered** 3:16 4:12

**outcome** 19:12

**owner** 7:14

## P

paid 14:24 16:19
parked 12:14
parking 5:10
Parts 19:7
party 19:12
pay 9:9 16:24
payment 10:25 15:25
payments 11:3
person 15:7,25
photo 9:16
placard 12:22,24
place 7:25 11:25
plan 10:25 11:3 15:25
Plaza 18:10
point 17:5
police 10:4
possibility 11:8
present 3:19,23 9:1
presenting 17:10
presently 17:17
problem 18:6,12
problems 11:15
proceeding 6:3,6
proceedings 19:5
process 13:7 16:24
17:1
produce 5:3
program 16:14
proper 13:7
provide 13:14 17:24
provided 7:11,13 13:17
19:5
public 6:15 13:9 15:25
purpose 6:23
put 7:2

## Q

questions 3:13 4:22
13:24
quotes 13:15

## R

raised 17:2
raises 16:24
raising 17:8
realize 3:22
reason 5:5,10 6:15,17
8:21 15:22
reasonableness 17:1
reasons 9:1 17:3
rebuttal 16:21
receive 8:7 13:21
recent 8:2
record 4:3,4,7 5:5,20
6:19 8:25 17:10,12
registered 7:16 9:12,
20
registration 7:16
released 13:22
relying 3:22,24
remember 14:8,12,19,
20
replacements 11:18
request 4:20 13:22
17:9
requests 5:18
required 4:14,18,24
13:21 17:6
respond 17:22
Return 9:24
review 18:12
roof 11:5
rush 9:18

## S

safely 12:14
safety 6:15
Security 12:5
send 7:3 8:12
service 16:1
shortly 11:17
sir 14:3,12,16 15:2 16:5
situation 8:5 18:18
sixteen 15:23
Smith 7:19,23 8:1,7,9,
11 9:5,7,11,15,17,21
10:1,4,5,9,13,17,19,22
11:1,4,14 12:5,8,10,13,
15,17,19,23 13:2,20
14:3,6,8,10,12,16,20,23
15:2,9 16:5,11,15,19
18:17,22
Smith's 16:23
Social 12:5
sort 17:6
sounded 15:7
sounds 5:7
source 12:3
SSI 12:5
station 10:4
status 15:24
step 17:7
stiff 11:22
stolen 10:2,6
stop 6:21
storage 17:18
street 10:13 18:9
streets 11:11
subscribed 19:16
sufficient 16:10
summarize 13:4
surgery 11:24

## T

taking 16:25
talk 3:10 9:24,25
talked 10:11 16:4
telling 15:13
ten 14:15
testify 5:3
thought 10:1
ticket 15:14,15
tickets 5:11,13 15:4,11
16:19
time 13:1 18:14
today 3:19 7:6
told 10:9 16:7
tow 3:16 4:13 5:2,10,17
6:15,20 8:23 13:7,10,23
15:22 16:7 17:1,3,4,9
towed 3:9 5:6 8:8,13,
14,16 9:2,6,25 13:10,16
16:1 17:16
towing 5:8,9 10:7,12,14
16:4
track 7:4
traffic 6:16 12:16
training 17:25
transcribed 19:6
Transcriptionist
19:21
trouble 11:11
truth 15:14
turn 3:11

## U

unable 11:9
understand 14:18 17:5
unfavorable 17:11
unintelligible 11:15,23
16:20 19:8

**unpaid** 5:10,12

---

**V**

---

**valid** 9:10 12:21,23

**vehicle** 4:15,19,24 5:21
  7:16 13:22 14:2,5 16:25

**vehicle's** 16:1

**versus** 13:12,13

---

**W**

---

**W-Y** 3:17

**wake** 11:20

**wanted** 5:25

**warm** 11:6,11,25

**warmness** 11:6

**warrant** 6:2

**warrants** 6:4

**WHEREOF** 19:15

**word** 19:8

**works** 3:14

**would've** 14:24

**write** 17:20

**wrong** 15:20

# EXHIBIT B



Home (/) / San Francisco, CA (/san-francisco-ca/) /

# Vehicle Details

**TOW DETAILS**

| | |
|---|---|
| **TR Number:** | 20171228M0014 |
| **License:** | 5YVV308 - CA |
| **VIN:** | ************2237 |
| **Vehicle:** | BLACK 2007 HONDA ACCORD |
| **Towed Date and Time:** | 12/28/17 8:24 AM |
| **Towed By:** | SF Municipal Transportation Agency |
| **Towed From:** | 1125 HYDE STREET |
| **Reason:** | SCOF/651.I Scoflaw-Citations |
| **Status:** | STORED |



San Francisco, CA (/san-francisco-ca)

Find Vehicle   Vehicle Sales (/san-francisco-ca/vehicle-sales/)   FAQs (/san-francisco-ca/faqs/)   Contact Us (/san-francisco-ca/contact-us/)

| | |
|---|---|
| **Tow Company:** | AutoReturn |
| | 450 7th St, San Francisco, CA |
| | 415-865-8200 |

Feedback (/san-francisco-ca/feedback/)   Claims (/san-francisco-ca/claims/)

Google Maps (http://maps.google.com/maps?q=450+7th+St,San+Francisco,CA)

**FEE DETAILS**

| | |
|---|---|
| 1st Day Storage-PassVeh: | $59.25 |
| City Admin Fee - Excluding Citations: | $269.00 |
| Passenger Vehicle Storage: | $3,266.00 |
| Tow Passenger Vehicle: | $214.00 |
| Lien Fee-$500 to $4,000-Rqst: | $35.00 |
| Lien Fee-$500 to $4,000-Auth: | $35.00 |
| Transfer Fee-2nd Tow-BAYSH: | $29.25 |
| **Total:** | **$3,907.50** |

# What do you do now?

This vehicle has been noted for special handling prior to its release. Please contact our customer service center at (415) 865-8200 and ask to speak with a Team Lead for further information.

Customer Service

You may reach the 24x365 City and County of San Francisco Impound Facility at 450 7th Street, San Francisco, CA 94103 or call 415-865-8200.

Find Vehicle (/san-francisco-ca/find-vehicle/)
Vehicle Sales (/san-francisco-ca/vehicle-sales/)
FAQs (/san-francisco-ca/faqs/)
Contact Us (/san-francisco-ca/contact-us/)

# EXHIBIT C



**SFMTA**
Municipal
Transportation
Agency

January 19, 2018

Notice of Tow Hearing Decision

JAMES SMITH
APT 114
1370 CALIFORNIA ST
SAN FRANCISCO CA 94109

## VERIFICATION

I, James Smith, the petitioner in the above-entitled action. I am aware of the nature of the Verified Petition for Writ of Mandate being filed on my behalf, the legal bases for the First Amended Petition, and the relief being sought. To the extent that the Verified Petition for Writ of Mandate is based upon facts known to me, including the facts stated under my name in section entitled "Parties," and all of the facts stated under the heading "Factual Allegations," I verify them to be true, and otherwise, I am informed and believe that all facts herein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February _11_, 2018, in _San Francisco_ , California

_James Smith_
James Smith
Petitioner

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State bar number, and address):*
Claire Johnson Raba   SBN 271691
BAY AREA LEGAL AID
1800 Market St. 3rd Fl.
San Francisco, CA 94102
TELEPHONE NO.: 415-982-1300    FAX NO.: 415-982-4243
ATTORNEY FOR *(Name):* James Smith

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Unlimited Civil

CASE NAME:
Smith v. Reiskin et al.

**FOR COURT USE ONLY**

F I L E D
Superior Court of California
County of San Francisco

FEB 13 2018

CLERK OF THE COURT
BY: _____
Deputy Clerk
BOWMAN LIU

CPF - 18 - 516045

JUDGE:
DEPT:

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** |
|---|---|
| ☑ **Unlimited** (Amount demanded exceeds $25,000) ☐ **Limited** (Amount demanded is $25,000 or less) | ☐ **Counter** ☐ **Joinder** Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☑ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 4
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 2/12/18
Claire Johnson Raba
_____ ▶ _____
(TYPE OR PRINT NAME)              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

1  Claire Johnson Raba SBN 271691
   Rebekah Evenson SBN 207825
2  BAY AREA LEGAL AID
   1035 Market Street, 6th Floor
3  San Francisco, CA 94103
   Telephone: 415 982 1300
4  Fax: 415 982 4243
   cjohnson@baylegal.org
5  revenson@baylegal.org

6  Elisa Della-Piana SBN 226462
   Jude Pond SBN 299229
7  Lawyers' Committee for Civil Rights
   131 Steuart Street, Ste. 400
8  San Francisco, CA 94105
   Telephone: (415) 847-3001
9  Fax: (415) 543-0296
   edellapiana@lccr.com
10
   jpond@lccr.com
11

12 ATTORNEYS FOR PETITIONER AND PLAINTIFF
   James Smith
13

14         SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
15                      UNLIMITED CIVIL JURISDICTION

16 JAMES SMITH,                        Case No. **CPF-18-516045**

17 Plaintiff and Petitioner,           **PLAINTIFF AND PETITIONER'S**
                                        ***EX PARTE* NOTICE AND**
18 v.                                   **APPLICATION FOR**
                                        **TEMPORARY RESTRAINING**
19 EDWARD D. REISKIN in his official    **ORDER AND ORDER TO SHOW**
   capacity as the Director of Transportation of  **CAUSE RE: PRELIMINARY**
20 the San Francisco Municipal Transit  **INJUNCTION; AND**
   Authority; the SAN FRANCISCO         **MEMORANDUM**
21 MUNICIPAL TRANSIT AUTHORITY;         **OF POINTS AND AUTHORITIES**
   TEGSCO LLC dba SAN FRANCISCO
22 AUTORETURN; DOES 1-10, inclusive,

23                                      **Date: February 13, 2018**
   Defendants and Respondents.         **Time: 11:00 a.m.**
24                                      **Dept: 302**
                                        **Judge: Honorable Harold E. Kahn**
25                                      **Reservation No.:** _____

26

27

28

**NOTICE AND APPLICATION**

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on February 13, 2018 at 11:00 a.m. in Department 302 of the San Francisco County Superior Court located at 400 McAllister St. San Francisco, CA 94102, Plaintiff/Petitioner James Smith will apply for an Order to Show Cause ("OSC") why a preliminary injunction should not be granted enjoining Defendants San Francisco Municipal Transit Authority ("SFMTA") and TEGSCO LLC dba SAN FRANCISCO AUTORETURN ("AUTORETURN"), their agents, employees, representatives, attorneys, and all other persons acting in concert or participating with them from continuing to retain possession of Mr. Smith's 2007 Honda Civic, California license plate number 5YVV308 (hereinafter, "the Car").

Mr. Smith hereby applies *ex parte* for a Temporary Restraining Order restraining Defendants, their agents, employees, representatives, attorneys and all persons acting in concert or participating with them and their agents from continuing to impound the Car, or from selling or releasing the Car to any third party. Mr. Smith provided notice to Defendants of this application in accordance with California Rule of Court 3.1203. Mr. Smith hereby applies for a hearing date to obtain a preliminary injunction.

This application is made on the grounds that monetary compensation would not provide adequate relief for the loss of the Car, as Mr. Smith will incur ongoing and additional harm if Defendants continue to hold his car in impound or dispose of his vehicle. Mr. Smith was living in his car at the time it was towed; he lost his apartment in October and is homeless for the first time in his life. The car was his home, his only protection from cold nights, and the only place he felt safe sleeping. In fact, after his car was towed, he was sleeping in a doorway and awakened at 4:00 am by people kicking him in the head and stomach and demanding his wallet. Mr. Smith's monthly disability benefits are insufficient income to rent an apartment in San Francisco, where he has lived his whole life. Mr. Smith is 64 years old and has a significant physical disability, and his health is deteriorating without the protection of his car. Mr. Smith's disability also made him particularly reliant on his car for transportation. Without it, he cannot get to medical

appointments, cannot visit his 93-year-old mother in a care facility, nor drive to apply for subsidized housing.

In violation of the law, Defendants have towed the Car and plan to sell it on February 14, 2018. This will result in great and irreparable injury to Mr. Smith before this matter can be heard regularly on notice.

Mr. Smith asks this Court to waive any bond for a temporary restraining order or preliminary injunction as he is indigent, homeless, and disabled.

Mr. Smith has not previously obtained an order from any judicial officer for similar relief in this case.

The application is based upon this Notice and Application, the attached Memorandum of Points and Authorities, Declaration of James Smith, Declaration of Victoria Larson, Declaration of Claire Johnson Raba, the Petition and Complaint filed in this matter on February 12, 2018, and any oral argument that may be heard at the time of the hearing in this matter.

Dated: 2/12/18

Respectfully submitted,

BAY AREA LEGAL AID

By _____
Claire Johnson Raba, Attorney for
Plaintiff James Smith

## Table of Contents

I.      INTRODUCTION.................................................................. 1

II.     FACTS............................................................................ 2

III.    ARGUMENT..................................................................... 5

        A. Legal Standard for Temporary Restraining Order and
           Preliminary Injunction. ............................................... 5

        B. Mr. Smith Will Suffer Irreparable Harm if Defendants Do Not
           Release the Car from Impound....................................... 6

                i.  The Balance of Hardship Tips Sharply in Petitioner's Favor.... 7

        C. Mr. Smith Is Likely to Prevail on the Merits. .............................. 8

                i.  The Seizure of the Car Likely Violated Mr. Smith's Fourth
                    Amendment Rights.................................................... 8

                ii. Mr. Smith Has Been Deprived of Property Without Due
                    Process................................................................ 12

IV.     BOND SHOULD BE WAIVED BECAUSE OF MR. SMITH'S
        INDIGENCE..................................................................... 15

V.      CONCLUSION.................................................................. 15

**Table of Authorities**

**STATE CASES**

*Anchor Pacifica Management Company*, 205 Cal. App. 4th 232 (2012)............ 11

*Anderson v. Superior Court*, 213 Cal. App. 3d 1321, 1330 (1989)................. 14

*Bleeck v. State Bd. of Optometry* 18 Cal. App. 3d 415, 432 (1971)................. 14

*Brock v. Superior Court of Los Angeles County*, 12 Cal. 2d 605 (Cal. 1939)...... 11

*Bueneman v. Santa Barbara*, 8 Cal. 2d 405 (Cal. 1937).............................. 11

*Butt v. State of California*, 4 Cal. 4th 668, 677-78 (Cal. 1992) ................... 5

*Family Record Plan, Inc. v. Mitchell*, 172 Cal. App. 2d 235, 242 (1959)........... 5

*Gosney v. State of California*, 10 Cal App 3d 921 (1970)........................... 5, 8

*IT Corp. v. County of Imperial*, 35 Cal. 3d 63, 69 (Cal. 1983). ................... 5

*In re Eichorn*, 69 Cal. App. 4th 382, 386 (1998)................................... 6

*Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917, 933 (2004)................ 14

*Jones v. Los Angeles*, 211 Cal. 304 (Cal. 1930)................................... 12, 14

*King v. Meese*, 43 Cal. 3d 1217, 1227 (Cal. 1987)................................. 5

*People v. Ramirez*, 25 Cal. 3d 260, 269 (Cal. 1979).............................. 12

*Robbins v. Superior Court*, 38 Cal. 3d 199, 205-06 (Cal. 1985)................... 5, 7

*San Diego Tuberculosis Assn. v. East San Diego*, 186 Cal. 252, 255 (Cal. 1921) .. 11

*Schofield v. Los Angeles* , 120 Cal. App. 240 (Cal. App. 1932) .................... 12

**FEDERAL CASES**

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)..................................... 13

*Brewster v. Beck*, 859 F.3d 1194, 1997 (9th Cir. 2017).............................. 9

*City of Los Angeles v. David*, 538 U.S. 715, 718, (2003)............................ 14

*Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008)................. 13

*Conover v. Hall*, 11 Cal.3d 842, 851-52 (Cal. 1974)............................... 15

*Goichman v. Rheuban Motors Inc.* 682 F.2d 1320, 1324 (9th Cir. 1982)......... 7, 13

PLAINTIFF AND PETITIONER'S *EX PARTE* NOTICE AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

**Table of Authorities, cont.**

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982)............................ 11

*Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 910 (N.D. Cal. 2013) 9

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)................................... 12, 13, 14

*Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993).................................. 9

*Miranda v. City of Cornelius* 429 F.3d 858, 864 (9th Cir. 2005)................ 8, 9, 10, 11

*Sibron v. New York*, 392 U.S. 40, 61 (1968)............................................ 10

*South Dakota v. Opperman*, 428 U.S. 364 at 368-69 (1976)......................... 9, 10, 11

*Stypmann v. San Francisco*, 557 F.2d 1338, 1344 (9th Cir. 1977)................. 7, 12

*Scofield v Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988)........................... 13

*United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008)..................... 9

*United States v. Duguay* 93 F.3d 346, 352 (7th Cir. 1996)........................... 11

*United States v. Hawkins,* 249 F.3d 867, 872 (9th Cir. 2001)....................... 9

*United States v. Price*, 383 U.S. 787, 794 (1966)................................... 11

*United States v. Squires* 456 F.2d 967, 970 (2nd Cir. 1972)........................ 11

**CONSTITUIONAL PROVISIONS**

Cal. Const. art. I, § 7................................................. 12

U.S. Const. amend IV.................................................. 8

U.S. Const. amend. XIV................................................ 12

**STATE STATUTES**

Cal. Veh. Code § 22651................................................ 2

**MUNICIPAL ORDINANCES**

San Francisco Transportation Code § 8.3.............................. 2

//

//

PLAINTIFF AND PETITIONER'S *EX PARTE* NOTICE AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

**OTHER AUTHORITIES**

Access to Hygiene Resources: A Basic Human Right and the Foundation of Personal and Public Health – Portland State University, available at https://www.pdx.edu/syndication/sites/www.pdx.edu.syndication/files/Hygiene%20Project%20Report%202016.pdf................................................................................... 6

"Unpacking a $10 billion budget." Data SF, City and County of San Francisco, available at https://datasf.org/blog/unpacking-a-10-billion-budget/.......................................................................................................... 7

Flaming, Daniel et al. (Nov. 1, 2009) "Where We Sleep: The Costs of Housing and Homelessness in Los Angeles.", available at https://economicrt.org/wp-content/uploads/2009/11/Where_We_Sleep_2009.pdf........................................ 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Mr. Smith brings this application for a temporary restraining order to halt the illegal sale of his car, which is currently scheduled to occur on February 14, 2018, and to obtain the return of his Car, which was illegally towed and is currently impounded by Defendants.

Defendants towed Mr. Smith's safely parked car without a warrant, without notice, unrelated to public safety or traffic exigency, to coerce payment for parking tickets Mr. Smith could not afford to pay. These acts constitute an unreasonable seizure under the Fourth Amendment of the United States Constitution and Article 1, Section 13 of the California Constitution. Defendants also failed to provide due process before the tow—no notice nor any opportunity to be heard—and after the tow, allowed only a rubber-stamp hearing that did not meet minimum due process requirements. This lack of due process violated the Fourteenth Amendment of the United States Constitution and Article 1, Section 7 of the California Constitution. Mr. Smith is suffering irreparable harm as a result of the unlawful seizure of his car, which is his only home, and that harm will be worse if his car is sold and the deprivation becomes permanent. Mr. Smith asks this Court for a temporary restraining order and preliminary injunction requiring the return of Mr. Smith's car to him, until Mr. Smith is afforded a determination on the merits as to the lawfulness of Defendants' seizure of his car as a method to collect a municipal debt.

## II. FACTS

James Smith is a 64-year-old lifelong San Francisco resident whose sole source of income is $1140 in Social Security Disability Income each month. (Declaration of James Smith ¶¶3-4, 6) ("Smith Decl."). He is the registered owner of a black 2007 Honda Accord license plate 5YVV308 ("the Car"). (Smith Decl. ¶9).

For weeks at a time during the last year, Mr. Smith's mobility was severely limited and he was unable to leave his apartment to move his car during street-sweeping days.

(Smith Decl. at ¶¶23.) He asked his caretaker to watch the car to make sure it did not get parking tickets. (Smith Decl. at ¶¶23-24.) Though his caretaker did not report any tickets, during the fall of 2017, Mr. Smith received over 10 parking citations. (Smith Decl. at ¶¶22-24; Ex B.) Mr. Smith was aware of some but not all of the citations. (Smith Decl. at ¶¶22-23.)

In the fall of 2017, Mr. Smith had to leave his apartment and he began living in his Car. (Smith Decl. at ¶¶16-18.) On December 28, 2017, Mr. Smith came back to his Car to find it missing and thought that it had been stolen. (Smith Decl. at ¶¶19-21). When he called SFPD, he was informed that it had been towed and was in the possession of AutoReturn. (Smith Decl. at ¶¶21.) Defendants had towed the car pursuant to a state statute and local ordinance permitting the towing of a vehicle with more than five outstanding parking tickets. Cal. Veh. Code § 22651(i)(1); San Francisco Trans. Code § 8.3. Defendants did not give Mr. Smith any notice in advance of the towing of his vehicle, nor did they post any advance notice on his Car. (Smith Decl. ¶22.)

Defendant San Francisco Municipal Transit Authority ("SFMTA") is the municipal agency in the City and County of San Francisco responsible for management of all ground transportation in the city, including parking. Defendant Edward D. Reiskin ("Reiskin") is the Director of Transportation of SFMTA. Defendant TEGSCO LLC is a California limited liability corporation that is doing business in the County of San Francisco under the registered fictitious business name of San Francisco AutoReturn ("AutoReturn"). AutoReturn is the agent of the SFMTA and, under contract with the SFMTA, is responsible for tow and storage of vehicles in San Francisco on behalf of Reiskin and SFMTA.

Defendants have scheduled to sell the Car on or after February 14, 2018. Defendant SFMTA has informed Mr. Smith that he cannot obtain possession of the Car unless he can pay $3163 to clear his outstanding parking citations. (Smith Decl. Ex. B.) Defendant AutoReturn informs Mr. Smith that he will have to pay an additional $3836.50, as of the date of this filing, in tow and storage charges to retrieve the Car. (Smith Decl. Ex. A.) Mr. Smith does not have the funds to pay the $6999.50 that Defendants are demanding before

PLAINTIFF AND PETITIONER'S *EX PARTE* NOTICE AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

2

1  releasing his car from impound, and he does not have the funds to purchase a replacement
2  car. (Smith Decl. at ¶12.)

3  Between January 11 and January 17, Mr. Smith, through counsel, attempted to
4  arrange for an alternative way to resolve the parking and towing fines and fees other than
5  paying the full amount up front. (Larson Decl. at ¶ 7.) When informal negotiations failed,
6  Mr. Smith appeared for a tow hearing on January 18, 2018. (Larson Decl. at ¶ 16-29;
7  Smith Decl. at ¶33-37.) Upon notice and consent from all parties, Mr. Smith made an audio
8  recording of the hearing, which is attached as Exhibit A to the Complaint.

9  Mr. Smith, through counsel, attempted to raise a constitutional challenge to the
10  tow, but the Hearing Officer replied that "you're in the wrong forum for [those
11  constitutional arguments]." (Complaint, Ex. A at p. 16:20; Exhibit C.) The Hearing
12  Officer's written decision stated, "[T]hrough counsel, you have asserted several
13  Constitutional issues. This is not the forum to rule on those issues." (Complaint, Ex. C.)

14  When asked if there was any notice given to Mr. Smith before the tow, the Hearing
15  Officer stated, "We don't send notices that it was going to be towed. The fact is if you have
16  five or more [parking tickets] then it will be towed." (Complaint, Ex. A at p. 3:8-9.)

17  Mr. Smith testified that he was indigent, and could not afford to pay the fees to
18  retrieve his car from AutoReturn. (Complaint, Ex. A at p. 12:5-10.) The hearing officer
19  refused to consider Mr. Smith's inability to pay the outstanding parking fines, tow fees, or
20  storage fees, stating that the agency is "not allowed to take into consideration the economic
21  status of the person." (Complaint, Ex. A at p. 15:23-25.)

22  The Hearing Officer stated that the parking tickets were the only reason for the tow:
23  there was no allegation that the car was parked illegally or that it posed any threat to public
24  safety. (Complaint, Ex. A at p. 6:14-17.) The Hearing Officer further stated that he would
25  base his decision regarding on the legality of the tow on a list of parking citations, that the
26  officer who ordered the tow was not present, and that the Vehicle Code does not give Mr.
27  Smith the right to cross-examine the officer. (Complaint, Ex. A at p. 6:23-25; 3:17-25;
28  4:11-25.)

1    Officer Hawkins issued a final agency determination finding that the tow was valid.
2 The decision makes no findings on the constitutional grounds on which Mr. Smith
3 challenged the tow. (Complaint Ex. C.)
4    Mr. Smith is and will continue to be homeless and sleeping out in the elements as a
5 direct consequence of Defendants' impound of his vehicle. (Smith Decl. at ¶¶18, 39, 46,
6 48.)  He cannot stay in homeless shelters because his disabilities make it difficult to wait
7 in line for the extended period of time needed to obtain a shelter bed. (Smith Decl. at ¶43.)
8    Mr. Smith wants to search for a subsidized housing unit, but needs his car so that
9 he can look for units outside of San Francisco, which has a very tight housing market.
10 (Smith Decl. at ¶¶16, 38-40, 45, 47-48.)  Mr. Smith also needs the Car to go to medical
11 appointments, to visit his elderly mother, to visit his children and grandchildren, and to
12 access social services. (Smith Decl. at ¶¶48-52).
13    Mr. Smith is not safe sleeping on the streets.  (Smith Decl. at ¶40-45.) One night in
14 January 2018, he was awakened at 4 a.m. by two people kicking him and beating him,
15 demanding he give them everything he had. (Smith Decl. at ¶42.) Mr. Smith gave the
16 attackers his wallet.  *Id.*  Mr. Smith has suffered ill health as a result of being homeless.
17 (Smith Decl. at ¶40-41, 53-58.)  Mr. Smith has the flu and has suffered terrible pain in his
18 knees and back as a result of sleeping on the streets.  (Smith Decl. at ¶53-58 .)  Mr. Smith
19 feels dejected, anxious, and frightened now that he is living on the street. (Smith Decl. at
20 ¶44, 56.)
21    The value of the car is probably less than Mr. Smith owes on his auto loan.  (Smith
22 Decl. at ¶¶13-15, 46.)  If the vehicle remains impounded and is repossessed by the lender,
23 Mr. Smith will be responsible for any deficiency balance on the loan and will have the
24 added burden of a repossession on his credit report, making it far less likely that he can
25 ever obtain another vehicle.  (Smith Decl. at ¶¶13-15, 46.)  The deficiency balance will
26 likely include the $6,999.50 balance of the tow and storage charges allegedly due
27 Respondent AutoReturn and outstanding fees to Defendants. (Smith Decl. at ¶13-15.)
28

## III. ARGUMENT

a. <u>Legal Standard for Temporary Restraining Order and Preliminary Injunction.</u>

The Court must weigh two interrelated factors when deciding whether to issue a temporary restraining order or preliminary injunction: "(1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction." *Butt v. State of California*, 4 Cal. 4th 668, 677-78 (Cal. 1992). These two considerations should be evaluated on a sliding scale, balancing the likelihood of irreparable harm with the likelihood of prevailing on the merits. *IT Corp. v. County of Imperial*, 35 Cal. 3d 63, 69 (Cal. 1983). The Court should consider "the comparative harm to be suffered by [Petitioner] if the injunction does not issue against the harm to be suffered by [Respondents]" balanced against and the likelihood that Petitioner will prevail on the merits." *King v. Meese*, 43 Cal. 3d 1217, 1227 (Cal. 1987). The factors are interrelated; "the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction." *Butt*, 4 Cal. 4th at 678 The more strongly a showing that Mr. Smith's harm greatly outweighs the harm to Defendants, the less necessary it is to demonstrate a likelihood of success on the merits. *Butt*, 4 Cal. 4th at 678.

The California Supreme Court has held, "[a]lthough the trial court has broad discretionary powers to grant or deny a request for a preliminary injunction, it has no discretion to act capriciously. It must exercise its discretion in favor of the party most likely to be injured. If the denial of an injunction would result in great harm to the plaintiff, and the defendants would suffer little harm if it were granted, then it is an abuse of discretion to fail to grant the preliminary injunction." *Robbins v. Superior Court*, 38 Cal. 3d 199, 205-06 (Cal. 1985) (internal citations omitted). "In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion and it must then be exercised in favor of that party." *Family Record Plan, Inc. v. Mitchell*, 172 Cal. App. 2d 235, 242 (1959) (internal citations omitted). Once that determination is made, a court should exercise its discretion in favor of the party more likely to be injured. *Gosney v. State of California*, 10 Cal App 3d 921 (1970).

b. Mr. Smith Will Suffer Irreparable Harm if Defendants Do Not Release the Car from Impound.

Mr. Smith will suffer irreparable harm if he is not able to recover the Car. Sleeping outside and without the protection of a car has exacerbated Mr. Smith's disabilities, caused him to suffer physically and emotionally, and exposed him to street violence –harms which cannot be fully compensated in financial terms. (Smith Decl. at ¶46.) If the Car is not released to Mr. Smith, he will continue to suffer being homeless and he will suffer additional economic injury in the form of a repossession of his vehicle. (Smith Decl. at ¶¶13-15, 46.)

California courts have recognized studies which found that "[h]omeless individuals were 10 times as likely to be victimized by crime than the average population." *In re Eichorn*, 69 Cal. App. 4th 382, 386 (1998). Homeless people suffer injuries on the street and emotional distress, while full shelters and lack of disability access at shelters can make staying outside the only option for many homeless people. For Mr. Smith, a person who suffers from debilitating physical disabilities, the harm caused by the loss of the Car and continued homelessness is severe and extreme. Without the protection of his car, Mr. Smith has a much harder time sleeping, and sleep deprivation is taking a physical and mental toll on him. (Smith Decl. at ¶¶53-58.) A recent study of homeless people showed close to 50% lack access to hygiene and have experienced medical problems as a result, 27.3% had been denied access to shelter, 26.7% had been denied employment, 24.7% were denied access to food or other services and 20% had been arrested. [1] Since his Car was impounded, Mr. Smith has suffered many of these ills, including adverse health impacts and violence.

//

//

---

[1] Access to Hygiene Resources: A Basic Human Right and the Foundation of Personal and Public Health – Portland State University, available at https://www.pdx.edu/syndication/sites/www.pdx.edu.syndication/files/Hygiene%20Project%20Report%202020 16.pdf.

PLAINTIFF AND PETITIONER'S *EX PARTE* NOTICE AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

6

*i.* The Balance of Hardship Tips Sharply in Mr. Smith's Favor.

Where an injury is great to one party and the other side would suffer little harm, "it is an abuse of discretion to fail to grant the preliminary injunction." *Robbins* 38 Cal. 3d at 205. In this case, a temporary restraining order and preliminary injunction should issue because there is a certainty that Mr. Smith will suffer irreparable harm by the Defendants' retention and sale of the Car; he suffers severe physical and emotional harm every day that he is homeless and without the shelter of his car. In contrast, any theoretical harm to Defendants would be purely financial, and in an amount so small as to be negligible when compared to their overall budgets. As the Ninth Circuit has held, "[a]n early hearing, on the other hand, would provide vehicle owners the opportunity to test the factual basis of the tow and thus protect them against erroneous deprivation of the use of their vehicles. The only state interest adversely affected by requiring an early hearing –avoidance of the administrative burden and expense – is not enough in these circumstances to warrant denying such a hearing *Stypmann v. San Francisco*, 557 F.2d 1338, 1344 (9th Cir. 1977). See also *Goichman v. Rheuban Motors Inc.* 682 F.2d 1320, 1324 (9th Cir. 1982) ("'The private interest in the uninterrupted use of an automobile is significant.") Here, Mr. Smith's interest in his vehicle greatly outweighs the government's interest in debt collection.

While Mr. Smith contests whether any amount is owed as a result of the illegal tow, the total amount of the citations allegedly owed is $3163 and the towing and storage fees assessed by AutoReturn, as the date of this filing, is $3836.50. (Smith Decl. Ex. A; B.) The total amount Mr. Smith would have to pay to recover his vehicle is $6999.50, which represents more than 50 percent of Mr. Smith's annual income but only .00000063 percent of the annual city budget of $10.1 billion.[2] On the other hand, keeping Mr. Smith homeless creates other, greater costs to the City. The public costs incurred for a homeless person

---

[2] "Unpacking a $10 billion budget." Data SF, City and County of San Francisco, available at https://datasf.org/blog/unpacking-a-10-billion-budget/.

1   living on the streets in California can cost a city up to $35,000 per year in services.[3]
2   Accordingly, returning his vehicle and permitting Mr. Smith to retain his shelter will
3   benefit the city in the long-term.

4       To the extent that Respondent SFMTA claims it must sell the car in order to obtain
5   payment for outstanding parking tickets, that rationale must be rejected. Defendants, like
6   all creditors, have other constitutionally-permissible means to obtain payment of debts
7   lawfully due without summarily confiscating and selling the cars of indigent San
8   Franciscans.

9       Accordingly, the balance of hardship is skewed in Mr. Smith's favor, and the Court
10  should grant the temporary restraining order.  "Where the plaintiff shows he will suffer
11  irreparable damage unless defendant is restrained pending trial, the relief sought should be
12  granted." *Gosney* 10 Cal. App. 3d at 924.  A temporary order is the only way to ensure
13  that Mr. Smith will be able to obtain the return of his vehicle, and to prevent the sale of the
14  Car, and will avoid such extreme harm as continued homelessness.   In contrast, any
15  potential harm to Defendants is *de minimis.*

16          c.  Mr. Smith Is Likely to Prevail on the Merits.

17              i.  *The Seizure of the Car Likely Violated Mr. Smith's Fourth*
18                  *Amendment Rights.*

19      Mr. Smith is likely to prevail on his claim that Defendants have impounded his
20  property in violation of his Fourth Amendment rights because they seized and retain the
21  Car without a warrant and without a "community caretaking" rationale.

22      "The right of the people to be secure in their persons, houses, papers, and effects,
23  against unreasonable searches and seizures, shall not be violated, and no Warrants shall
24  issue, but upon probable cause . . ." U.S. Const. amend. IV.  Towing and Impounding a
25  vehicle, even if done pursuant to municipal ordinance or state law, constitutes a seizure
26  within the protections of the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F.3d
27  858, 864 (9th Cir. 2005).

28

---

[3] Flaming, Daniel et al. (Nov. 1, 2009) "Where We Sleep: The Costs of Housing and Homelessness in Los Angeles.", available at https://economicrt.org/wp-content/uploads/2009/11/Where_We_Sleep_2009.pdf.

PLAINTIFF AND PETITIONER'S *EX PARTE* NOTICE AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Warrantless seizures – including the towing and seizure of vehicles – are "per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). Where a government actor tows a vehicle without a warrant, the government bears the burden to persuade the court "that a seizure comes under one of a few specifically established exceptions to the warrant requirement." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). Here, the only possible exception which might apply is the "community caretaking" exception.

In their "community caretaking" function, police officers may impound vehicles that "jeopardize public safety and the efficient movement of vehicular traffic." *South Dakota v. Opperman*, 428 U.S. 364 at 368-69 (1976). (defining the community caretaking function to cover vehicle accidents, the removal of disabled or damaged vehicles, the impound of automobiles which violate parking ordinances and thereby impair the efficient movement of vehicular traffic.) While it may be reasonable to tow a vehicle that impedes traffic or threatens public safety, a police officer may not execute a warrantless seizure of a vehicle when no such threat to public safety exists. *Miranda* 429 F.3d at 864 (unconstitutional to tow a vehicle from a driver's home driveway after he had permitted his unlicensed wife to practice driving the car. Once the vehicle was safely parked in the driveway, no threat to public safety existed.)

Following a similar rationale, the Ninth Circuit recently invalidated a California statute that entitles a municipality to punish an unlicensed driver by impounding her vehicle for thirty days. *Brewster v. Beck*, 859 F.3d 1194, 1997 (9th Cir. 2017) (Fourth Amendment is "implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual."); *see also United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008) (community caretaking exception inapplicable for towing a car parked on a residential street simply because the driver was unlicensed); *Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 910 (N.D. Cal. 2013) (no justification to tow a vehicle parked "in a safe and legal location, not blocking traffic.")

1    "The reasonableness of an impoundment under the community caretaking function

2    does not depend on whether the officer had probable cause to believe that there was a

3    traffic violation, but on whether the impoundment fits within the 'authority of police to

4    seize and remove from the streets vehicles impeding traffic or threatening public safety and

5    convenience.'" *Miranda*, 429 F.3d at 862, quoting *Opperman* 428 U.S. at 368-69. The

6    community caretaking exception does not permit seizure of a vehicle as punishment for

7    prior bad acts, or to coerce a driver into different conduct: The need to deter a driver's

8    unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale."

9    *Miranda* 429 F.3d. at 866.

10   Nor does a city ordinance permitting towing based upon unpaid parking tickets

11   demonstrate the existence of a community caretaking rationale. "[T]he decision to

12   impound pursuant to the authority of a city ordinance and state statute does not, in and of

13   itself, determine the reasonableness of the seizure under the Fourth Amendment, as applied

14   to the states by the Fourteenth Amendment." *Miranda* 429 F.3d at 864. "The question in

15   this Court upon review of a state-approved search or seizure is not whether the search (or

16   seizure) was authorized by state law. The question is rather whether the search was

17   reasonable under the Fourth Amendment." *Sibron v. New York*, 392 U.S. 40, 61 (1968).

     In the case at hand, Mr. Smith has demonstrated that it was not.

18   The *only* basis for Defendants' seizure of Mr. Smith's vehicle was their assertion

19   that Mr. Smith had more than five unpaid parking tickets. The tow inventory and the

20   hearing officer stated unequivocally that the car was towed only because the car had

21   accrued more than five parking citations. (Complaint Ex. A . at pp. 3:8-11, 5:4-13,

22   Complaint Ex. B.) The Car was registered, it was parked safely, it was not obstructing

23   traffic, and it was not otherwise interfering with public safety. (Smith Decl. at ¶¶24-28;

24   Smith Decl. Ex. B.) There is nothing inherently unsafe about unpaid parking tickets. As

25   in *Miranda,* where the Ninth Circuit found that a warrantless tow was not permitted under

26   the community caretaking exception just because the driver had *previously* violated driving

27   laws, the community caretaking exception does not apply here, where the tow was justified

28   solely based on prior unpaid parking tickets. *Miranda* 429 F.3d at 865. Like the car in

     *Miranda*, Mr. Smith's car was safely and legally parked, and posed no threat to the public.

The Unites States Supreme Court has enumerated examples of the interests of public safety which fall into the "community caretaking function." These include, for example, situations where vehicles have been disabled after an accident, or are parked so as to impede traffic. *Opperman,* 428 U.S. at 369. In none of the cases interpreting this doctrine is there authority for police to seize vehicles that have accrued unpaid tickets. "An officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers." *Miranda* 429 F.3d at 866. (See also *United States v. Duguay* 93 F.3d 346, 352 (7th Cir. 1996)) ("The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is the 'caretaking' of the street."); *United States v. Squires* 456 F.2d 967, 970 (2nd Cir. 1972) (an officer cannot order impoundment where the location of the vehicle does not create any need to protect the vehicle or avoid a hazard to other drivers). That is because "the purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard." *Miranda* 429 F.3d at 866.

Because Defendants have no conceivable community caretaking rationale for towing Mr. Smith's car, but nonetheless implemented a warrantless seizure of his vehicle, there is a strong likelihood that Mr. Smith will prevail on his claim that Defendants violated his Fourth Amendment rights.

Defendants – city actors and their agents – are jointly liable for carrying out and implementing the illegal tow. (Complaint ¶17). *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941 (1982) ("'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law ... [t]o act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.'") (quoting *United States v. Price,* 383 U.S. 787, 794 (1966)). A private party such as AutoReturn that acts in concert and jointly with a state actor engaged in state action is also a proper Respondent in a writ action. *Anchor Pacifica Management Company,* 205 Cal. App. 4th 232 (2012). Accordingly, Mr. Smith seeks temporary and preliminary injunctive relief against all Defendants while his challenge to the unconstitutional tow is pending. *San Diego Tuberculosis Assn. v. East San Diego,* 186

Cal. 252, 255 (Cal. 1921). "The enforcement of an unconstitutional statute can be enjoined by equity, where property rights are involved." *Jones v. Los Angeles*, 211 Cal. 304 (Cal. 1930); *Schofield v. Los Angeles*, 120 Cal. App. 240 (Cal. App. 1932); *Bueneman v. Santa Barbara*, 8 Cal. 2d 405 (Cal. 1937); *Brock v. Superior Court of Los Angeles County*, 12 Cal. 2d 605 (Cal. 1939).

### ii. *Mr. Smith Has Been Deprived of Property Without Due Process.*

Mr. Smith is also likely to prevail on his claim that SFMTA and its agent AutoReturn violated his due process rights.

The state and federal constitutions prohibit government actors from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; Cal. Const. art. I, § 7. Because a car is a person's property, the Ninth Circuit has long required due process protections in connection with vehicle tows. "Loss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause. Due process strictures must be met though the deprivation be temporary." *Stypmann* 557 F.2d at 1342 (a five day delay in providing a post-tow hearing is excessive).

The process due under the federal constitution depends on "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under the California Constitution, there is a fourth element of the analysis: "the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official." *People v. Ramirez*, 25 Cal. 3d 260, 269 (Cal. 1979).

Here, as explained above, Mr. Smith has significant interest in his car, as it is also his home, and he suffers tremendously without it. His dignitary interest in having a shelter

1  cannot be overstated; without his car, Mr. Smith is utterly exposed to the elements. The
2  risk of erroneous deprivation is of similar magnitude. The SFMTA's interest in the car is
3  exclusively financial (collection of parking unpaid tickets), and Defendants will not be
4  unduly prejudiced if the City were required to provide vehicle owners like Mr. Smith with
5  basic notice and an opportunity to be heard by a responsible City official.

6      Generally, courts analyzing vehicle tows under the Due Process clause have
7  required notice before the tow and the opportunity for a meaningful hearing within two
8  days of an owner's request after the tow. *See Clement v. City of Glendale*, 518 F.3d 1090,
9  1093 (9th Cir. 2008) (pre-tow notice generally required); *Goichman* 682 F.2d at 1325
10 (post-tow hearing required within forty-eight hours of a request).

11     Notice is required under the Due Process Clause because "the government may not
12 take property like a thief in the night; rather, it must announce its intentions and give the
13 property owner a chance to argue against the taking." *Clement*, 518 F.3d at 1093
14 (requiring the government to present "strong justification" for not providing notice to a
15 vehicle owner prior to a non-emergency tow because "removal of an automobile is a big
16 deal" that disrupts an individual's life, imposes significant retrieval costs, and can create
17 anxiety at the unexplained loss of a vehicle).

18     Pre-deprivation notice has been required in the context of tows unless there is "an
19 emergency, []or if notice would defeat the entire point of the seizure, []or when the interest
20 at stake is small relative to the burden that giving notice would impose." *Clement*, 518
21 F.3d at 1093-94. The use of one's automobile is a significant interest compared to the
22 small burden of notice. *Id.* at 1094; *Scofield v Hillsborough*, 862 F.2d 759, 762 (9th Cir.
23 1988) ("The uninterrupted use of one's vehicle [on public roads] is a significant and
24 substantial private interest.").

25     Additionally, a "fundamental requirement of due process is the opportunity to be
26 heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333
27 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). An agency violates a vehicle
28 owner's post-tow due process rights if it adopts a policy of not offering hearings or not
   conducting those hearings in a meaningful time and manner. *Scofield*, 862 F.2d at 765. In

1  addition, an agency violates a vehicle owner's post-tow due process right to a meaningful
2  hearing if the owner is not given an opportunity to examine the evidence on which the
3  hearing officer relies, or to confront the towing officer. *See Mathews*, 424 U.S. at 335.
4  The Supreme Court has taken for granted that a City must bring the officer who ordered
5  the tow to the administrative tow hearing. *City of Los Angeles v. David*, 538 U.S. 715, 718,
6  (2003) (noting that "the city has to contact the towing officer and arrange for his
7  appearance" in detailing the administrative steps required for tow hearings).

8      For a hearing to be meaningful, an agency should give notice of the criteria that
9  will determine the administrative decision. *Anderson v. Superior Court*, 213 Cal. App. 3d
10  1321, 1330 (1989). Further, an agency must permit presentation of all relevant claims as
11  required in order to exhaust the administrative remedy. *See Jonathan Neil & Assoc., Inc.
12  v. Jones*, 33 Cal. 4th 917, 933 (2004) (exhaustion requires agency decision of "entire
13  controversy"); *Bleeck v. State Bd. of Optometry* 18 Cal. App. 3d 415, 432 (1971)
14  (exhaustion requires "a full presentation to the administrative agency upon all issues of the
15  case and at all prescribed stages of the administrative proceedings").

16      In the case at hand, Mr. Smith was provided no process at all before the Defendants
17  deprived him of his Car. Although there were no emergent conditions necessitating an
18  immediate tow, defendants neither sent a notice to Mr. Smith nor posted any notice on his
19  vehicle. Accordingly, Mr. Smith had no opportunity to make his appeal to a responsible
20  government official to prevent the Defendants from carrying out the illegal tow. Had
21  Defendants provided Mr. Smith with pre-deprivation notice, Mr. Smith would have had the
22  opportunity to demonstrate that his nonpayment of parking tickets was due in part to his
23  disability and lack of knowledge about the tickets, and in part to his indigence. He could
24  have attempted to resolve his tickets by means other than immediate payment-in full, thus
25  avoiding the tow altogether, and/or demonstrating that any tow would be unconstitutional.
26  Because the Defendants did not provide any notice or opportunity for Mr. Smith to make
27  such a showing, Mr. Smith is likely to prevail on his due process claim.

28      Furthermore, when Mr. Smith sought the return of his illegally towed car,
   Defendants failed and refused to permit him a reasonable opportunity to contest the

PLAINTIFF AND PETITIONER'S *EX PARTE* NOTICE AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
14

1 legality of the tow. Defendants did not make available the evidence relied on at the tow
2 hearing, and did not present the officer who ordered the tow for examination. (Complaint
3 Ex. A at pp. 3:17-20; 5:1-24). The hearing officer refused to consider or rule on Mr.
4 Smith's claim that the tow violated the Fourth Amendment, and refused to consider Mr.
5 Smith's indigence or ability to pay. (Complaint, Ex. A at pp. 16:20; 12:3-10; Exhibit C.)
6 Due to these deficiencies, the hearing lacked basic elements of due process, and Mr. Smith
7 is likely to prevail on his claim that the Defendants violated his rights to Due Process of
8 law under the state and federal constitutions.

9        IV. BOND SHOULD BE WAIVED BECAUSE OF MR. SMITH'S INDIGENCE.

10       Where a preliminary injunction is issued in favor of low-income persons, the
11 Court has the common law power to waive the requirement that an undertaking be
12 posted to protect the enjoined party. *Conover v. Hall*, 11 Cal.3d 842, 851-52 (Cal.
13 1974).

14       In this case, Mr. Smith is a homeless, disabled person who subsists on disability
15 income. Mr. Smith is patently unable to post bond without seriously affecting her ability
16 to pay for the necessities of life. Furthermore, as set forth above, Defendants will not be
17 greatly harmed by the issuance of an injunction. For these reasons, the posting of bond
18 should be waived.

19                          V. CONCLUSION

20       For the reasons outlined above, Mr. Smith respectfully requests that the Court
21 enjoin Defendants from ordering, conducting, or completing a sale of the Car, and return
22 the Car to Mr. Smith during the pendency of this Action. Mr. Smith requests that the Order
23 continue until such time as the Court determines whether Defendants' tow of the Car was
24 lawful and conducted without violations of Mr. Smith's constitutional rights.

25                                    Respectfully submitted,

26
                                      BAY AREA LEGAL AID
27                                    By
                                         Claire Johnson Raba,
28                                       Attorney for Plaintiff/Petitioner
                                         James Smith

PLAINTIFF AND PETITIONER'S *EX PARTE* NOTICE AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

15

Claire Raba SBN 271691
Rebekah Evenson SBN 207825
BAY AREA LEGAL AID
1035 Market Street, 6th Floor
San Francisco, CA 94103
Telephone: 415 982 1300
Fax: 415 982 4243
cjohnson@baylegal.org

Elisa Della-Piana SBN 226462
J. Pond SBN 299229
Lawyers' Committee for Civil Rights
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 847-3001
Fax: (415) 543-0296
edellapiana@lccr.com

ATTORNEYS FOR PETITIONER AND PLAINTIFF
James Smith

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
UNLIMITED CIVIL JURISDICTION

| JAMES SMITH, | Case No. **CPF - 18 - 516045** |
|---|---|
| Petitioner and Plaintiff, | **DECLARATION OF VICTORIA** |
| v. | **LARSON IN SUPPORT OF *EX PARTE*** |
| | **APPLICATION FOR TEMPORARY** |
| EDWARD D. REISKIN in his official | **RESTRAINING ORDER AND ORDER** |
| capacity as the Director of Transportation of | **TO SHOW CAUSE WHY A** |
| the San Francisco Municipal Transit | **PRELIMINARY INJUNCTION** |
| Authority; the SAN FRANCISCO | **SHOULD NOT ISSUE** |
| MUNICIPAL TRANSIT AUTHORITY; | |
| TEGSCO LLC dba SAN FRANCISCO | |
| AUTO RETURN; DOES 1-10, inclusive, | **Date: February 13, 2018** |
| | **Time: 11:00 a.m.** |
| Defendants and Respondents. | **Dept: 302** |
| | **Judge: Honorable Harold E. Kahn** |
| | **Reservation No.: _____** |

//

//

1

DECLARATION OF VICTORIA LARSON

I, Victoria Larson, declare:

1. I am making this declaration in support of the *ex parte* application for temporary restraining order and order to show cause why a preliminary injunction should not issue.

2. I have personal knowledge of the facts in this declaration.

3. I am a law clerk at the Lawyers' Committee for Civil Rights.

4. On January 11, 2018, I listened to a voicemail from James Smith. I called him back the same day.

5. Mr. Smith explained that his car had been towed and he could not afford to get it back.

6. Mr. Smith explained that he was homeless, and had been sleeping on the streets since losing his vehicle.

7. Between January 11 and January 17, 2018 I worked with Elisa Della-Piana who communicated directly with Diana Hammons, senior manager at SFMTA. We unsuccessfully attempted to negotiate the release of Mr. Smith's vehicle.

8. On January 17, 2018, I called the SFMTA tow desk to request a tow hearing for Mr. Smith.

9. I called SFMTA because their tow hearing scheduling website had a disclaimer stating that "if your vehicle is still in storage and you cannot afford to get it out, you must schedule an immediate hearing by calling [SFMTA]"

10. I did not reach anyone to schedule an immediate hearing on January 17, 2018.

11. On January 18, 2018, I spoke with someone at the SFMTA tow hearing desk. She stated that it was not necessary to schedule a tow hearing in advance because my client was indigent. Instead, he should just appear at the SFMTA office.

12. I requested copies of all evidence to be used against Mr. Smith during the tow hearing.

DECLARATION OF VICTORIA LARSON

13. The SFMTA employee told me that I would need to go to the SFMTA office to get copies of anything.

14. On January 19, 2018, I again called the SFMTA tow desk at approximately 10:45 AM. I spoke with Carol Alexander and again requested copies of all evidence to be used against Mr. Smith during his tow hearing.

15. Carol Alexander emailed me a copy of the tow inventory for Mr. Smith's vehicle at 10:48 AM on January 19, 2018.

16. I met Mr. Smith at the SFMTA office at approximately 12:40 PM on January 19, 2018.

17. I spoke with an SFMTA employee at a window, and stated I was here for an immediate tow hearing for my client.

18. The SFMTA employee handed me a form to fill out. The form asked for basic information about the car towed.

19. When I returned to the window, the SFMTA employee stated that the form was to request a hearing within 48 hours because they did not do same day hearings.

20. I explained to the SFMTA employee that I had been told by someone at the SFMTA hearing desk two days prior that scheduling a hearing was not necessary.

21. This employee told me to wait with my client.

22. Approximately 5 minutes later, another SFMTA employee waved at me to come speak with her.

23. The SFMTA employee asked about my client, and if I knew about the online tow hearing scheduler.

24. I explained again that I called the SFMTA directly, as directed by the website.

25. I explained that I was told when I called to just appear for an immediate tow hearing.

3

26. After approximately 25 minutes, a third SFMTA employee waved me to the window. She asked me to clarify my client's address on the form I had filled out.

27. I stated that my client is homeless. I wrote my client's former mailing address.

28. After approximately 10 minutes, Mr. Smith was called into a hearing room.

29. I accompanied Mr. Smith and witnessed the tow hearing.

30. With permission, I used my phone to record the audio of the hearing.

31. Aiken Welsh transcribed the recording.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 2/11/18

VICTORIA LARSON

BN FACSIMILE

4

Claire Raba SBN 271691
Rebekah Evenson SBN 207825
BAY AREA LEGAL AID
1035 Market Street, 6th Floor
San Francisco, CA 94103
Telephone: 415 982 1300
Fax: 415 982 4243
cjohnson@baylegal.org

Elisa Della-Piana SBN 226462
J. Pond, SBN 299229
Lawyers' Committee for Civil Rights
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 847-3001
Fax: (415) 543-0296
edellapiana@lccr.com

ATTORNEYS FOR PETITIONER and PLAINTIFF
James Smith

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| JAMES SMITH,<br>Petitioner and Plaintiff,<br>v.<br><br>EDWARD D. REISKIN in his official capacity as the Director of Transportation of the San Francisco Municipal Transit Authority; the SAN FRANCISCO MUNICIPAL TRANSIT AUTHORITY; TEGSCO LLC dba SAN FRANCISCO AUTO RETURN; DOES 1-10, inclusive,<br><br>Respondents and Defendants. | Case No. **CPF - 18 - 516045**<br><br>**DECLARATION OF JAMES SMITH IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>**Date: February 13, 2018**<br>**Time: 11:00 a.m.**<br>**Dept: 302**<br>**Judge: Honorable Harold E. Kahn**<br>**Reservation No.: _____** |

I, James Smith, declare:

1. I am making this declaration in support of the *ex parte* application for temporary restraining order and order to show cause why a preliminary injunction should not issue.

1

DECLARATION OF JAMES SMITH

2. I have personal knowledge of the facts in this declaration.

3. I am 64 years old.

4. I am disabled, and I get my monthly income from SSDI. I receive $1140 per month.

5. I am currently homeless.

6. I am a resident of San Francisco, and I have lived here for my entire life.

7. I worked in the Bay Area for most of my life. I worked for hospitals in San Francisco as a custodian and environmental supervisor. I also worked for the Department of Defense off and on for eighteen years as a machinist. I stopped working full time a few years ago because of my disabilities.

8. I am unemployed now, and cannot work because of my disabilities.

9. I am the owner of a 2007 black Honda Accord, California license plate number 5YVV308.

10. I financed the purchase of the car in September 2017 from San Francisco Honda with a loan through Credit Acceptance Corporation. I still owe most of the money on my car loan. I was paying $342 a month on the car, which is about 30 percent of my monthly income.

11. I stopped paying when the car was towed, because it didn't make sense to pay for it since I was worried I would not get the car back.

12. Out of my February disability benefits, I have the money to immediately make the two missed payments on my car if I if I am able to get it back.

13. I am informed and believed that when cars are sold at an auction after being repossessed or towed, the value recovered for the vehicle is below blue book value and that the amount recovered will not be enough to pay off my loan.

14. In that event, I will have bills from the tow yard and city parking tickets. I will also have an outstanding deficiency balance on my car loan, but will no longer have a car.

DECLARATION OF JAMES SMITH

15. If I do not get my car back, I am concerned that the balance I will to Credit Acceptance Corporation will ruin my credit and I will not be able to qualify for another affordable car loan.

16. I bought the car because I was afraid I would lose my apartment. Housing in San Francisco is very expensive and the wait lists are long for affordable housing. I knew I was going to have to live someplace else, and I didn't want to be on the street. I bought a nice Accord because it was big, clean, and in good shape. I thought it would be comfortable enough for me to live in while I saved some money.

17. In late October 2017, I had to move out of my apartment because I could not afford it anymore when my rent was raised. This is the first time I have been homeless.

18. I then began to live in my car. It was not as good as having an apartment, but I felt safe in my car, and it protected me from the cold weather.

19. On the morning of December 28, 2017, I woke up and went to get something to eat. I left my car safely parked on Hyde Street. When I came back, it was gone, with all the things I own inside of it. It was a terrible feeling. I thought it had been stolen and called the police.

20. The police said it had not been reported stolen, and suggested that I contact AutoReturn to see if it had been towed.

21. I called AutoReturn, and they told me that my car was towed because I had not paid some parking tickets. They said I would have to pay about $2000 to get my car back.

22. I had no idea the car was going to be towed. I did not get anything in the mail when I was still living at my apartment saying that would be towed, and there was no notice on my car. If SFMTA had told me it was going to be towed, I would have done everything I could to stop it from happening.

23. When I called AutoReturn and they told me I had over 20 parking tickets, I had not even realized that I had many of them. I was sick and could not leave my

3

bed for many weeks in the fall, and I could not check on my car myself. My caretaker said she would move the car to make sure it was legally parked, and avoid street sweeping tickets, but she did not, and she did not tell me about the citations.

24. I was surprised about how many citations there were, in part because I try to keep all my documents for the car in order.

25. My car is fully operational and has current registration with the California Department of Motor Vehicles.

26. I have insurance for the car.

27. I have a current California driver's license.

28. I have a valid disability placard, which was visible when my car was towed.

29. When I purchased my car in September, I took out a loan for over $10,000 and I only made a few payments before the car was towed. It is in good condition, so I felt good about the investment, especially thinking I was going to be living in it.

30. When I talked to AutoReturn to try to get my car back, I said I could not afford to pay for the parking citations. They did not tell me there were any discounts for low income people. They did not tell me that I had a right to a tow hearing. They did not tell me if I could ask for community service or another option because I am unable to pay.

31. On January 11, 2018, I called the Lawyers' Committee for Civil Rights to try and get assistance in getting my car back. I heard about Lawyers' Committee from Coalition on Homelessness.

32. I described the issues with my car to Victoria Larson, an intern at the Lawyers' Committee. I gave her permission to do what she could to get my car back.

33. Victoria Larson called me back and told me I had the right to a tow hearing. Victoria, Elisa Della-Piana, and another LCCR staff member accompanied me to a tow hearing on January 19, 2018.

4

DECLARATION OF JAMES SMITH

34. We waited about 40 minutes at SFMTA, while Victoria tried to convince them to let us have a hearing that day. After 40 minutes, a hearing officer called us into a small room.

35. At the hearing, the hearing officer told me and my lawyer that they never give notice before towing cars for unpaid parking citations.

36. After the hearing, the hearing officer handed us a decision.

37. The hearing officer said the tow was legal because I had unpaid parking tickets. It seemed like he did not even consider what my lawyer and I said at the hearing.

38. After we left the hearing office, I cried a little, because if I cannot get my car back, I do not have anywhere to go.

39. Since losing my car, I have slept on the streets in bus stations, or on porches. Some nights I have been able to stay with friends. Two or three nights I stayed in a shelter.

40. Not having my car to sleep in at night has been hard on my health.

41. I have a hard time sleeping outside, and lack of sleep is making me sick.

42. I had more protection when I was sleeping in my car: is not safe sleeping on the streets. One night in January, I was woken up around 4 am and beaten and robbed. I was sleeping at Hyde and Bush outside of a pharmacy. Two people kicked me while I was asleep and started to beat me. They demanded I give him everything I have. I hesitated for a while, and was kicked in the face. I gave them my wallet, and then they left me alone.

43. Now I am highly suspicious of everyone. I am afraid people are trying to take advantage of me or hurt me.

44. I am always afraid. I have begun panicking a lot. I have racing and scattered thoughts.

45. It is hard for me to stay in shelters because you have to call in the morning and wait in line for a long time. My disabilities prevent me from being able to do that.

5

46. If my car is sold, I will not be able to purchase another car and I believe that I will continue to be homeless.

47. Without a car, I will not be able to drive outside of the city of San Francisco to apply for available affordable housing for disabled people.

48. I want to find housing, but it is very difficult. I had a Section 8 voucher, but my wife, who I am no longer with, took my voucher. I don't know if she is using it, or if it is going to waste. I don't know how to get it back. I have been so stressed about my car that I really haven't been able to think about the stress of losing the voucher too.

49. Without a car, I will not be able to drive to my doctor's appointments.

50. As a result of my disability, I am not very mobile, and it is hard for me to use public transportation.

51. Without a car, it will be very hard to see my elderly mother, who is not doing well. She lives in San Francisco, but I cannot get there without a car because she is not near public transportation.

52. Without a car, I cannot visit my grandkids and kids. It is too hard to travel on public transportation to them. I am embarrassed to tell them that I am homeless, I have never felt this way with my family before.

53. Without a car, I am in a lot of pain both physically and mentally.

54. Before losing my car, my back and knees already constantly were in pain.

55. Since losing my car and sleeping on the streets, both my knee and back pain have increased. My knees lock up all the time. The cold weather hurts my joints.

56. I have a lot of anxiety now. I feel like I am a different person since becoming homeless. I feel dejected.

57. I also have the flu. It is very hard to have the flu when you're homeless because there is no place to rest and heal.

58. I have been to Saint Francis Hospital for my back pain and for my flu and cold symptoms.

6



59. My income is not enough to pay for my basic living expenses and pay for my parking citations.

60. I have attached a true and correct copy of the AutoReturn fees from their website on February 11, 2018 to this declaration as Exhibit A.

61. I have attached a true and correct copy of the SFMTA citation list from the SFMTA website as of February 11, 2018 to this declaration as Exhibit B.

62. I had to leave my apartment because my income was not enough to cover rent and living expenses without parking citations.

63. I do not have any family that can help me financially.

DECLARATION OF JAMES SMITH

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 2-15-08

_____
JAMES SMITH

BY FACSIMILE

Home (/) / San Francisco, CA (/san-francisco-ca/) /

## Vehicle Details

**TOW DETAILS**

| | |
|---|---|
| **TR Number:** | 20171228M0014 |
| **License:** | 5YVV308 - CA |
| **VIN:** | San Francisco, CA (/san-francisco-ca) |
| **Vehicle:** | BLACK 2007 HONDA ACCORD |
| **Towed Date and Time:** | 12/28/17 8:24 AM |
| **Towed By:** | SF Municipal Transportation Agency |
| **Towed From:** | 1125 HYDE STREET |
| **Reason:** | SCOF/651.1 Scoflaw-Citations |
| **Status:** | STORED |
| **Tow Company:** | AutoReturn<br>450 7th St, San Francisco, CA<br>415-865-8200<br>Google Maps (http://maps.google.com/maps?q=450+7th+St,San+Francisco,CA) |

Find Vehicle   Vehicle Sales (/san-francisco-ca/vehicle-sales/)   FAQs (/san-francisco-ca/faqs/)   Contact Us (/san-francisco-ca/contact-us/)   Feedback (/san-francisco-ca/feedback/)   Claims (/san-francisco-ca/claims/)

**FEE DETAILS**

| | |
|---|---|
| 1st Day Storage-PassVeh: | $59.25 |
| City Admin Fee - Excluding Citations: | $269.00 |
| Passenger Vehicle Storage: | $3,195.00 |
| Tow Passenger Vehicle: | $214.00 |
| Lien Fee-$500 to $4,000-Rqst: | $35.00 |
| Lien Fee-$500 to $4,000-Auth: | $35.00 |
| Transfer Fee-2nd Tow-BAYSH: | $29.25 |
| **Total:** | **$3,836.50** |

## What do you do now?

To retrieve your vehicle, please come to our customer service center located at 450 7th Street, between Bryant and Harrison Streets, across from the San Francisco Sheriffs Department. You will be required to pay all outstanding towing, storage, and other fees accrued for the vehicle since the time of tow. In addition, if there are 5 or more citations in penalty, you will be required to pay for these as well. Outstanding citation information is not available through our web site. Please call our service center at 415-865-8200 for information about delinquent citations. The storage facility is open 24 hours a day, 365 days a year for vehicle retrieval. Please be aware that as required by the City and County of San Francisco, there must be a currently licensed driver to take the vehicle out of our storage facility.

Customer Service

10

DECLARATION OF JAMES SMITH


**SFMTA**
Municipal
Transportation
Agency

# Citation Payment and Inquiry

Your vehicle has been booted. You must pay all delinquent citations and the boot removal fee.

License/Plate: CA5YVV308
You have a total of 21 Citation(s) currently on this plate.

List of citations may not represent all open citations on vehicle. If vehicle has been sold, citations will be listed for current owner only. Handwritten citations may take up to ten business days to process and appear below.

Total Amount Due: $3163.00

Boot-related citations due (payment mandatory):
☉ You must pay all of the following delinquent citations.

| Citation Number | Issue Date | Violation Code | Violation | Amount Due |
|---|---|---|---|---|
| 886674784 | 09/20/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 886621245 | 09/21/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 886296512 | 09/21/2017 | V22500H | DOUBLE PARKING | $185.00 |
| 886873152 | 09/22/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 886885285 | 09/27/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 887001085 | 10/02/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 887131210 | 10/13/2017 | TRC7.2.25 | RED ZONE | $185.00 |
| 887770251 | 10/19/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 887765734 | 10/25/2017 | V22500F | ON SIDEWALK | $185.00 |
| 887765745 | 10/25/2017 | V22500E | DRIVEWAY | $185.00 |
| 888501085 | 11/06/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 887812542 | 11/13/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| PD31120331 | 11/13/2017 | TRC7.2.35 | PARKING ON GRADES | $141.00 |
| 891146421 | 11/17/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 891327356 | 11/30/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| 886979494 | 12/02/2017 | V22500I | BUS ZONE | $320.00 |
| 891961103 | 12/12/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| 892162025 | 12/14/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| 891637386 | 12/19/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| 892308535 | 12/21/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| 892600214 | 12/28/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| | | | **Boot Removal Fee:** | $0.00 |
| | | | **Total Payment:** | $3163.00 |

Submit    Back    Cancel

12

DECLARATION OF JAMES SMITH

Claire Raba SBN 271691
Rebekah Evenson SBN 207825
BAY AREA LEGAL AID
1035 Market Street, 6th Floor
San Francisco, CA 94103
Telephone: 415 982 1300
Fax: 415 982 4243
cjohnson@baylegal.org

Elisa Della-Piana SBN 226462
Lawyers' Committee for Civil Rights
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 847-3001
Fax: (415) 543-0296
edellapiana@lccr.com

ATTORNEYS FOR PETITIONER and PLAINTIFF
James Smith

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| JAMES SMITH,<br><br>Petitioner and Plaintiff,<br><br>v.<br><br>EDWARD D. REISKIN in his official capacity as the Director of Transportation of the San Francisco Municipal Transit Authority; the SAN FRANCISCO MUNICIPAL TRANSIT AUTHORITY; TEGSCO LLC dba SAN FRANCISCO AUTO RETURN; DOES 1-10, inclusive<br><br>Respondents and Defendants. | Case No. **CPF** . **18-516045**<br><br>**DECLARATION OF CLAIRE JOHNSON RABA REGARDING NOTICE OF PLAINTIFF'S** *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>**Date: February 13, 2018**<br>**Time: 11:00 a.m.**<br>**Dept: 302**<br>**Judge: Honorable Harold E. Kahn**<br>**Reservation No.: _____** |

I, Claire Johnson Raba, declare:

1. I am an attorney licensed to practice law in the State of California under state bar number 271691.

1

DECLARATION OF CLAIRE JOHNSON RABA REGARDING NOTICE

2. I am making this declaration in support of Plaintiff's *ex parte* application for a temporary restraining order and order to show cause re: preliminary injunction.

3. I have personal knowledge of the facts in this declaration.

I, Claire Raba, declare:

1. I am an attorney licensed to practice law in the State of California under state bar number 271691.

2. I am making this declaration in support of Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction

3. I have personal knowledge of the facts stated in this declaration.

4. On February 12, 2018 at 9:45 a.m., I contacted the San Francisco City Attorney's office by telephone at 415-554-3800. I spoke with a deputy city attorney named Isidro Jiminez. I informed Mr. Jiminez who answered the phone that Bay Area Legal Aid represents Petitioner James Smith. I informed Mr. Jiminez I would be appearing at the Superior Court of California, County of San Francisco, at 400 McAllister Street in San Francisco California on Tuesday, February 13, 2018 at approximately 11:00 a.m. in Department 302 on behalf of James Smith, in order to seek a temporary restraining order to halt the sale of Mr. Smith's automobile and return the car to Mr. Smith and an order to show cause regarding a preliminary injunction. Mr. Smith's vehicle is a 2007 black Honda Accord, California license plate number 5YVV308.

5. At approximately 10:15 a.m., on Monday, February 12, 2018, I called the San Francisco City Attorney's office and asked for the fax number for the litigation department. I was informed that fax number is 415-554-3837. At approximately 10:40 a.m., I faxed a true and correct copy of Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction and Memorandum of Points and Authorities; Declaration of James

2

DECLARATION OF CLAIRE JOHNSON RABA REGARDING NOTICE

1    Smith, including exhibits; Declaration of Victoria Larson, Declaration of the

2    Claire Johnson Raba Regarding Notice; and Proposed Order to the San

3    Francisco City Attorney's office at the following fax number: 415-554-3837 to

4    the attention of Isidro Jiminez.

5    6.   Mr. Jiminez informed me that I should also provide notice to SFMTA directly

6         and instructed me to call Diana Hammons at 415-701-4610. I spoke with Ms.

7         Hammons by telephone at 10:35 a.m. and provided her the same information

8         that I provided to the San Francisco City Attorney's office. At approximately

9         10:45 a.m., I emailed a true and correct copy Plaintiff's Ex Parte Application for

10        Temporary Restraining Order and Order to Show Cause Re: Preliminary

11        Injunction and Memorandum of Points and Authorities; Declaration of James

12        Smith, including exhibits; Declaration of Victoria Larson, Declaration of the

13        Claire Johnson Raba Regarding Notice; and Proposed Order to Diana

14        Hammons at diana.hammons@sfmta.com.

15   7.   On February 12, 2018 at 9:55am I contacted Auto Return by telephone at 415-

16        865-8200 and spoke to a representative named Nicole (no last name provided),

17        Badge Number 8319. I provided Nicole the same information that I provided to

18        the office of the San Francisco City Attorney, which is described in paragraphs

19        4 and 5, above. I also informed Nicole that this order seeks to enjoin the release

20        of the car to any person other than Mr. Smith. I asked that Nicole route the fax

21        to John Wicker, Agent for Service of Process for Defendant TEGSCO LLC,

22        dba San Francisco AutoReturn, or the legal department of Defendant TEGSCO

23        LLC, dba San Francisco AutoReturn. I received a call back from a manager at

24        AutoReturn, Sayeed Shah who agreed to accept service of ex parte notice and

25        provided me with the fax number of 415-522-0612. .

26   8.   At approximately 10:40 a.m. on February 12, 2018, I faxed a true and correct

27        copy of Plaintiff's Ex Parte Application for Temporary Restraining Order and

28

3

DECLARATION OF CLAIRE JOHNSON RABA REGARDING NOTICE

1   Order to Show Cause Re: Preliminary Injunction and Memorandum of Points

2   and Authorities; Declaration of James Smith, including exhibits; Declaration of

3   Victoria Larson, Declaration of the Claire Johnson Raba Regarding Notice; and

4   Proposed Order to Auto Return at the following fax number: 415-522-0612.

5

6   I declare under the penalty of perjury under the laws of the State of California that the

7   foregoing is true and correct.

8

9

10

11

12

13  Executed at San Mateo, California on February 12, 2018

14

15

                                    Claire Johnson Raba
16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CLAIRE JOHNSON RABA REGARDING NOTICE

✳ ✳ ✳ Communication Result Report ( Feb. 12. 2018 11:02AM ) ✳ ✳ ✳

1)
2)

Date/Time: Feb. 12. 2018 10:55AM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 0929 | Memory TX | 14155543837 | P. 46 | OK | |

--------------------------------------------------------------------------------
Reason for error
    E. 1) Hang up or line fail          E. 2) Busy
    E. 3) No answer                     E. 4) No facsimile connection
    E. 5) Exceeded max. E-mail size     E. 6) Destination does not support IP-Fax


BAY AREA LEGAL AID
WORKING TOGETHER FOR JUSTICE

# Fax

To: San Francisco City Attorney       From: Claire Johnson Raba
ATTN: Isidro Jimimez                  Sender Phone: (415) 982-1300
Fax: 415-554-3837                     Sender Fax: (415) 982-4243
Phone:                                Pages: (including cover) 47
Cc:                                   Date:
Re: EX PARTE NOTICE

x☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

COMMENTS:

The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named as Addressee. If you are not the addressee, you are hereby notified that any dissemination or copying of this facsimile message is strictly prohibited. If you have received this facsimile message in error, please immediately notify the sender by telephone.

*  *  *  Communication Result Report ( Feb. 12. 2018 11:14AM )  *  *  *
1)
2)

Date/Time: Feb. 12.  2018 11:07AM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 0930 Memory TX | 14155220612 | P. 46 | OK | |

Reason for error
E. 1) Hang up or line fail       E. 2) Busy
E. 3) No answer                  E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size  E. 6) Destination does not support IP-Fax



**BAY AREA LEGAL AID**

WORKING TOGETHER FOR JUSTICE

# Fax

To: San Francisco Ante Return          From: Claire Johnson Rabe
ATTN: Sayeed Shah                      Sender Phone: (415) 982-1300
Fax: 415-522-0612                      Sender Fax: (415) 982-4243
Phone:                                 Pages: (including cover) 47
Cc:                                    Date:
Re: EX PARTE NOTICE

x☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

COMMENTS:

The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named as Addressee. If you are not the Addressee, you are hereby notified that any dissemination or copying of this facsimile message is strictly prohibited. If you have received this facsimile message in error, please immediately notify the sender by telephone.

RECEIVED
FEB 13 2018
BY:

Claire Raba SBN 271691
Rebekah Evenson SBN 207825
BAY AREA LEGAL AID
1035 Market Street, 6th Floor
San Francisco, CA 94103
Telephone: 415 982 1300
Fax: 415 982 4243
cjohnson@baylegal.org

Elisa Della-Piana SBN 226462
Lawyers' Committee for Civil Rights
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 847-3001
Fax: (415) 543-0296
edellapiana@lccr.com

ATTORNEYS FOR PETITIONER and PLAINTIFF
James Smith

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| JAMES SMITH, <br><br> Petitioner and Plaintiff, <br><br> v. <br><br> EDWARD D. REISKIN in his official capacity as the Director of Transportation of the San Francisco Municipal Transit Authority; the SAN FRANCISCO MUNICIPAL TRANSIT AUTHORITY; TEGSCO LLC dba SAN FRANCISCO AUTO RETURN; DOES 1-10, inclusive, <br><br> Respondents and Defendants. | Case No. **CPF 18-516045** <br><br> **[PROPOSED] ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER** <br><br> **Date: February 13, 2018** <br> **Time: 11:00 a.m.** <br> **Dept: 302** <br> **Judge: Honorable Harold E. Kahn** <br> **Reservation No.:** _____ |

TO DEFENDANTS EDWARD D. REISKIN in his official capacity as the Director

of Transportation of the San Francisco Municipal Transit Authority; the SAN

FRANCISCO MUNICIPAL TRANSIT AUTHORITY; TEGSCO LLC dba SAN

FRANCISCO AUTO RETURN, AND THEIR ATTORNEYS OF RECORD:

Based upon Plaintiff's *Ex Parte* Application for a Temporary Restraining Order and

Order to Show Cause why a preliminary injunction should not issue prohibiting the sale of

Petitioner's car, Memorandum of Points and Authorities, Declaration of James Smith, as

well as on the argument of parties at a hearing on February 13, 2018 in Department 302, the Court orders the following:

## ORDER TO SHOW CAUSE

Defendants Select Portfolio Servicing, Inc. and National Default Servicing Corporation ARE HEREBY ORDERED TO SHOW CAUSE at _____(time) on _____, 2018, or as soon thereafter as this matter may be heard in Department _____ of the above-referenced Court, located at 400 McAllister St. San Francisco, California, why you, your agents, servants, assigns and all those acting in concert with you should not be preliminarily enjoined, pending trial in this action, from implementing or otherwise giving effect to a sale of the 2007 Honda Civic, California license plate number 5YVV308 ("the vehicle"), from transferring possession of the vehicle to any person other than Plaintiff Smith, and from requiring Mr. Smith to pay any fines or fees in order to retrieve the vehicle.

This Order to Show Cause and supporting papers shall be served on Defendants no later than _____, 2018 by _____(manner of service).

Proof of such service shall be filed and delivered to the Court hearing the Order to Show Cause on _____, 2018.

The following briefing schedule shall apply:

Plaintiff shall file and serve any additional memoranda and evidence in support of the issuance of a preliminary injunction by no later than _____, 2018. Defendant shall serve any Opposition and supporting evidence by no later than _____, 2018. Any reply papers shall be filed and served on Defendants no later than _____, 2018.

Any return on the OSC shall be filed and hand-served on Plaintiff no later than _____ (time) on _____, 2018. Any reply papers shall be filed and served on Defendants no later than _____ (time) on _____, 2018.

## TEMPORARY RESTRAINING ORDER

PENDING HEARING on the above Order to Show Cause:

Defendants and their agents, servants, assigns and all those acting in concert with them ARE HEREBY RESTRAINED AND ENJOINED from conducting a sale of Plaintiff's 2007 Honda Civic, California license plate number 5YVV308, or from otherwise transferring possession of the vehicle to any person other than Plaintiff Smith.

Defendants and their agents, servants, assigns and all those acting in concert with them ARE HEREBY RESTRAINED AND ENJOINED from refusing to release to Mr. Smith the 2007 Honda Civic, California license plate number 5YVV308. During the pendency of this Action, Defendants shall release the vehicle to Mr. Smith without requiring prior payment of any fines or fees.

Dated:_____

By:_____

Judge of the Superior Court
San Francisco County

1   Claire Raba SBN 271691
  Rebekah Evenson SBN 207825
2   BAY AREA LEGAL AID
  1035 Market Street, 6th Floor
3   San Francisco, CA 94103
  Telephone: 415 982 1300
4   Fax: 415 982 4243
  cjohnson@baylegal.org
5
  Elisa Della-Piana SBN 226462
6   Lawyers' Committee for Civil Rights
7   131 Steuart Street, Ste. 400
  San Francisco, CA 94105
8   Telephone: (415) 847-3001
  Fax: (415) 543-0296
9   edellapiana@lccr.com

10
11   ATTORNEYS FOR PETITIONER and PLAINTIFF
  James Smith

12

13       SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
                UNLIMITED CIVIL JURISDICTION

14

15   JAMES SMITH,
  Petitioner and Plaintiff,
16   v.

17   EDWARD D. REISKIN in his official
  capacity as the Director of Transportation of
18   the San Francisco Municipal Transit
  Authority; the SAN FRANCISCO
19   MUNICIPAL TRANSIT AUTHORITY;
  TEGSCO LLC dba SAN FRANCISCO
20   AUTO RETURN; DOES 1-10, inclusive,

21
  Respondents and Defendants.
22

FILED
Superior Court of California
County of San Francisco

FEB 14 2018

CLERK OF THE COURT
BY: _____
              Deputy Clerk

Case No. CPF-18- 516045

[~~PROPOSED~~] ORDER TO SHOW
CAUSE AND TEMPORARY
RESTRAINING ORDER

Date: February 13, 2018
Time: 11:00 a.m.
Dept: 302
Judge: Honorable Harold E. Kahn
Reservation No.: _____

23       TO DEFENDANTS EDWARD D. REISKIN in his official capacity as the Director

24 of Transportation of the San Francisco Municipal Transit Authority; the SAN

25 FRANCISCO MUNICIPAL TRANSIT AUTHORITY; TEGSCO LLC dba SAN

26 FRANCISCO AUTO RETURN, AND THEIR ATTORNEYS OF RECORD:

27       Based upon Plaintiff's *Ex Parte* Application for a Temporary Restraining Order and

28 Order to Show Cause why a preliminary injunction should not issue prohibiting the sale of

Petitioner's car, Memorandum of Points and Authorities, Declaration of James Smith, as

[~~PROPOSED~~] ORDER TO SHOW CAUSE
AND TEMPORARY RESTRAINING ORDER

1

well as on the argument of parties at a hearing on February 13, 2018 in Department 302, the Court orders the following:

## ORDER TO SHOW CAUSE

Defendants ~~Select Portfolio Servicing, Inc. and National Default Servicing~~ SFMTA, Reistin, and Corporation ARE HEREBY ORDERED TO SHOW CAUSE at  9:30  (time) on TELSCO LLC March 7, 2018, or as soon thereafter as this matter may be heard in Department 302 of the above-referenced Court, located at 400 McAllister St. San Francisco, California, why you, your agents, servants, assigns and all those acting in concert with you should not be preliminarily enjoined, pending trial in this action, from implementing or otherwise giving effect to a sale of the 2007 Honda Civic, California license plate number 5YVV308 ("the vehicle"), from transferring possession of the vehicle to any person other than Plaintiff Smith, and from requiring Mr. Smith to pay any fines or fees in order to retrieve the vehicle.

This Order to Show Cause and supporting papers shall be served on Defendants no later than February 21, 2018 by electronic service (manner of service).

Proof of such service shall be filed and delivered to the Court hearing the Order to Show Cause on February 21, 2018.

The following briefing schedule shall apply:

Plaintiff shall file and serve any additional memoranda and evidence in support of the issuance of a preliminary injunction by no later than February 21, 2018. Defendant shall serve any Opposition and supporting evidence by no later than February 28, 2018. Any reply papers shall be filed and served on Defendants no later than March 5, 2018.

~~Any return on the OSC shall be filed and hand-served on Plaintiff no later than _____ (time) on _____ 2018. Any reply papers shall be filed and served on Defendants no later than _____ (time) on _____ San Francisco, 2018.~~

Defendants ~~S~~ SFMTA will work with the Department of Housing and Human Services

## TEMPORARY RESTRAINING ORDER

PENDING HEARING on the above Order to Show Cause: in an effort to secure a 90-day shelter bed for Mr. Smith in an accessible shelter, ideally near Civic Center.

[~~PROPOSED~~] ORDER TO SHOW CAUSE
AND TEMPORARY RESTRAINING ORDER

2

Defendants and their agents, servants, assigns and all those acting in concert with them ARE HEREBY RESTRAINED AND ENJOINED from conducting a sale of Plaintiff's 2007 Honda Civic, California license plate number 5YVV308, or from otherwise transferring possession of the vehicle to any person other than Plaintiff Smith.

Defendants and their agents, servants, assigns and all those acting in concert with them ARE HEREBY RESTRAINED AND ENJOINED from refusing to release to Mr. Smith the 2007 Honda Civic, California license plate number 5YVV308. During the pendency of this Action, Defendants shall release the vehicle to Mr. Smith without requiring prior payment of any fines or fees.

Dated: 2/13/18

By: _____

Judge of the Superior Court
San Francisco County

**HAROLD KAHN**

1  Claire Johnson Raba SBN 271691
   Rebekah Evenson SBN 207825
2  BAY AREA LEGAL AID
   1035 Market Street, 6th Floor
3  San Francisco, CA 94103
   Telephone: (415) 982-1300
4  Fax: (415) 982-4243
   cjohnson@baylegal.org
5  revenson@baylegal.org

6  Elisa Della-Piana SBN 226462
   Jude Pond SBN 299229
7  LAWYERS' COMMITTEE FOR CIVIL RIGHTS
8  131 Steuart Street, Ste. 400
   San Francisco, CA 94105
9  Telephone: (415) 543-9444
   Fax: (415) 543-0296
10 edellapiana@lccr.com
11 jpond@lccr.com

12 ATTORNEYS FOR PETITIONER AND PLAINTIFF
13 James Smith

14            SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
15                         UNLIMITED CIVIL JURISDICTION

16 JAMES SMITH,                              Case No. CPF18516045

17    Plaintiff and Petitioner,              **PLAINTIFF AND PETITIONER'S**
                                             **MEMORANDUM IN SUPPORT OF**
18    v.                                     **PRELIMINARY INJUNCTION**

19 EDWARD D. REISKIN in his official
   capacity as the Director of Transportation of
20 the San Francisco Municipal Transit        **Date: March 7, 2018**
   Authority; the SAN FRANCISCO              **Time: 9:30 a.m.**
21 MUNICIPAL TRANSIT AUTHORITY;              **Dept: 302**
   TEGSCO LLC dba SAN FRANCISCO              **Judge: Honorable Harold E. Kahn**
22 AUTORETURN; DOES 1-10, inclusive,

23
   Defendants and Respondents.
24

25

26

27

28

   PLAINTIFF AND PETITIONER'S MEMORANDUM IN SUPPORT OF PRELIMINARY
                                INJUNCTION
                                    1

**Table of Contents**

I.     INTRODUCTION...................................................... 1

II.    FACTS.................................................................... 1

III.   ARGUMENT........................................................... 6

    A. <u>Legal Standard for Preliminary Injunction</u>................... 6

          a.   <u>The Balance of Hardships Tips Sharply in Mr. Smith's Favor.</u> ............................................ 6

          b.   <u>Mr. Smith Is Likely to Prevail on the Merits</u> ............... 8

               i.   *The Seizure of the Car Likely Violated Mr. Smith's Fourth Amendment Rights*................................ 8

               ii.  *Mr. Smith Is Likely To Prevail on His Claim that Defendants Deprived Him of Property Without Due Process.* .......................................... 11

    B. <u>Bond Should Be Waived because of Mr. Smith's Indigence.</u> 15

IV.   CONCLUSION....................................................... 15

# Table of Authorities

**STATE CASES**

*Bleeck v. State Bd. of Optometry* 18 Cal. App. 3d 415, 432 (1971)................. 14

*Butt v. State of California*, 4 Cal. 4th 668, 677-78 (Cal. 1992) .................... 6

*Family Record Plan, Inc. v. Mitchell*, 172 Cal. App. 2d 235, 242 (1959)........... 6

*In re Eichorn*, 69 Cal. App. 4th 382, 386 (1998)..................................... 7

*Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917, 933 (2004)................ 14

*People v. Ramirez*, 25 Cal. 3d 260, 269 (Cal. 1979)................................ 12

*Robbins v. Superior Court*, 38 Cal. 3d 199, 205-06 (Cal. 1985)................... 6, 8

*Scofield v. Los Angeles* , 120 Cal. App. 240 (Cal. App. 1932) .................... 13


**FEDERAL CASES**

*Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ....... 7

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)..................................... 13

*Brewster v. Beck*, 859 F.3d 1194, 1997 (9th Cir. 2017)............................. 9

*City of Los Angeles v. David*, 538 U.S. 715, 718, (2003)........................... 14

*Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008)................. 12, 13

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)) .................. 13

*Conover v. Hall*, 11 Cal.3d 842, 851-52 (Cal. 1974)................................ 15

*Goichman v. Rheuban Motors Inc.* 682 F.2d 1320, 1324 (9th Cir. 1982)......... 7, 12

*Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 766 (9th Cir. 2004).. 7

*Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 910 (N.D. Cal. 2013) 9

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)................................ 12, 13, 14

*Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)................................ 9

*Miranda v. City of Cornelius* 429 F.3d 858, 864 (9th Cir. 2005)................ 8, 9, 10, 11

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159
    (9th Cir. 2011) ...................................................... 7

*Sibron v. New York*, 392 U.S. 40, 61 (1968)........................................ 10

PLAINTIFF AND PETITIONER'S MEMORANDUM IN SUPPORT OF PRELIMINARY
INJUNCTION

**Table of Authorities, cont.**

**FEDERAL CASES, CONT.**

*South Dakota v. Opperman*, 428 U.S. 364 at 368-69 (1976).................... 8, 9, 10, 11

*Stypmann v. San Francisco*, 557 F.2d 1338, 1344 (9th Cir. 1977)................. 11

*Scofield v Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988).......................... 13

*United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008)..................... 9

*United States v. Duguay* 93 F.3d 346, 352 (7th Cir. 1996)......................... 10

*United States v. Hawkins,* 249 F.3d 867, 872 (9th Cir. 2001)....................... 9

*United States v. Price*, 383 U.S. 787, 794 (1966)................................... 11

*United States v. Squires* 456 F.2d 967, 970 (2nd Cir. 1972)....................... 10


**CONSTITUIONAL PROVISIONS**

Cal. Const. art. I, § 7.................................................... 11

U.S. Const. amend IV..................................................... 8

U.S. Const. amend. XIV................................................... 11


**STATE STATUTES**

Cal. Veh. Code § 22651...................................................... 2, 5


**MUNICIPAL ORDINANCES**

San Francisco Transportation Code § 8.3................................. 2


**OTHER AUTHORITIES**

Access to Hygiene Resources: A Basic Human Right and the Foundation of Personal and Public Health – Portland State University, available at https://www.pdx.edu/syndication/sites/www.pdx.edu.syndication/files/Hygiene%20Project%20Report%202016.pdf.......................................................... 7, n. 6

//

PLAINTIFF AND PETITIONER'S MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION

4

**Table of Authorities, cont.**

**OTHER AUTHORITIES, CONT.**

"HSA 90 Day Emergency Shelter Waitlist. https://data.sfgov.org/Health-and-Social-Services/HSA-90-day-emergency-shelter-waitlist/w4sk-nq57
(visited February 21, 2018) ........................................................ 4, n. 2

Kelly Blue Book http://www.kbb.com ............................................. 4, n. 4

OneHome Bay Area https://www.onehomebayarea.org/ ........................... 4, n. 3

Sample Retail Installment Sales Contract https://www.automanager.com/auto-dealer-software/features/epay-forms-sample.pdf .......................................... 4, n. 3

"San Francisco Homelessness: Four Times More Expensive Not to Solve."
https://www.thebaycitybeacon.com/politics/san-francisco-homelessness-four-times-more-expensive-not-to-solve/article_28c8effa-86aa-11e7-a37f-cb1d4ded3b6f.html ...... 8, n. 7

"SF's Steep Towing Fees Trouble City Supervisors." (March 8, 2016)
https://www.sfgate.com/politics/article/SF-s-huge-towing-fees-can-be-devastating-to-the-6876008.php ........................................................................ 3, n. 1

PLAINTIFF AND PETITIONER'S MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Mr. Smith presents this Memorandum in Support of a Preliminary Injunction to enjoin Defendants from retaining possession of his car, which remains impounded by Defendants following an illegal tow.

Mr. Smith is homeless, and his car was his only shelter when Defendants seized it without a warrant, and without prior notice it would be towed.  The reason for the tow was unrelated to public safety or traffic exigency; it was solely to coerce payment for parking tickets Mr. Smith could not afford to pay.  Defendants failed to provide Mr. Smith with due process before the tow—no notice or opportunity to be heard—and after the tow, they allowed only a rubber-stamp hearing that did not meet minimum due process requirements. Accordingly, the tow violated Mr. Smith's constitutional rights to be free from a warrantless seizure of his property, and to due process of law.

Mr. Smith is suffering irreparable harm as a result of the loss of his car, which was his only shelter.  Mr. Smith therefore seeks a preliminary injunction 1) prohibiting Defendants from continuing to retain Mr. Smith's vehicle and demanding payment from Mr. Smith before returning the car to him; 2) prohibiting defendants from ordering, conducting, or completing a sale of the car or otherwise transferring possession of the car to anyone other than Mr. Smith, and 3) that Defendants therefore shall return the car to Mr. Smith without charge until Mr. Smith is afforded a determination on the merits as to the lawfulness of Defendants' seizure of his car as a method to collect a municipal debt.

## II.  FACTS

James Smith is a 64-year-old lifelong San Francisco resident whose sole source of income is $1140 in Social Security Disability Income each month.  (Declaration of James Smith ¶¶3-4, 6) ("Smith Decl.").  He is the registered owner of a black 2007 Honda Accord license plate 5YVV308 ("the car").  (Smith Decl. ¶9).

1    For weeks at a time in 2017, Mr. Smith was unable to leave his apartment due to

2    severe mobility impairment. (Smith Decl. at ¶¶23.) He asked his caretaker to watch his car

3    to make sure it did not get parking tickets. (Smith Decl. at ¶¶23-24.) Though his caretaker

4    did not report any tickets, over the course of three months, from September through

5    December 2017, Mr. Smith received 20 parking citations, largely for failing to move his

6    car on sweet sweeping days. (Smith Decl. at ¶¶22-24; Ex B.) Mr. Smith was aware of

7    some but not all of the citations. (Smith Decl. at ¶¶22-23.)

8        In October 2017, Mr. Smith had to leave his apartment and he began living in his

9    car. (Smith Decl. at ¶¶19.) On December 28, 2017, Mr. Smith left his car to get food for

10   breakfast. (Smith Decl. at ¶¶16-18.) When he came back, his car was missing and he

11   thought that it had been stolen. (Smith Decl. at ¶¶19-21). Mr. Smith then called SFPD,

12   and he was informed that the car had been towed and was in the possession of AutoReturn.

13   (Smith Decl. at ¶¶21.)

14       Defendant San Francisco Municipal Transit Authority ("SFMTA") is the municipal

15   agency in the City and County of San Francisco responsible for management of all ground

16   transportation in the city, including parking. Defendant Edward D. Reiskin ("Reiskin") is

17   the Director of Transportation of SFMTA. Defendant TEGSCO LLC is a California

18   limited liability corporation doing business in the County of San Francisco under the

19   registered fictitious business name of San Francisco AutoReturn ("AutoReturn").

20   AutoReturn is the agent of the SFMTA and, under contract with the SFMTA, is

21   responsible for tow and storage of vehicles in San Francisco on behalf of Reiskin and

22   SFMTA.

23       The Defendants towed Mr. Smith's car pursuant to their policy and practice of

24   towing vehicles with more than five outstanding parking tickets. Cal. Veh. Code §

25   22651(i)(1); San Francisco Trans. Code § 8.3. Defendants did not give Mr. Smith any

26   notice that they planned to tow his vehicle, nor did they post any advance notice on his car.

27   (Smith Decl. ¶22.)

28       Although Defendants had scheduled the sale of Mr. Smith's car on or after

February 14, 2018, they temporarily postponed any sale or transfer of the car pending this

PLAINTIFF AND PETITIONER'S MEMORANDUM IN SUPPORT OF PRELIMINARY
INJUNCTION

2

motion, and pursuant to this Court's February 13, 2018 Order to Show Cause and Temporary Restraining Order.

San Francisco's tow fees are some of the highest in the country, 2-3 times the cost of tows in New York, Chicago, or Los Angeles.[1] As of the February 13, 2018 hearing date, Mr. Smith would have had to pay $3836,50 to AutoReturn and $3163 to SFMTA, a total of $6999.50 to retrieve his car. (Smith Decl. Exs. A and B.) In the ensuing days, the amount he owes to Defendants for the tow, impound and storage of his car has increased by $71 per day. (Smith Decl. at Ex. B.) Mr. Smith is indigent, and does not have the ability to pay over $7,000 to Defendants. (Smith Decl. at ¶12.) Moreover, if Defendants retain possession of Mr. Smith's car, the lender through which he financed the vehicle may seek to repossess it. (Smith Decl. at ¶¶ 10-14.) Mr. Smith fears that he will not qualify to purchase another vehicle both because of his limited income, and because of the negative impact of the outstanding loan balance and the repossession will have on his credit. (Smith Decl. at ¶¶ 13-15.)

After his car was towed, Mr. Smith sought to regain possession of his car first by informally making inquiries of the SFMTA, and then by requesting a "tow hearing" from the SFMTA. (Larson Decl. at ¶¶ 7-20.) Neither avenue provided Mr. Smith with an opportunity to be heard regarding the appropriateness of the tow. Although Mr. Smith followed the SFMTA website's instructions to request a hearing, SFMTA at first refused to provide a hearing at all; when the hearing was finally held, it did not comply with the requirements of due process. (Larson Decl. at ¶¶9-11, 17-29; Complaint Ex. A.) First, the SFMTA hearing officer expressly refused to consider the constitutionality of the tow. (Complaint, Ex. A at p. 16:20; Exhibit C.) Second, the SFMTA hearing officer expressly refused to consider Mr. Smith's inability to pay the outstanding parking fines, tow fees, or storage fees, stating that the agency is "not allowed to take into consideration the economic status of the person." (Complaint, Ex. A at p. 15:23-25.) Third, the hearing officer did not provide Mr. Smith with an opportunity to confront the evidence against him, including by

[1] "SF's Steep Towing Fees Trouble City Supervisors." (March 8, 2016)
https://www.sfgate.com/politics/article/SF-s-huge-towing-fees-can-be-devastating-to-the-6876008.php

1    cross-examining the officer who authorized the towing of Mr. Smith's car. (Complaint,
2    Ex. A at p. 6:23-25; 3:17-25; 4:11-25.)

3        The one and only basis for the tow, and for the Hearing Officer's decision
4    upholding the tow, is that Mr. Smith's vehicle had more than five parking tickets.
5    (Complaint, Ex. A at p. 6:14-17; Exh. C.) There is no allegation that the car posed any
6    threat to public safety when it was towed. *Id.*

7        Mr. Smith continues to suffer as a result of Defendants' seizure of his car.
8    Although the Court ordered "SFMTA to work with the Department of Housing and Human
9    Services in an effort to secure a 90-day shelter bed for Mr. Smith in an accessible shelter,"
10    as of the date of this brief, SFMTA has taken no such action. (Order to Show Cause and
11    Temporary Restraining Order.) SFMTA reports that there are over 1,000 people on the
12    waiting list for shelter beds, and that in spite of the court's order and the harm caused by
13    the SFMTA's tow, the City will not shelter Mr. Smith nor return his vehicle so he has a
14    safe place to sleep. Mr. Smith is and will continue to be homeless and sleeping on the
15    street as a direct consequence of Defendants' impound of his vehicle. (Smith Decl. at
16    ¶¶18, 39, 46, 48.) He cannot stay in shelters because there are not enough shelter beds for
17    San Francisco's homeless people, and his disabilities make it difficult to wait in line each
18    day for the extended period of time needed to obtain a one-night shelter bed if one
19    becomes available.[2] (Smith Decl. at ¶43.)

20        Mr. Smith is not safe sleeping on the streets. (Smith Decl. at ¶40-45.) One night in
21    January 2018, he was awakened at 4 a.m. by two people kicking him and beating him,
22    demanding he give them everything he had. (Smith Decl. at ¶42.) Mr. Smith gave the
23    attackers his wallet. *Id.* Mr. Smith has suffered ill health as a result of being homeless.
24    (Smith Decl. at ¶40-41, 53-58.) Mr. Smith had an extended bout of the flu and has
25    suffered terrible pain in his knees and back as a result of sleeping on the streets. (Smith
26    Decl. at ¶53-58.) Mr. Smith feels dejected, anxious, and frightened now that he is living
27    on the street. (Smith Decl. at ¶44, 56.)

28

---

[2] "HSA 90 Day Emergency Shelter Waitlist. https://data.sfgov.org/Health-and-Social-Services/HSA-90-day-emergency-shelter-waitlist/w4sk-nq57 (visited February 21, 2018.)

PLAINTIFF AND PETITIONER'S MEMORANDUM IN SUPPORT OF PRELIMINARY
INJUNCTION

Without his car, it is extremely difficult for Mr. Smith to go to medical appointments, to visit his elderly mother, to visit his children and grandchildren, and to access social services. (Smith Decl. at ¶¶48-52). Further, without his car Mr. Smith has difficulty searching for an apartment, since open, affordable housing units in the Bay Area are more likely to be located outside of San Francisco.[3] (Smith Decl. at ¶¶16, 38-40, 45, 47-48.)

The continued impoundment of his vehicle is also causing irreparable harm to Mr. Smith's ability to obtain credit in the future. If Defendants are not enjoined as requested by Mr. Smith, one of two things will happen:

a) The holder of Mr. Smith's auto loan will repossess the car from AutoReturn.[4] The lender will be required to pay AutoReturn the full amount due to reclaim the car. Cal. Veh. Code § 22651(i)(5). Upon repossession, the lender will sell the vehicle at auction and seek to collect from Mr. Smith the outstanding balance of the loan and the fees paid by the lender to retrieve the car. (Smith Decl. at ¶¶13-15, 46). The repossession will appear on Mr. Smith's credit record, making it difficult for him to purchase another vehicle, or rent and apartment. (Smith Decl. at ¶¶13-15, 46.)

b) Alternatively, AutoReturn will sell the car at auction, keeping for Defendants the full amount due. Cal. Veh. Code § 22651(i)(5). The estimated value of the vehicle is $5,413.[5] Since the value that the car sells for at auction is likely to be significantly less than the more than $7,000 Mr. Smith allegedly owes in fines and fees, Mr. Smith will be responsible for both a deficiency balance to Defendants and the full balance of the loan due to the holder of his auto loan. Cal. Veh. Code § 22651(i)(5). Because Mr. Smith does not have the funds to resolve either of these debts, they will be reported on his credit report. His credit will irreparably damaged and he may be sued by AutoReturn to collect the remainder of the tow and storage fees.

---

[3] See generally https://www.onehomebayarea.org/, a one-stop website for affordable housing listings.
[4] The standard California retail installment sales contract enumerates seizure as a breach of contract. https://www.automanager.com/auto-dealer-software/features/epay-forms-sample.pdf at p. 4, ¶ 2(b).
[5] Vehicle value estimated on Kelly Blue Book website on February 19, 2018 (http://www.kbb.com).

1    Mr. Smith would not be facing this cascade of terrible events but for the illegal tow

2    of his vehicle.  The damage will stop if Defendants are enjoining from retaining possession

3    of the car, and return it to Mr. Smith without charge.

### III.    ARGUMENT

C. <u>Legal Standard for Preliminary Injunction.</u>

6    The Court must weigh two interrelated factors when deciding whether to issue a

7    preliminary injunction: "(1) the likelihood that the moving party will ultimately prevail on

8    the merits and (2) the relative interim harm to the parties from issuance or nonissuance of

9    the injunction." *Butt v. State of California*, 4 Cal. 4th 668, 677-78 (Cal. 1992).  These two

10   considerations should be evaluated on a sliding scale: "the greater the plaintiff's showing

11   on one, the less must be shown on the other to support an injunction." *Butt*, 4 Cal. 4th at

12   678.

13   A Court must "exercise its discretion in favor of the party most likely to be injured.

14   If the denial of an injunction would result in great harm to the plaintiff, and the

15   defendants would suffer little harm if it were granted, then it is an abuse of discretion to

16   fail to grant the preliminary injunction." *Robbins v. Superior Court*, 38 Cal. 3d 199, 205-

17   06 (Cal. 1985) (internal citations omitted).  "In the last analysis the trial court must

18   determine which party is the more likely to be injured by the exercise of its discretion and

19   it must then be exercised in favor of that party." *Family Record Plan, Inc. v. Mitchell*, 172

20   Cal. App. 2d 235, 242 (1959) (internal citations omitted).

a.    <u>The Balance of Hardships Tips Sharply in Mr. Smith's Favor.</u>

23   Mr. Smith is suffering and will continue to suffer irreparable harm if he is not able

24   to recover the car.  Sleeping outside and without the protection of a car has exacerbated

25   Mr. Smith's disabilities, caused him to suffer physically and emotionally, and exposed him

26   to street violence—harms which cannot be fully compensated in financial terms.  (Smith

27   Decl. at ¶¶39-44, 46, 55-57.)  If the car is not released to Mr. Smith, he will continue to

28   suffer the great physical and emotion toll that comes with being homeless, and he will also

1    suffer irreparable injury to his credit and future ability to purchase a car or rent a home.

2    (Smith Decl. at ¶¶13-15, 46.)

3        California courts have recognized studies that found that "[h]omeless individuals

4    were 10 times as likely to be victimized by crime than the average population." *In re*

5    *Eichorn*, 69 Cal. App. 4th 382, 386 (1998). Homeless people suffer physical injuries on

6    the street and experience emotional distress, while full shelters and lack of disability access

7    can make staying outside the only option for many homeless people. A recent study of

8    homeless people showed close to 50% lack access to hygiene and have experienced

9    medical problems as a result, 27.3% had been denied access to shelter, 26.7% had been

10    denied employment, 24.7% were denied access to food or other services and 20% had been

11    arrested.[6] Since the car was impounded, Mr. Smith has suffered many of these ills,

12    including adverse health impacts and violence. (Smith Decl. at ¶¶39-44, 46, 55-57.) These

13    harms are irreparable. *Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 766

14    (9th Cir. 2004) (holding that potential harms of overcrowding hospital patients, including

15    pain and health risks, were irreparable); *Park Vill. Apartment Tenants Ass'n v. Mortimer*

16    *Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011) (holding that plaintiffs' potential loss of

17    their place to live was irreparable harm); *see also Goichman v. Rheuban Motors Inc.* 682

18    F.2d 1320, 1324 (9th Cir. 1982) ("'The private interest in the uninterrupted use of an

19    automobile is significant."); *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th

20    Cir. 2014) (holding that loss of driving privileges was irreparable harm). In addition to the

21    irreparable impact on Mr. Smith's health, loss of his car as transportation, and loss of his

22    primary shelter, "an alleged constitutional infringement will often alone constitute

23    irreparable harm." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997).

24        In contrast, any theoretical harm to Defendants would be purely financial, and in an

25    amount so small as to be negligible when compared to their overall budgets. While Mr.

26    Smith contests whether any amount is owed as a result of the illegal tow, the total amount

27

28    [6] Access to Hygiene Resources: A Basic Human Right and the Foundation of Personal and Public Health – Portland State University, available at https://www.pdx.edu/syndication/sites/www.pdx.edu.syndication/files/Hygiene%20Project%20Report%2020 16.pdf.

PLAINTIFF AND PETITIONER'S MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION

7

that Defendants seek against Mr. Smith is over $7,000, (Smith Decl. Ex. A; B.), an amount that represents more than 50 percent of Mr. Smith's annual income but only .00000063 percent of the annual city budget of $10.1 billion.[7]

On the other hand, keeping Mr. Smith homeless creates other, greater costs to the City. The average public cost incurred for a homeless person living on the streets in San Francisco is over $80,000 per year in emergency services.[8] Accordingly, the city will benefit financially if it ceases to impound Mr. Smith's vehicle and permits him to regain his shelter and seek affordable permanent housing, while continuing to deprive Mr. Smith of his car creates significant costs.

In this case, the balance of hardship is sharply skewed in Mr. Smith's favor. Where, as here, an injury is great to one party and the other side would suffer little harm, "it is an abuse of discretion to fail to grant the preliminary injunction." *Robbins* 38 Cal. 3d at 205; *see also Harris*, 366 F.3d at 766 ("[F]aced with [ ] a conflict between financial concerns and preventable human suffering, [the court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.").

b. <u>Mr. Smith Is Likely to Prevail on the Merits.</u>

i. *The Seizure of the Car Likely Violated Mr. Smith's Fourth Amendment Rights.*

Mr. Smith is likely to prevail on his claim that Defendants violated the Fourth Amendment when they impounded his car without a warrant and without a "community caretaking" rationale.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . ." U.S. Const. amend. IV. Towing and impounding a vehicle, even if done pursuant to municipal ordinance or state law, constitutes a seizure

---

[7] "Unpacking a $10 billion budget." Data SF, City and County of San Francisco, available at https://datasf.org/blog/unpacking-a-10-billion-budget/.
[8] "San Francisco Homelessness: Four Times More Expensive Not to Solve." https://www.thebaycitybeacon.com/politics/san-francisco-homelessness-four-times-more-expensive-not-to-solve/article_28c8effa-86aa-11e7-a37f-cb1d4ded3b6f.html .

within the protections of the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005).

Warrantless seizures – including the towing and seizure of vehicles – are "per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). Where a government actor tows a vehicle without a warrant, the government bears the burden to persuade the court "that a seizure comes under one of a few specifically established exceptions to the warrant requirement." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). Here, the only possible exception which might apply is the "community caretaking" exception.

In their "'community caretaking'" function, police officers may impound vehicles that "'jeopardize public safety and the efficient movement of vehicular traffic.'" *South Dakota v. Opperman*, 428 U.S. 364 at 368-69 (1976) (defining the community caretaking function to cover vehicle accidents, the removal of disabled or damaged vehicles, and the impound of automobiles which impair the efficient movement of vehicular traffic.) While it may be reasonable to tow a vehicle that impedes traffic or threatens public safety, a police officer may not execute a warrantless seizure of a vehicle when no such threat to public safety exists. *Miranda* 429 F.3d at 864 (holding it was unconstitutional to tow a vehicle from a driver's home driveway after he had permitted his unlicensed wife to practice driving the car, because once the vehicle was safely parked in the driveway, no threat to public safety existed).

Following a similar rationale, the Ninth Circuit recently invalidated a California statute that entitles a municipality to punish an unlicensed driver by impounding her vehicle for thirty days. *Brewster v. Beck*, 859 F.3d 1194, 1997 (9th Cir. 2017) (the Fourth Amendment is "implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual."); *see also United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008) (community caretaking exception inapplicable for towing a car parked on a residential street simply because the driver was unlicensed); *Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 910 (N.D. Cal. 2013) (rejecting contention that Fourth Amendment permitted warrantless

towing for lack of a California driver's license, and finding that no justification to tow a vehicle parked "in a safe and legal location, not blocking traffic."); *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996)) ("The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is the 'caretaking' of the street."); *United States v. Squires* 456 F.2d 967, 970 (2nd Cir. 1972) (an officer cannot order impoundment where the location of the vehicle does not create any need to protect the vehicle or avoid a hazard to other drivers).

"The reasonableness of an impoundment under the community caretaking function does not depend on whether the officer had probable cause to believe that there was a traffic violation, but on whether the impoundment fits within the 'authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience.'" *Miranda*, 429 F.3d at 862, quoting *Opperman* 428 U.S. at 368-69. The community caretaking exception does not permit seizure of a vehicle as punishment for prior bad acts, or to coerce a driver into different conduct: "The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale." *Miranda*, 429 F.3d at 866. Thus, the community caretaking exception does not permit warrantless seizure based upon outstanding parking tickets, regardless of whether a statute seems to permit towing under those circumstances: "the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment, as applied to the states by the Fourteenth Amendment." *Miranda*, 429 F.3d at 864.

"The question in this Court upon review of a state-approved search or seizure is not whether the search (or seizure) was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment." *Sibron v. New York*, 392 U.S. 40, 61 (1968). In the case at hand, Mr. Smith has demonstrated that the warrantless seizure was unreasonable. The *only* basis for Defendants' seizure of Mr. Smith's vehicle was their assertion that Mr. Smith had more than five unpaid parking tickets. (Complaint Ex. A . at pp. 3:8-11, 5:4-13, Complaint Ex. B.) The car was registered, it was parked safely, it was

not obstructing traffic, and it was not otherwise interfering with public safety. (Smith Decl. at ¶¶24-28; Smith Decl. Ex. B.) There is nothing inherently unsafe about unpaid parking tickets. As in *Miranda,* where the Ninth Circuit found that a warrantless tow was not permitted under the community caretaking exception just because the driver had *previously* violated driving laws, the community caretaking exception does not excuse a warrantless seizure here, where the tow was justified solely based on prior unpaid parking tickets. *Miranda* 429 F.3d at 865. Like the car in *Miranda*, Mr. Smith's car was safely parked, was not impeding the flow of traffic, and posed no threat to the public.

Because Defendants have no conceivable community caretaking rationale for seizing Mr. Smith's car without a warrant, but nonetheless implemented a warrantless seizure, there is a strong likelihood that Mr. Smith will prevail on his claim that Defendants violated his Fourth Amendment rights.

> ii. *Mr. Smith Is Likely To Prevail on His Claim that Defendants Deprived Him of Property Without Due Process.*

Mr. Smith is also likely to prevail on his claim that Defendants violated his right to due process rights of law when they seized his car and refused to return it, without providing him reasonable notice and opportunity to be heard on the legality of the seizure.

The state and federal constitutions prohibit government actors from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; Cal. Const. art. I, § 7. Because a car is a person's property, the Ninth Circuit has long required due process protections in connection with vehicle tows. "Loss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause. Due process strictures must be met though the deprivation be temporary." *Stypmann* 557 F.2d at 1342 (a five day delay in providing a post-tow hearing is excessive).

The process due under the federal constitution depends on "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function

1  involved and the fiscal and administrative burdens that the additional or substitute
2  procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).
3  Under the California Constitution, there is a fourth element of the analysis: "the dignitary
4  interest in informing individuals of the nature, grounds and consequences of the action and
5  in enabling them to present their side of the story before a responsible governmental
6  official." *People v. Ramirez*, 25 Cal. 3d 260, 269 (Cal. 1979).

7          Here, as explained above, Mr. Smith has significant interest in his car, as it is also
8  his home, and he suffers tremendously without it. His dignitary interest in having a shelter
9  cannot be overstated; without his car, Mr. Smith is utterly exposed to the elements. The
10  risk of erroneous deprivation is of similar magnitude. The SFMTA's interest in the car is
11  exclusively financial (collection of parking unpaid tickets), and Defendants will not be
12  unduly prejudiced if the City were required to provide vehicle owners like Mr. Smith with
13  basic notice and an opportunity to be heard by a responsible City official.

14          Generally, courts analyzing vehicle tows under the Due Process clause have
15  required notice before the tow, and the opportunity for a meaningful hearing within two
16  days of an owner's request. *See Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th
17  Cir. 2008) (pre-tow notice generally required); *Goichman* 682 F.2d at 1325 (post-tow
18  hearing required within forty-eight hours of a request).

19          Notice is required under the Due Process Clause because "the government may not
20  take property like a thief in the night; rather, it must announce its intentions and give the
21  property owner a chance to argue against the taking." *Clement*, 518 F.3d at 1093
22  (requiring the government to present "strong justification" for not providing notice to a
23  vehicle owner prior to a non-emergency tow because "removal of an automobile is a big
24  deal" that disrupts an individual's life, imposes significant retrieval costs, and can create
25  anxiety at the unexplained loss of a vehicle). Merely issuing a generalized warning that a
26  tow may result from unpaid tickets is insufficient; the vehicle's owner must have the
27  opportunity to argue against impoundment before it occurs. *See id.* ("We have described
28  the root requirement of the Due Process Clause as being that an individual be given an

1　opportunity for a hearing *before* he is deprived of any significant property interest.")

2　(quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

3　　　　In the case at hand, Defendants did precisely what *Clement* prohibits: they seized

4　his car "like a thief in the night," without any notice, leaving him to believe his car had

5　actually been stolen. (Smith Decl. at ¶19). Pre-deprivation notice is required in the

6　context of vehicle tows unless there is "an emergency, []or if notice would defeat the entire

7　point of the seizure, []or when the interest at stake is small relative to the burden that

8　giving notice would impose." *Clement*, 518 F.3d at 1093-94. Here, there was patently no

9　emergency: the only reason for the tow is as a method to collect unpaid parking tickets.

10　Nor is the interest at stake small: the use of one's automobile is a significant interest

11　compared to the small burden of notice. *Id.* at 1094; *Scofield v Hillsborough*, 862 F.2d

12　759, 762 (9th Cir. 1988) ("The uninterrupted use of one's vehicle [on public roads] is a

13　significant and substantial private interest."). Accordingly, there is no excuse for

14　Defendants to seize Mr. Smith's vehicle without providing him with notice of their intent

15　to do so.

16　　　　Had Defendants provided Mr. Smith with adequate pre-deprivation notice, Mr.

17　Smith would have had the opportunity to demonstrate that his nonpayment of parking

18　tickets was due in part to his indigence, and in part to his disability and lack of knowledge

19　of the tickets. In addition, he could have attempted to resolve his tickets by means other

20　than immediate payment-in full, thus avoiding the tow altogether, or by being heard on his

21　claim that any tow would be unconstitutional. A "fundamental requirement of due process

22　is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

23　*Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Here,

24　because the SFMTA did not give Mr. Smith any notice of the tow, they deprived him of an

25　opportunity to be heard at the most "meaningful" time: before the car was towed and

26　before he was deprived of a significant property interest. *See Clement*, 518 F.3d at 1093.

27　Mr. Smith had no opportunity to make his appeal to a responsible government official to

28　prevent the Defendants from carrying out the illegal tow. Defendants' failure to provide

1 pre-tow notice not only deprived Mr. Smith of an opportunity to make this showing, it has

2 also resulted in a far greater expenditure of public resources on the back end.

3     When Defendants' did permit Mr. Smith a hearing after his car was towed, the

4 hearing was a sham. For a hearing to be meaningful, an agency must permit a party to

5 present all relevant claims. *See Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917, 933

6 (2004) (exhaustion requires agency decision of "entire controversy"); *Bleeck v. State Bd. of*

7 *Optometry* 18 Cal. App. 3d 415, 432 (1971) (exhaustion requires "a full presentation to the

8 administrative agency upon all issues of the case and at all prescribed stages of the

9 administrative proceedings"). In this case, the hearing officer refused to consider or rule

10 on Mr. Smith's claim that the tow was unlawful. First, the hearing officer refused to

11 consider whether the tow was improper under the Fourth Amendment because Defendants

12 towed the car without warrant. (Complaint, Exhibit A at 15:20, 17:20-18:10.) Second, the

13 hearing officer refused to consider whether it was constitutionally permissible to tow Mr.

14 Smith's vehicle for unpaid parking tickets when the reason for the nonpayment is Mr.

15 Smith's indigence and inability to pay. (Complaint, Ex. A at pp. 16:20; 12:3-10; Exhibit

16 C.) By refusing the consider Mr. Smith's contentions regarding the constitutionality of the

17 tow, Defendants denied Mr. Smith of a meaningful opportunity to be heard.

18     Defendants' hearing violated other basic due process tenets. Defendants did not

19 make available the evidence relied on at the tow hearing, and did not present the officer

20 who ordered the tow for examination. (Complaint Ex. A at pp. 3:17-20; 5:1-24). The

21 Supreme Court has taken for granted that a City must bring the officer who ordered the

22 tow to the administrative tow hearing. *City of Los Angeles v. David*, 538 U.S. 715, 718,

23 (2003) (noting that "the city has to contact the towing officer and arrange for his

24 appearance" in detailing the administrative steps required for tow hearings). In addition,

25 an agency violates a vehicle owner's post-tow due process right to a meaningful hearing if

26 the owner is not given an opportunity to examine the evidence on which the hearing officer

27 relies, or to confront the towing officer. *See Mathews*, 424 U.S. at 335. Mr. Smith

28 requested copies of all evidence to be relied on at the hearing multiple times and received

only the tow inventory. (Larson Decl. at ¶12-15.)

1  Defendants' failure to follow the most basic tenets of due process makes it likely

2  that Mr. Smith will prevail on the claim he brings under the federal and state due process

3  clauses.

4            D. <u>Bond Should Be Waived because of Mr. Smith's Indigence.</u>

5       Where a preliminary injunction is issued in favor of low-income persons, the

6  Court has the common law power to waive the requirement that an undertaking be

7  posted to protect the enjoined party. *Conover v. Hall*, 11 Cal.3d 842, 851-52 (Cal.

8  1974).

9       In this case, Mr. Smith is a homeless, disabled person who subsists on disability

10  income. Mr. Smith is patently unable to post bond without seriously affecting his ability

11  to pay for the necessities of life. Furthermore, as set forth above, Defendants will not be

12  greatly harmed by the issuance of an injunction. For these reasons, the posting of bond

13  should be waived.

14                     IV. CONCLUSION

15       For the reasons outlined above, Mr. Smith respectfully requests that the Court issue

16  an order 1) enjoining Defendants from ordering, conducting, or completing a sale of the car

17  or otherwise transferring possession of the car to anyone other than Mr. Smith; 2)

18  enjoining Defendants from demanding payment before returning the car to Mr. Smith; 3)

19  enjoining Defendants from continuing to retain Mr. Smith's vehicle, and that Defendants

20  therefore shall return the car to Mr. Smith without charge during the pendency of this

21  Action. Mr. Smith requests that the Order continue until such time as the Court determines

22  whether Defendants' tow of the car was lawful and conducted without violations of Mr.

Smith's constitutional rights.

23

24                 Respectfully submitted,

25                 BAY AREA LEGAL AID

26

27                 By_____
                    Claire Johnson Raba,
                    Attorney for Plaintiff/Petitioner

28                      James Smith

1 Claire Raba SBN 271691
  Rebekah Evenson SBN 207825
2 BAY AREA LEGAL AID
  1035 Market Street, 6th Floor
3 San Francisco, CA 94103
  Telephone: 415 982 1300
4 Fax: 415 982 4243
  cjohnson@baylegal.org
5
  Elisa Della-Piana SBN 226462
6 J. Pond, SBN 299229
7 Lawyers' Committee for Civil Rights
  131 Steuart Street, Ste. 400
8 San Francisco, CA 94105
  Telephone: (415) 847-3001
9 Fax: (415) 543-0296
10 edellapiana@lccr.com

11 ATTORNEYS FOR PETITIONER and PLAINTIFF
  James Smith
12

13        SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
14                        UNLIMITED CIVIL JURISDICTION

15 JAMES SMITH,                          Case No. CPF-18-516045
   Petitioner and Plaintiff,
16 v.                                    **DECLARATION OF JAMES SMITH
                                         IN SUPPORT OF PRELIMINARY
17 EDWARD D. REISKIN in his official     INJUNCTION**
   capacity as the Director of Transportation of
18 the San Francisco Municipal Transit
   Authority; the SAN FRANCISCO
19 MUNICIPAL TRANSIT AUTHORITY;          **Date: March 7, 2017**
20 TEGSCO LLC dba SAN FRANCISCO          **Time: 9:30 a.m.**
   AUTO RETURN; DOES 1-10, inclusive,    **Dept: 302**
21                                       **Judge: Honorable Harold E. Kahn**
22 Respondents and Defendants.
23
24
   I, James Smith, declare:
25
26    1.  I am making this declaration in support of the *ex parte* application for
27        temporary restraining order and order to show cause why a preliminary
28        injunction should not issue.

      2.  I have personal knowledge of the facts in this declaration.

                                    1
                       DECLARATION OF JAMES SMITH

3. I am 64 years old.

4. I am disabled, and I get my monthly income from SSDI. I receive $1140 per month.

5. I am currently homeless.

6. I am a resident of San Francisco, and I have lived here for my entire life.

7. I worked in the Bay Area for most of my life. I worked for hospitals in San Francisco as a custodian and environmental supervisor. I also worked for the Department of Defense off and on for eighteen years as a machinist. I stopped working full time a few years ago because of my disabilities.

8. I am unemployed now, and cannot work because of my disabilities.

9. I am the owner of a 2007 black Honda Accord, California license plate number 5YVV308.

10. I financed the purchase of the car in September 2017 from San Francisco Honda with a loan through Credit Acceptance Corporation. I still owe most of the money on my car loan. I was paying $342 a month on the car, which is about 30 percent of my monthly income.

11. I stopped paying when the car was towed, because it didn't make sense to pay for it since I was worried I would not get the car back.

12. Out of my February disability benefits, I have the money to immediately make the two missed payments on my car if I if I am able to get it back.

13. I am informed and believed that when cars are sold at an auction after being repossessed or towed, the value recovered for the vehicle is below blue book value and that the amount recovered will not be enough to pay off my loan.

14. In that event, I will have bills from the tow yard and city parking tickets. I will also have an outstanding deficiency balance on my car loan, but will no longer have a car.

15. If I do not get my car back, I am concerned that the balance I will to Credit Acceptance Corporation will ruin my credit and I will not be able to qualify for another affordable car loan.

2

DECLARATION OF JAMES SMITH

16. I bought the car because I was afraid I would lose my apartment. Housing in San Francisco is very expensive and the wait lists are long for affordable housing. I knew I was going to have to live someplace else, and I didn't want to be on the street. I bought a nice Accord because it was big, clean, and in good shape. I thought it would be comfortable enough for me to live in while I saved some money.

17. In late October 2017, I had to move out of my apartment because I could not afford it anymore when my rent was raised. This is the first time I have been homeless.

18. I then began to live in my car. It was not as good as having an apartment, but I felt safe in my car, and it protected me from the cold weather.

19. On the morning of December 28, 2017, I woke up and went to get something to eat. I left my car safely parked on Hyde Street. When I came back, it was gone, with all the things I own inside of it. It was a terrible feeling. I thought it had been stolen and called the police.

20. The police said it had not been reported stolen, and suggested that I contact AutoReturn to see if it had been towed.

21. I called AutoReturn, and they told me that my car was towed because I had not paid some parking tickets. They said I would have to pay about $2000 to get my car back.

22. I had no idea the car was going to be towed. I did not get anything in the mail when I was still living at my apartment saying that would be towed, and there was no notice on my car. If SFMTA had told me it was going to be towed, I would have done everything I could to stop it from happening.

23. When I called AutoReturn and they told me I had over 20 parking tickets, I had not even realized that I had many of them. I was sick and could not leave my bed for many weeks in the fall, and I could not check on my car myself. My caretaker said she would move the car to make sure it was legally parked, and

DECLARATION OF JAMES SMITH

avoid street sweeping tickets, but she did not, and she did not tell me about the citations.

24. I was surprised about how many citations there were, in part because I try to keep all my documents for the car in order.

25. My car is fully operational and has current registration with the California Department of Motor Vehicles.

26. I have insurance for the car.

27. I have a current California driver's license.

28. I have a valid disability placard, which was visible when my car was towed.

29. When I purchased my car in September, I took out a loan for over $10,000 and I only made a few payments before the car was towed. It is in good condition, so I felt good about the investment, especially thinking I was going to be living in it.

30. When I talked to AutoReturn to try to get my car back, I said I could not afford to pay for the parking citations. They did not tell me there were any discounts for low income people. They did not tell me that I had a right to a tow hearing. They did not tell me if I could ask for community service or another option because I am unable to pay.

31. On January 11, 2018, I called the Lawyers' Committee for Civil Rights to try and get assistance in getting my car back. I heard about Lawyers' Committee from Coalition on Homelessness.

32. I described the issues with my car to Victoria Larson, an intern at the Lawyers' Committee. I gave her permission to do what she could to get my car back.

33. Victoria Larson called me back and told me I had the right to a tow hearing. Victoria, Elisa Della-Piana, and another LCCR staff member accompanied me to a tow hearing on January 19, 2018.

34. We waited about 40 minutes at SFMTA, while Victoria tried to convince them to let us have a hearing that day. After 40 minutes, a hearing officer called us into a small room.

4

DECLARATION OF JAMES SMITH

35. At the hearing, the hearing officer told me and my lawyer that they never give notice before towing cars for unpaid parking citations.

36. After the hearing, the hearing officer handed us a decision.

37. The hearing officer said the tow was legal because I had unpaid parking tickets. It seemed like he did not even consider what my lawyer and I said at the hearing.

38. After we left the hearing office, I cried a little, because if I cannot get my car back, I do not have anywhere to go.

39. Since losing my car, I have slept on the streets in bus stations, or on porches. Some nights I have been able to stay with friends. Two or three nights I stayed in a shelter.

40. Not having my car to sleep in at night has been hard on my health.

41. I have a hard time sleeping outside, and lack of sleep is making me sick.

42. I had more protection when I was sleeping in my car: is not safe sleeping on the streets. One night in January, I was woken up around 4 am and beaten and robbed. I was sleeping at Hyde and Bush outside of a pharmacy. Two people kicked me while I was asleep and started to beat me. They demanded I give him everything I have. I hesitated for a while, and was kicked in the face. I gave them my wallet, and then they left me alone.

43. Now I am highly suspicious of everyone. I am afraid people are trying to take advantage of me or hurt me.

44. I am always afraid. I have begun panicking a lot. I have racing and scattered thoughts.

45. It is hard for me to stay in shelters because you have to call in the morning and wait in line for a long time. My disabilities prevent me from being able to do that.

46. If my car is sold, I will not be able to purchase another car and I believe that I will continue to be homeless.

DECLARATION OF JAMES SMITH

47. Without a car, I will not be able to drive outside of the city of San Francisco to apply for available affordable housing for disabled people.

48. I want to find housing, but it is very difficult. I had a Section 8 voucher, but my wife, who I am no longer with, took my voucher. I don't know if she is using it, or if it is going to waste. I don't know how to get it back. I have been so stressed about my car that I really haven't been able to think about the stress of losing the voucher too.

49. Without a car, I will not be able to drive to my doctor's appointments.

50. As a result of my disability, I am not very mobile, and it is hard for me to use public transportation.

51. Without a car, it will be very hard to see my elderly mother, who is not doing well. She lives in San Francisco, but I cannot get there without a car because she is not near public transportation.

52. Without a car, I cannot visit my grandkids and kids. It is too hard to travel on public transportation to them. I am embarrassed to tell them that I am homeless, I have never felt this way with my family before.

53. Without a car, I am in a lot of pain both physically and mentally.

54. Before losing my car, my back and knees already constantly were in pain.

55. Since losing my car and sleeping on the streets, both my knee and back pain have increased. My knees lock up all the time. The cold weather hurts my joints.

56. I have a lot of anxiety now. I feel like I am a different person since becoming homeless. I feel dejected.

57. I also have the flu. It is very hard to have the flu when you're homeless because there is no place to rest and heal.

58. I have been to Saint Francis Hospital for my back pain and for my flu and cold symptoms.

59. My income is not enough to pay for my basic living expenses and pay for my parking citations.

DECLARATION OF JAMES SMITH

60. I have attached a true and correct copy of the AutoReturn fees from their website on February 11, 2018 to this declaration as Exhibit A.

61. I have attached a true and correct copy of the SFMTA citation list from the SFMTA website as of February 11, 2018 to this declaration as Exhibit B.

62. I had to leave my apartment because my income was not enough to cover rent and living expenses without parking citations.

63. I do not have any family that can help me financially.

DECLARATION OF JAMES SMITH

1

2 I declare under the penalty of perjury under the laws of the State of California that the

3 foregoing is true and correct.

4

5 Date: 2-16-15

6 JAMES SMITH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A –

AutoReturn Fees as of February 11, 2018

DECLARATION OF JAMES SMITH

Home (/) / San Francisco, CA (/san-francisco-ca/) /

## Vehicle Details

**TOW DETAILS**

| | |
|---|---|
| TR Number: | 20171228M0014 |
| License: | 5YVV308 - CA |
| VIN | San Francisco, CA (/san-francisco-ca) |
| Vehicle: | BLACK 2007 HONDA ACCORD |
| Towed Date and Time: | 12/28/17 8:24 AM |
| Towed By: | SF Municipal Transportation Agency |
| Towed From: | 1125 HYDE STREET |
| Reason: | SCOF/651.l Scoflaw-Citations |
| Status: | STORED |
| Tow Company: | AutoReturn |
| | 450 7th St, San Francisco, CA |
| | 415-865-8200 |
| | Google Maps (http://maps.google.com/maps?q=450+7th+St,San+Francisco,CA) |

Find Vehicle   Vehicle Sales (/san-francisco-ca/vehicle-sales/)   FAQs (/san-francisco-ca/faqs/)   Contact Us (/san-francisco-ca/contact-us/)

Feedback (/san-francisco-ca/feedback/)   Claims (/san-francisco-ca/claims/)

**FEE DETAILS**

| | |
|---|---|
| 1st Day Storage-PassVeh: | $59.25 |
| City Admin Fee - Excluding Citations: | $269.00 |
| Passenger Vehicle Storage: | $3,195.00 |
| Tow Passenger Vehicle: | $214.00 |
| Lien Fee-$500 to $4,000-Rqst: | $35.00 |
| Lien Fee-$500 to $4,000-Auth: | $35.00 |
| Transfer Fee-2nd Tow-BAYSH: | $29.25 |
| Total: | $3,836.50 |

## What do you do now?

To retrieve your vehicle, please come to our customer service center located at 450 7th Street, between Bryant and Harrison Streets, across from the San Francisco Sheriffs Department. You will be required to pay all outstanding towing, storage, and other fees accrued for the vehicle since the time of tow. In addition, if there are 5 or more citations in penalty, you will be required to pay for these as well. Outstanding citation information is not available through our web site. Please call our service center at 415-865-8200 for information about delinquent citations. The storage facility is open 24 hours a day, 365 days a year for vehicle retrieval. Please be aware that as required by the City and County of San Francisco, there must be a currently licensed driver to take the vehicle out of our storage facility.

Customer Service

10

DECLARATION OF JAMES SMITH

EXHIBIT B –

Citation list from SFMTA, February 11, 2018

DECLARATION OF JAMES SMITH


**SFMTA**
Municipal
Transportation
Agency

# Citation Payment and Inquiry

**Your vehicle has been booted. You must pay all delinquent citations and the boot removal fee.**

**License/Plate:** CA5YVV308
You have a total of 21 Citation(s) currently on this plate.

List of citations may not represent all open citations on vehicle. If vehicle has been sold, citations will be listed for current owner only. Handwritten citations may take up to ten business days to process and appear below.

Total Amount Due: $3163.00

**Boot-related citations due (payment mandatory):**
◉ You must pay all of the following delinquent citations.

| Citation Number | Issue Date | Violation Code | Violation | Amount Due |
|---|---|---|---|---|
| 886674784 | 09/20/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 886621245 | 09/21/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 886298512 | 09/21/2017 | V22500H | DOUBLE PARKING | $185.00 |
| 886673152 | 09/22/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 886885285 | 09/27/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 887001065 | 10/02/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 887131210 | 10/13/2017 | TRC7.2.25 | RED ZONE | $185.00 |
| 887770251 | 10/19/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 887765734 | 10/25/2017 | V22500F | ON SIDEWALK | $185.00 |
| 887765745 | 10/25/2017 | V22500E | DRIVEWAY | $185.00 |
| 888501095 | 11/06/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 887812542 | 11/13/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| PD31120331 | 11/13/2017 | TRC7.2.35 | PARKING ON GRADES | $141.00 |
| 891146421 | 11/17/2017 | TRC7.2.22 | STREET CLEANING | $148.00 |
| 891327356 | 11/30/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| 886979494 | 12/02/2017 | V22500I | BUS ZONE | $320.00 |
| 891961103 | 12/12/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| 892162025 | 12/14/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| 891637386 | 12/19/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| 892308535 | 12/21/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| 892600214 | 12/28/2017 | TRC7.2.22 | STREET CLEANING | $105.00 |
| | | | **Boot Removal Fee:** | $0.00 |
| | | | **Total Payment:** | $3163.00 |

Submit       Back       Cancel

DECLARATION OF JAMES SMITH

Claire Raba SBN 271691
Rebekah Evenson SBN 207825
BAY AREA LEGAL AID
1035 Market Street, 6th Floor
San Francisco, CA 94103
Telephone: 415 982 1300
Fax: 415 982 4243
cjohnson@baylegal.org

Elisa Della-Piana SBN 226462
J. Pond SBN 299229
Lawyers' Committee for Civil Rights
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 847-3001
Fax: (415) 543-0296
edellapiana@lccr.com

ATTORNEYS FOR PETITIONER
James Smith

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
## UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| JAMES SMITH,<br>Petitioner,<br><br>v.<br><br>EDWARD D. REISKIN in his official capacity as the Director of Transportation of the San Francisco Municipal Transit Authority; the SAN FRANCISCO MUNICIPAL TRANSIT AUTHORITY; TEGSCO LLC dba SAN FRANCISCO AUTO RETURN; DOES 1-10, inclusive. | Case No. CPF-18-516045<br>**DECLARATION OF VICTORIA LARSON IN SUPPORT OF PRELIMINARY INJUNCTION**<br><br>**Date: March 7, 2017**<br>**Time: 9:30 a.m.**<br>**Dept: 302**<br>**Judge: Honorable Harold E. Kahn** |

//

//

I, Victoria Larson, declare:

1

DECLARATION OF VICTORIA LARSON

1. I am making this declaration in support of the *ex parte* application for temporary restraining order and order to show cause why a preliminary injunction should not issue.

2. I have personal knowledge of the facts in this declaration.

3. I am a law clerk at the Lawyers' Committee for Civil Rights.

4. On January 11, 2018, I listened to a voicemail from James Smith. I called him back the same day.

5. Mr. Smith explained that his car had been towed and he could not afford to get it back.

6. Mr. Smith explained that he was homeless, and had been sleeping on the streets since losing his vehicle.

7. Between January 11 and January 17, 2018 I worked with Elisa Della-Piana who communicated directly with Diana Hammons, senior manager at SFMTA. We unsuccessfully attempted to negotiate the release of Mr. Smith's vehicle.

8. On January 17, 2018, I called the SFMTA tow desk to request a tow hearing for Mr. Smith.

9. I called SFMTA because their tow hearing scheduling website had a disclaimer stating that "if your vehicle is still in storage and you cannot afford to get it out, you must schedule an immediate hearing by calling [SFMTA]"

10. I did not reach anyone to schedule an immediate hearing on January 17, 2018.

11. On January 18, 2018, I spoke with someone at the SFMTA tow hearing desk. She stated that it was not necessary to schedule a tow hearing in advance because my client was indigent. Instead, he should just appear at the SFMTA office.

12. I requested copies of all evidence to be used against Mr. Smith during the tow hearing.

13. The SFMTA employee told me that I would need to go to the SFMTA office to get copies of anything.

2

DECLARATION OF VICTORIA LARSON

14. On January 19, 2018, I again called the SFMTA tow desk at approximately 10:45 AM. I spoke with Carol Alexander and again requested copies of all evidence to be used against Mr. Smith during his tow hearing.

15. Carol Alexander emailed me a copy of the tow inventory for Mr. Smith's vehicle at 10:48 AM on January 19, 2018.

16. I met Mr. Smith at the SFMTA office at approximately 12:40 PM on January 19, 2018.

17. I spoke with an SFMTA employee at a window, and stated I was here for an immediate tow hearing for my client.

18. The SFMTA employee handed me a form to fill out. The form asked for basic information about the car towed.

19. When I returned to the window, the SFMTA employee stated that the form was to request a hearing within 48 hours because they did not do same day hearings.

20. I explained to the SFMTA employee that I had been told by someone at the SFMTA hearing desk two days prior that scheduling a hearing was not necessary.

21. This employee told me to wait with my client.

22. Approximately 5 minutes later, another SFMTA employee waved at me to come speak with her.

23. The SFMTA employee asked about my client, and if I knew about the online tow hearing scheduler.

24. I explained again that I called the SFMTA directly, as directed by the website.

25. I explained that I was told when I called to just appear for an immediate tow hearing.

26. After approximately 25 minutes, a third SFMTA employee waved me to the window. She asked me to clarify my client's address on the form I had filled out.

27. I stated that my client is homeless. I wrote my client's former mailing address.

DECLARATION OF VICTORIA LARSON

1   28. After approximately 10 minutes, Mr. Smith was called into a hearing room.

2   29. I accompanied Mr. Smith and witnessed the tow hearing.

3   30. With permission, I used my phone to record the audio of the hearing.

4   31. Aiken Welsh transcribed the recording.

5

6   I declare under the penalty of perjury under the laws of the State of California that the

7   foregoing is true and correct.

8

9   Date: 2/21/18

10  VICTORIA LARSON

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

DECLARATION OF VICTORIA LARSON

1   Claire Johnson Raba SBN 271691
    Rebekah Evenson SBN 207825
2   BAY AREA LEGAL AID
    1035 Market Street, 6th Floor
3   San Francisco, CA 94103
    Telephone: (415) 982-1300
4   Fax: (415) 982-4243
    cjohnson@baylegal.org
5   revenson@baylegal.org

6   Elisa Della-Piana SBN 226462
    Jude Pond SBN 299229
7   LAWYERS' COMMITTEE FOR CIVIL RIGHTS
8   131 Steuart Street, Ste. 400
    San Francisco, CA 94105
9   Telephone: (415) 543-9444
    Fax: (415) 543-0296
10  edellapiana@lccr.com
11  jpond@lccr.com

12  ATTORNEYS FOR PETITIONER AND PLAINTIFF
13  James Smith

14          SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
15                       UNLIMITED CIVIL JURISDICTION

16  JAMES SMITH,                          Case No. CPF18516045

17      Plaintiff and Petitioner,         **[PROPOSED] ORDER GRANTING
                                          PRELIMINARY INJUNCTION**
18      v.

19  EDWARD D. REISKIN in his official     **Date: March 7, 2018**
    capacity as the Director of Transportation of  **Time: 9:30 a.m.**
20  the San Francisco Municipal Transit   **Dept: 302**
    Authority; the SAN FRANCISCO          **Judge: Honorable Harold E. Kahn**
21  MUNICIPAL TRANSIT AUTHORITY;
    TEGSCO LLC dba SAN FRANCISCO
22  AUTORETURN; DOES 1-10, inclusive,

23
    Defendants and Respondents.
24

25

26

27

28

                            [PROPOSED] ORDER
                                    1

TO DEFENDANTS EDWARD REISKIN, SAN FRANCISCO MUNICIPAL TRANSIT AUTHORITY, TEGSCO LLC dba SAN FRANCISCO AUTORETURN, AND THEIR ATTORNEYS OF RECORD:

Based upon Plaintiff's *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause why a preliminary injunction should not issue, and all the pleadings and arguments submitted to the Court by all the parties, Plaintiff's application for preliminary injunction is GRANTED.

IT IS ORDERED that:

Defendants are HEREBY ENJOINED: 1) From ordering, conducting, or completing a sale of the car or otherwise transferring possession of the car to anyone other than Mr. Smith; 2) From demanding payment before returning the car to Mr. Smith; 3) From continuing to retain Mr. Smith's vehicle.

Defendants shall return the car to Mr. Smith without charge until Mr. Smith is afforded a determination on the merits as to the lawfulness of Defendants' seizure of his car as a method to collect a municipal debt. This Order shall continue until such time as the Court determines whether Defendants' tow of Plaintiff's car was lawful and conducted without violations of Plaintiff's constitutional rights.

Dated:_____

By:_____

Honorable Harold E. Kahn
Judge of the Superior Court
County of San Francisco

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Claire Johnson Raba 271691<br><br>1800 Market St. 3rd Floor<br>San Francisco CA 94102<br><br>TELEPHONE NO.: **415-982-1300**  FAX NO. *(Optional):* **415-982-4243**<br>E-MAIL ADDRESS *(Optional):* cjohnson@baylegal.org<br>ATTORNEY FOR *(Name):* **James Smith** | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **San Francisco**
    STREET ADDRESS: **400 McAllister St.**
    MAILING ADDRESS:
    CITY AND ZIP CODE: **San Francisco 94102**
    BRANCH NAME: **Civic Center Courthouse**

PETITIONER/PLAINTIFF: **James Smith**

RESPONDENT/DEFENDANT: **Edward D. Reiskin et al.**

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER:<br>CPF18516045 |
|---|---|

***(Do not use this Proof of Service to show service of a Summons and Complaint.)***

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   **1800 Market St. 3rd Fl.**
   **San Francisco, CA 94102**

3. On *(date):* **2/21/18**  I mailed from *(city and state):* **San Francisco, CA**
   the following **documents** *(specify):*
   **Memorandum of Points and Authorities ISO Preliminary Injunction** ; Declaration of James Smith
   **ISO; Declaration of Victoria Larson ISO**

   ☐  The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)*
   (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☐  **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☑  **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served:

   b. **Address** of person served:

   ☑  The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

**Wan Li**
_____  _____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)  (SIGNATURE OF PERSON COMPLETING THIS FORM)

# INFORMATION SHEET FOR PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL

*(This information sheet is not part of the Proof of Service and does not need to be copied, served, or filed.)*

**NOTE:** This form should **not** be used for proof of service of a summons and complaint. For that purpose, use *Proof of Service of Summons* (form POS-010).

Use these instructions to complete the *Proof of Service by First-Class Mail—Civil* (form POS-030).

A person over 18 years of age must serve the documents. There are two main ways to serve documents:
(1) by personal delivery and (2) by mail. Certain documents must be personally served. You must determine whether personal service is required for a document. Use the *Proof of Personal Service–Civil* (form POS-020) if the documents were personally served.

The person who served the documents by mail must complete a proof of service form for the documents served. **You cannot serve documents if you are a party to the action.**

## INSTRUCTIONS FOR THE PERSON WHO SERVED THE DOCUMENTS

The proof of service should be printed or typed. If you have Internet access, a fillable version of the Proof of Service form is available at *www.courtinfo.ca.gov/forms.*

*Complete the top section of the proof of service form as follows:*

First box, left side: In this box print the name, address, and telephone number of the person *for* whom you served the documents.

Second box, left side: Print the name of the county in which the legal action is filed and the court's address in this box. The address for the court should be the same as on the documents that you served.

Third box, left side: Print the names of the Petitioner/Plaintiff and Respondent/Defendant in this box. Use the same names as are on the documents that you served.

First box, top of form, right side: Leave this box blank for the court's use.

Second box, right side: Print the case number in this box. The case number should be the same as the case number on the documents that you served.

*Complete items 1–5 as follows:*

1. You are stating that you are over the age of 18 and that you are not a party to this action. You are also stating that you either live in or are employed in the county where the mailing took place.

2. Print your home or business address.

3. Provide the date and place of the mailing and list the name of each document that you mailed. If you need more space to list the documents, check the box in item 3, complete the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)), and attach it to form POS-030.

4. For item 4:

    Check box a if you personally put the documents in the regular U.S. mail.
    Check box b if you put the documents in the mail at your place of business.

5. Provide the name and address of each person to whom you mailed the documents. If you mailed the documents to more than one person, check the box in item 5, complete the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (form POS-030(P)), and attach it to form POS-030.

**At the bottom, fill in the date on which you signed the form, print your name, and sign the form. By signing, you are stating under penalty of perjury that all the information you have provided on form POS-030 is true and correct.**

**PROOF OF SERVICE BY FIRST CLASS MAIL—CIVIL**
**(Proof of Service)**

| SHORT TITLE: Smith v. Reiskin et al. | CASE NUMBER:<br>CPF18516045 |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| JOHN WICKER, agent for service of process for TEGSCO, LLC dba SAN FRANCISCO AUTORETURN | 450 - 7th St.<br>San Francisco, CA 94103 |
| Wayne Snodgrass<br>Deputy City Attorney, City and County of San Francisco | 1 Dr. Carlton B. Goodlett Place Room 234, City Hall<br>San Francisco, CA 94102-4682 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Form Approved for Optional Use
Judicial Council of California
POS-030(P) [New January 1, 2005]

**ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(PERSONS SERVED)**
**(Proof of Service)**

Page ____ of ____

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:** STATE BAR NO: **271691**<br>NAME: **Claire Johnson Raba**<br>FIRM NAME:<br>STREET ADDRESS: **1800 Market St. 3rd Floor**<br>CITY: **San Francisco** STATE: **CA** ZIP CODE: **94102**<br>TELEPHONE NO.: **415-982-1300** FAX NO.: **415-982-4243**<br>E-MAIL ADDRESS: **cjohnson@baylegal.org**<br>ATTORNEY FOR (name): **James Smith** | *FOR COURT USE ONLY* |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco<br>STREET ADDRESS: **400 McAllister St.**<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: **San Francisco 94102**<br>BRANCH NAME: **Civic Center Courthouse** | |
| PLAINTIFF/PETITIONER: James Smith | **CASE NUMBER:**<br>**CPF18516045** |
| DEFENDANT/RESPONDENT: Edward D. Reiskin et al. | **JUDICIAL OFFICER:**<br>**Kahn** |
| **PROOF OF ELECTRONIC SERVICE** | **DEPARTMENT:**<br>**302** |

1. I am at least 18 years old.

   a. My residence or business address is *(specify):*
      1800 Market St. 3rd Floor
      San Francisco, CA 94102

   b. My electronic service address is *(specify):*
      cjohnson@baylegal.or

2. I electronically served the following documents *(exact titles):*
   Memorandum In Support of Issuance of Preliminary Injunction; Declaration of Victoria Larson ISO; Declaration of James Smith ISO

   ☐ The documents served are listed in an attachment. *(Form POS-050(D)/EFS-050(D) may be used for this purpose.)*

3. I electronically served the documents listed in 2 as follows:
   a. Name of person served: **Wayne Snodgrass**

      On behalf of *(name or names of parties represented, if person served is an attorney):*
      SFMTA, Edward D. Reiskin

   b. Electronic service address of person served :
      Wayne.Snodgrass@sfcityatty.org

   c. On *(date):* 2/21/18

   ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
      *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

Date: 2/21/18

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Claire Johnson Raba
    (TYPE OR PRINT NAME OF DECLARANT)               (SIGNATURE OF DECLARANT)

Page 1 of 1

Form Approved for Optional Use<br>
Judicial Council of California<br>
POS-050/EFS-050 [Rev. February 1, 2017]

**PROOF OF ELECTRONIC SERVICE**<br>
**(Proof of Service/Electronic Filing and Service)**

Cal. Rules of Court, rule 2.251<br>
www.courts.ca.gov