**FILED**

MAR 2 7 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1

2

3

4

**JOEL DROTTS**
**537 JONES ST., #3423**
**SAN FRANCISCO, CA, 94102**
**415-933-1354**
HONESTVALU@GMAIL.COM

5

6

7

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

8

9

James Smith

~~JOEL DROTTS IN PROPER,~~

Case No.: 18-CV-12395 JSW

10

**Plaintiff,**

11

vs.

12

13

14

15

16

**EDWARD D. REISKIN in his official**
**capacity as the Director of Transportation of**
**the San Francisco Municipal Transit**
**Authority; San Francisco Municipal Transit**
**Authority; SAN FRANCISCO MUNICIPAL**
**TRANSIT AGENCY; TEGSCO LLC DBA**
**SAN FRANCISCO AUTO RETURN; DOES**
**1-10, inclusive,**

**MOTION TO INTERVENE ON FEDERAL**
**CASE: JAMES SMITH V. EDWARD D.**
**REISKIN in his official capacity as the**
**Director of Transportation of the San**
**Francisco Municipal Transit Authority; San**
**Francisco Municipal Transit Authority;**
**SAN FRANCISCO MUNICIPAL**
**TRANSIT AGENCY; TEGSCO LLC DBA**
**SAN FRANCISCO AUTO RETURN;**
**DOES 1-10, inclusive,**

17

**DEFENDANTS**

18

19

20

**ATTACHED DOCUMENTS:**

EXHIBIT A: AMENDED COMPLAINT OF
PLAINTIFF JOEL DROTTS

21

**Dated**

22

3/27/2018

23

**JOEL DROTTS**

24

**MOTION TO INTERVENE**

25

Pursuant to Federal Rule of Civil Procedure 24(a), plaintiff-intervenor-applicant Joel Drotts

26

27

respectfully moves this Court for leave to intervene as of right in the above-titled action.  In the
alternative, applicant moves for permissive intervention pursuant to Federal Rule of Civil
Procedure 24(b).

28

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**
**INTRODUCTION AND BACKGROUND**

Comes now the Plaintiff Joel Drotts in this matter, who is filing this ex parte motion to leave to intervene on this matter. Plaintiff Drotts files this motion to intervene as co-plaintiff on case number **CFP-18-516045** or it's Federal designation and seeking damages from Defendants Edward D. Reiskin in his official capacity as the Director of Transportation of San Francisco Municipal Transit Authority; the SAN FRANCISCO MUNICIPAL TRANSIT AUTHORITY; TEGSCO LLC dba SAN FRANCISCO AUTO RETURN; DOES 1-10, inclusive.

The Plaintiff wishes to join in with the current Plaintiff against the Defendant's for those reasons and causes of action properly plead in the attached complaint as **Exhibit A.** The Plaintiff Joel Drotts has both a legal and financial interest in the outcome of the current case at bar. The Plaintiff Joel Drotts files this motion to intervene because his Constitutional rights as a vehicle owner in the City of San Francisco will be directly affected by the mandates purposed in the already filed order. Moreover, a certain number of causes of action in the current case at bar, are identical to the causes of action and claims for damages made by the Plaintiff Drotts in the already filed case **CGC-18-563861,** which was filed independently on **January 25, 2018,** and against the same two Defendant's in the current case at bar. The Plaintiff Joel Drotts does therefore seek to bifurcate his causes of action, in order that those claims capable of repetition, those claims also having the same Defendant's, and those claims also having the same issues of law as the current case at bar may be heard simultaneously.

Over the course of a six-month period in 2017, the Plaintiff Drotts did have his car unconstitutionally taken by the two current Defendants AutoReturn and the SFMTA at least four separate times. Two of those four occasioned unconstitutional takings resulted in several personal torts inflicted upon the Plaintiff, by the two Defendant's. Those causes of action concern the manner the two Defendant's went about taking the vehicle in question, from the immediate and direct possession of the Plaintiff Drotts. Those torts are already being addressed in case number CGC-18-563861, and while the bifurcated causes of action in CGC-18-563861 are related, they are sufficiently different not to warrant their inclusion in the current case at bar.

Just as was the case with the Plaintiff in the current case, the lawfully parked vehicle of Plaintiff Drotts was unconstitutionally taken by the same two Defendants, who cited the same statute as their authority **Vehicle Code section 22651(i)** or **"SCOF/651.I** Scoflaw-Citations" to take the vehicle of Plaintiff Drotts without prior notice, opportunity to be heard, and without any concern as to how the unplanned loss of his only vehicle would cause Drotts financial and emotional harms. Just as with the first plaintiff, the two Defendants then denied the Plaintiff Drotts any meaningful post tow hearing, completely ignoring the constitutional rights of Drotts to confront witnesses against him, examine the evidence against him, or even appear in the matter. All these causes of action were already made a part of the pending case number **CGC-18-563861**, as well as the additional torts not plead in the current case. The Plaintiff Drotts filed a cause of action, which was then moved to Federal Court by the Defendants. Ultimately the Plaintiff Drotts was granted motion to dismiss without prejudice, with the express intent to preserve and be allowed to refile his amended complaint in order to remove certain claims in his first filed complaint which made the Plaintiff's case capable of being removed to Federal Courts by the Defendants, and away from the San Francisco jury pool the Plaintiff Drotts means to try the case in front of. This the Plaintiff Drotts did do on January 25, 2018.

The current case at bar was filed on behalf of James Smith on 2/13/2018, seeking an immediate TRO. On 2/14/2018 the court granted that TRO, pending a motion to show cause. The Plaintiff Drotts being directly affected by the **Ordinary Mandamus (CCP § 1085)** causes of action plead in the current Plaintiff's case, does seek to enjoin as co-plaintiff to both preserve his rights and causes of action in case number **CGC-18-563861**, and properly represent his interests and rights in the current action as they are the same as the current Plaintiffs' Smith.

## APPLICANTS

The Plaintiff Joel Drotts is making this application alone, and in his own name only. At the same time, the Plaintiff is aware of the fact that the issues brought by himself are capable of repetition and will have a large positive effect on a large portion of the citizens of San Francisco should he prove successful.

3

Because the applicant meets the four requirements for intervention as of right as plaintiffs under Fed. R. Civ. P. 24(a) or, alternatively, the broad standard for permissive intervention under Rule 24(b), applicants respectfully request the Court for leave to intervene as plaintiffs in this case.

Additionally, because Drotts challenges the same final agency action as applicants, but for different reasons, and seeks a dramatically different result, applicants will be irreparably harmed if SFMTA prevails in this case. Because each applicant meets the four requirements for intervention as of right as Plaintiff under Fed. R. Civ. P. 24(a) or, alternatively, the broad standard for permissive intervention under Rule 24(b), applicants respectfully request the Court for leave to intervene as a Plaintiff in this case.

## ARGUMENT

### I.       JOEL DROTTS IS ENTITLED TO INTERVENE AS OF RIGHT.

The Federal Rules of Civil Procedure provide the following:

*Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.* **Fed. R. Civ. P. 24(a).**

This Court uses a four-part test to evaluate motions to intervene: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." **SEC v. Prudential Sec. Inc., 136 F.3d 153, 156 (D.C. Cir. 1998).** Practical considerations guide courts in applying this test. See Fed. R. Civ. P. 24, advisory committee's note. In the present case, applicants satisfy each of the elements for intervention under Rule 24(a).

**A. Joel Drotts' Motion for Intervention Is Timely.**

In determining whether an intervention motion is timely, this Court should consider "'all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.'" **United States v. British American Tobacco Australia Serv., 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting United States v. American Tel. & Tel. Co., 642 F.2d 1285, 1295 (D.C. Cir. 1980)).** Joel Drotts' motion to intervene is timely because the present case is in its early stages. The case was only moved to the Federal court less than a week ago, and no other motions or other major actions have yet been filed in this matter.

**B. Applicants Have an Interest in the Subject Matter of This Action.**

Rule 24(a) requires an applicant for intervention to possess an interest relating to the property or transaction that is the subject matter of the litigation. This "interest test" is not a rigid standard; rather, it is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." **Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967); see also Friends of Animals v. Kempthorne, 452 F. Supp. 2d 64, 69 (D.D.C. 2006).** Indeed, a proposed intervenor need not have a specific legal or equitable interest in jeopardy but need only show a "protectable interest of sufficient magnitude to warrant inclusion in the action." **Smith v. Pangilinan, 651 F.2d 1320, 1324 (9th Cir. 1981); see also Friends of Animals, 452 F. Supp. 2d at 69** ("[P]roposed intervenors of right 'need only an interest in the litigation—not a cause of action or permission to sue.'") (citation omitted).

The Intervenor has an adequate, direct and immediate interest in this proceeding. When the first Plaintiff attorneys did seek to utilize and seek an ordinary mandate under **CCP § 1085,** they utilized a very broad and inclusive mandate. As such, the Plaintiff's own constitutional rights at issue in case number **CGC-18-563861,** were brought into the preview of this court and

case and became capable of repetition. In fact, the fact that the Plaintiff Drotts claims are for the same types of harms, springing from the same statutes and constitutional issues, against the same Defendant's, and turning on the same questions of law, it is highly possible the Plaintiff Drotts could suffer res judicata defenses and estopple of his claims at a later point. Due to the fact that the Plaintiff means to preserve and protect his other causes of action in case number **CGC-18-563861**, the Plaintiff Drotts should be allowed to intervene in on the present case, as his immediate rights and interests are most definitely capable of being harmed by the outcomes of the present case at bar.

Therefore, the Plaintiff does support all causes of action already plead by the Plaintiff James Smith in case number **CFP-18-516045**, and against the same exact defendants. Drotts too suffered unconstitutional takings of his vehicle, at the hands of the Defendants, without any warning, and on four separate occasions. Drotts also requested post-tow hearings, on the issue of the blitz-tows and unconstitutional takings of the Plaintiff's vehicle by the SFMTA and AutoReturn on four separate occasions but was however denied post-taking hearings. In the alternative, the Defendant's did hold post-tow hearings, as Plaintiff Drotts demanded. However, the policies and practices of the SMFTA in holding post-tow-hearings are so woefully inadequate in due process procedural content, those "hearings" fail completely in their mandatory constitutional purposes of ensuring the Plaintiff's right to due process. This failure to protect the Constitutional due process rights of Mr. Drotts, by way of post-tow hearing, is best evidenced by **(Exhibit One).**

Where, as here, the question in a mandate proceeding is one of public right and the object is to procure enforcement of a public duty, a plaintiff need not show any legal or specialize interest in the result. . . . it is sufficient the plaintiff is interested as a citizen in having the laws executed and the public duty enforced. **Newland v. Kizer (1989) 209 Cal.App.3d 647, 653 (citing Green v. Obledo (1981) 29 Cal.3d 126, 144).** The courts have long held that taxpaying residents who are property owners in a particular neighborhood, city or county "obviously have an interest in the matter in litigation," and therefore may be permitted to intervene. Intervenors are taxpayers of the city and county of Diamond Heights area. Obviously, they have 'an interest

therefore may be permitted to intervene. **Redevelopment Agency of City and County of San Francisco v. Hayes, (1954) 122 Cal.App.2d 777, 785.**

The appellate court reviews the superior court's ruling on standing using the substantial evidence test.  As a rule, standing requires a party to have a beneficial interest, a private or interest independent of the public at large. But "where a public right is involved, and the object of the writ of mandate is to procure enforcement of a public duty, the plaintiff is not required to have any legal or special interest in the result; it is sufficient that as a citizen he is interested in having the public duty enforced. **Burrtec Waste Industries, Inc. v. City of Colton (2002) 97 Cal.App.4th 1133, 1137.**

Other cases hold that the court has "broad discretion in determining whether to permit intervention," especially when there is evidence showing that the interests in defending claims would not necessarily be adequately represented by the named defendants. See **US Ecology, Inc. v. State of Calif., (2001) 92 Cal.App.4th 113, 139-140; People v. Superior Court (Good) (1976) 17 Cal.3d 732, 737; Jade K. v. Viguri (1989) 210 Cal.App.3d 1459, 1468; and Simpson Redwood Co. v. State of Calif. (1987) 196 Cal.App.3d 1192; see also Simac Design, Inc. v. Alciati (1929) 92 Cal.App.3d 146, 157. (Court allowed intervention upon oral motion by attorney at hearing on Writ of mandate Petition.) Howard Jarvis Taxpayers Ass'n v. Bowen, (2011) 192 Cal.App.4th 110. ("Taxpayers petitioned for writ of mandate challenging ballot label, title, and summary for a ballot measure for approval of state bonds.") (Emphasis added)**

The individual seeking to intervene in this case has had significant involvement with the City of San Francisco and has followed closely the City's policies as far as parking enforcement. As an eighteen-year resident, a tax payer, and a voter Drotts has a vested interest in the manner the City government collects enforces the parking ordinances. Before these trials and during the months in question when the tow-takings were occurring the Plaintiff Drotts contacted City Counsel Person for District Six Jane Kim by e-mail on several occasions, trying to alert her to the unconstitutional practices of the Defendant's, and the fact that the continuance of such

7

actions could and most likely would result in litigation of some sort and some point in the near future. As a resident of the City of San Francisco, a tax payer, a resident and advocate for the Tenderloin District, the Plaintiff Drotts has a vested personal interest in ensuring that the practices and policies currently enforced that target the low-income individuals in the neighborhood, like the Plaintiff Drotts himself, are both protected and treated with equal dignity and fairness as well.

**C. Joel Drotts' interests in may be Impaired by This Litigation.**

An applicant for intervention as of right must be "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. P. 24(a) (emphasis added).  Applying this impairment requirement, the Court should "'look [] to the 'practical consequences' of denying intervention . . .." Fund **for Animals v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003).**  Such an inquiry "'is not limited to consequences of a strictly legal nature.'" **Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1498 (9th Cir 1995) (quoting Natural Res. Defense Council v. Nuclear Regulatory Comm'n, 578 F2d 1341, 1345 (10th Cir. 1978)).** None-the-less, the two Plaintiff's claims and issues of law are so similar that if it is later proven the Plaintiff Drotts knew of this case and failed to intervene, his claims may possibly be later barred by res judicata and claim preclusion defenses.

This in of itself warrants Mr. Drotts inclusion on the immediate case, but as a more practical matter the fact the Plaintiffs are suing the City the City Council may be less willing to negotiate possible non-litigation solutions with the Plaintiff, if for example a large settlement was already paid to an earlier Plaintiff for the same issues and points of law. Moreover, the City could decide to revoke its permissive sovereign lawsuit position, having been already sued on the same issues and points of law. These are but a few of the real-world practicalities the Plaintiff Drotts may suffer or be made to contend with, merely because the City of San Francisco may believe Plaintiff Drotts case to have filed second instead of simultaneously. These injuries plainly satisfy Rule 24(a)'s impairment-of-interest requirement.

**D. Neither of the Existing Parties Will Adequately Represent Applicants' Interests.**

Finally, an applicant for intervention as a matter of right must show that its interests may not be adequately represented by the existing parties to the litigation. This requirement is "not onerous" and is satisfied if the applicant shows that the representation of its interests "maybe" inadequate. **Fund for Animals v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972); Dimond v. District of Columbia, 792 F.2d 179, 192 (D.C. Cir. 1986)).** Indeed, a petitioner "'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee[.]'" **Fund for Animals, 322 F.3d at 735 (quoting American Tel. & Tel. Co., 642 F.2d at 1293).** The D.C. Circuit has "often concluded that governmental entities do not adequately represent the interest of aspiring intervenors." **Fund for Animals, 322 F.3d at 736 (citing Natural Res. Defense Council v. Costle, 561 F.2d 904, 912-13 (D.C. Cir. 1977); Smuck v. Hobson, 408 F.2d 175, 181 (D.C. Cir. 1989)); see also Friends of Animals, 452 F. Supp. 2d 64.** Here, the relief sought is completely different, as the Plaintiff Drotts has been made to pay out large amounts of moneys due to the unconstitutional policies and practices of the two Defendants. As such, Mr. Drotts interests cannot and will not be represented properly, by any party but his own self.

## II. JOELDROTTS SATISFIES THE STANDARD FOR PERMISSIVE INTERVENTION.

As detailed above, Joel Drotts meets the requirements for intervention as of right under **Rule 24(a).** However, if this Court denies intervention as of right, applicants request the Court for leave to intervene under Rule 24(b). Permissive intervention is appropriate when an applicant's timely claim or defense "shares a question of law or fact in common with the underlying action and if the intervention will not unduly delay or prejudice the rights of the original parties." Acree v. Republic of Iraq, 370 F.3d 41, 49 (D.C. Cir. 2004) (citing Fed. R. Civ. P. 24(b)).

Here, Joel Drotts meets the Rule 24(b) standard.  Applicants have a significant interest in the constitutional operation of his local government. Especially, considering the fact Mr. Drotts was harmed on multiple occasions by the unconstitutional policies and practices of that government.   Moreover, because this case is in its early stages, Joel Drotts' intervention will not cause any undue delay or prejudice to the existing parties.  Given the importance of the issues involved in this case, the stake the applicant has in enjoying the benefit of a local government which knows itself to be bound by the State and Federal Constitutions, and therefore respects the rights of its citizens like the Plaintiff Drotts, the Court should allow permissive intervention.

**CONCLUSION**

For the reasons set forth above, Joel Drotts et al. respectfully requests that the Court grant him intervention as of right or, in the alternative, permissive intervention.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

11

**JOEL DROTTS**
**537 JONES ST., #3423**
**SAN FRANCISCO, CA, 94102**
**415-933-1354**
HONESTVALU@GMAIL.COM

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOEL DROTTS IN PRO PER,** | **Case No.:** |
| **Plaintiff,** | |
| **vs.** | **SECOND AMENDED COMPLAINT AND SUPPORT OF MOTION TO INTERVENE ON CASE NUMBER** |
| **SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY; TEGSCO LLC DBA AUTO RETURN TOWING; JOHN DOE BADGE #426 OF SFMTA; AND JOHN DOE TOW TRUCK DRIVER** | |
| **Defendant** | |

**Dated 3/13/2018**

_____
**JOEL DROTTS**

**Motion to intervene as co-plaintiff on case number CFP-18-516045 and seeking damages from Defendants Edward D. Reiskin in his official capacity as the Director of Transportation of San Francisco Municipal Transit Authority; the SAN FRANCISCO MUNICIPAL TRANSIT AUTHORITY; TEGSCO LLC dba SAN FRANCISCO AUTO RETURN; DOES 1-2 JOHN DOE BADGE #426 OF SFMTA; AND JOHN DOE TOW TRUCK DRIVER inclusive.**

Comes now the Plaintiff Joel Drotts in this matter, as being so similarly situated as the Plaintiff in this matter as the first Plaintiff James Smith, the Plaintiff Joel Drotts has both a legal and financial interest in the outcome of the current case at bar. The Plaintiff Joel Drotts files this complaint with his motion to intervene, based on the fact that a certain number of causes of action in the current case at bar, are identical to the causes of action and claims for damages made by the Plaintiff Drotts in the already filed case **CGC-18-563861,** which was filed

independently on **January 25, 2018. Moreover, as all defendants and questions of law are identical to the James Smith case as well, Drotts has an undeniable interest in adding these claims for damages made herein below to the current case at bar.** The Plaintiff Joel Drotts does therefore seek to bifurcate his causes of action, and therefore files these causes of action herein contained below.

## INTRODUCTION

1.   This action challenges: (1) Defendant's ' tows and impoundments, without notice, of Intervenor Plaintiff Joel Drotts' safely parked vehicle, in violation of the Fourth and Fourteenth Amendments; as well as other California State statutes on point, on four separate occasions.

2. Respondents' have a policy and practice of seizing vehicles without notice where there is no community caretaking rationale; and

3. Respondents' policy and practice of towing vehicles without notice, and without a reasonable opportunity to be heard from vehicle owners who cannot afford to pay parking tickets and is a gross disregard for constitutional right to due process, as well as the right to be free from unreasonable searches and seizures according to the California State Constitution.

4. Plaintiff seeks damages in order to recover the financial harms caused by the unconstitutional acts of the Defendant Respondents, which the Respondents had a duty not to undertake due to the fact those acts violated the Plaintiff Drotts' civil rights.

5. San Francisco Municipal Transit Authority ("SFMTA") is a municipal agency responsible for ground transportation in San Francisco, California, including towing vehicles as ordered by SFMTA's Enforcement Division or the San Francisco Police Department.

4. Joel Drotts is a 40-year-old resident of San Francisco, living in the same low-income neighborhood as the first Plaintiff James Smith. Drotts is bringing this action after the Respondents denied the Plaintiff Drotts any meaningful chance to protest the un-noticed,

unconstitutional, and unwarranted actions of the Defendants, which resulted in four separate takings of his lawfully parked vehicle.

5. SFMTA ordered Mr. Drotts' truck towed on all four of the aforementioned separate occasions in order to enforce **Vehicle Code section 22651(i) or "SCOF/651.I Scoflaw-Citations,"** in order to coerce payment on several outstanding parking citations, none of which was more than three months overdue at the time of the tow. SFMTA did not provide Mr. Drotts with notice that the car would be towed, nor a meaningful opportunity to resolve the citations before tow, nor after the multiple tows, as evidenced by the e-mail Mr. Drotts received in response to his demand for a post tow hearing **(Exhibit One).**

6. As a result of these tow takings of Mr. Drotts' only vehicle, Mr. Drotts was forced to go deeply in debt due to his inability to pay the fees demanded by the Defendants for the release of his vehicle. Mr. Drotts lack of an appropriate vehicle, also caused Mr. Drotts to miss out on at least $10,000 in wages from local hauling and transportation jobs, which usually are a large portion of Mr. Drotts income. At the same time, these unconstitutional takings and impoundments forced Mr. Drotts to barrow heavily, in order to facilitate the immediate release of his only vehicle and primary source of income. These principle on these loans alone are/were $15,000. Mr. Drotts further suffered an additional **$10,000+** in personal property loss, over the course of the four complained of tows. This is due to certain number of power tools, electronics, clothes, and cash being in the vehicle when towed, would and did repeatedly become "missing" from the vehicle when it was finally returned. This caused Mr. Drotts to question if the repeated tows were not intentionally facilitated by certain people, who came to know the vehicle was a work truck usually containing high value power tools and electronics. Finally, Mr. Drotts lost ownership of the $5,000.00 vehicle itself, unable to make yet another payment upwards of $1,2000.00 unexpectedly for the fifth month in a row. This forced Mr. Drotts to have to purchase a comparable replacement vehicle for $4,000.00.

7. The intervenor Plaintiff Drotts is also suing separately for a number of other more serious torts related to this matter, but not a part of this matter. The causes of action in the other case, are

a direct result of the unconstitutional and tortious manner the same Defendant's in the current case at bar did in fact take, seize, or strong-arm the same vehicle in question out of the direct control and possession of the Plaintiff Drotts, causing both physical and psychological harms to the person Mr. Drotts as well as greatly injuring his reputation and standing in the community.

8. Towing a vehicle constitutes a seizure under the **Fourth Amendment to the United States Constitution, and under the California Constitution Article 1, Section 13.** Exceptions to the warrant requirement for seizures are limited, and even statutorily authorized tows must comply with constitutional requirements. These tows did not, and Mr. Drotts was deprived of his property without the procedural due process protections required by the **Fourteenth Amendment and by Article 1, Section 7 of the California Constitution,** because he did not receive notice or an opportunity to be heard before SFMTA ordered his car towed. Additionally, Mr. Drotts was denied a meaningful opportunity to be heard after the tow, as evidenced by the e-mail response received by Mr. Drotts from the SFMTA hearing officer, denying him a hearing, and stating *"Someone would review the file, and get back to Mr. Drotts in 3-4 weeks."* Admittedly, after realizing how the "tow hearing" system worked the first time, Mr. Drotts didn't even bother to receive another official blow-off letter **(Exhibit one),** in which the SFMTA promises to have a "review" of the file, in an attempt to satisfy the due process requirements Drotts has a right to.

9. It is clear from the e-mail response **(Exhibit One )** that the SFMTA would not allow Mr. Drotts a meaningful opportunity to confront the witness against him, would not allow him to enter any new evidence, would not allow his access through discovery to the evidence in the "file" against him, and declined to consider any evidence or legal authority beyond the fact of past-due parking citations. As a result, Mr. Drotts vehicle was taken by the Defendants on four separate occasions without warning or opportunity for meaningful hearing, to determine the facts and legal rights of Mr. Drotts pertaining to those takings. What's more is that two of the four takings were conducted and effectuated by forcefully taking the vehicle from the direct and immediate control and possession of Mr. Drotts, and resulted in the torts of false imprisonment, battery, assault, intentional infliction of emotional distress, and slander were inflicted upon Mr.

Drotts by the same two Defendants. Furthermore, Mr. Drotts was made to pay amounts of money way beyond the ability of Mr. Drotts to pay, resulting in Mr. Drotts being forced to take on levels and amounts of debt that have proven to be the equivalent of economic murder for Mr. Drotts.

10.   Furthermore, Mr. Drotts was denied a hearing of any sort, prior to these unconstitutional government takings. What's even more outrageous is the fact that the government took the vehicle of Mr. Drotts on all four separate occasions, based solely upon unproven and unsubstantiated debts the City claimed to be created by the ticketing of meter-maids. However, the policies and practices of the City caused the Defendants to completely disallow the Plaintiff Mr. Drotts any meaningful manner, procedure, or hearing to substantiate the merits or legality of those tickets through proper examination of the issuing meter-maids. Mr. Drotts has a Constitutional right to face his accuser and examine all witnesses against him. This right is particularly important in the case of Mr. Drotts who has come to believe and has evidence that not all parking tickets given were valid and may have been issued as a part of a greater on-going conspiracy to harass Mr. Drotts personally by certain meter-maid employees of the SFMTA.

11.   Those unsubstantiated claimed amounts of debt, which the City wrongfully claims the Plaintiff owes and has owed, based on little more than the opinion of meter-maids, cannot be substantiated by the City. Meter-maids, who have unknown levels of training and expertise in determining the legality of how the Plaintiff was parked, are a part of a parking enforcement system lacking in any accountability. This is especially true, whereby the SFMTA has a stated policy of disallowing the examination of the ticket issuing meter-maids, and thusly denying all citizens their Constitutional right to examine witnesses, face their accusers, or verify that any ticket issued is lawful and with merit. Moreover, this system has no way to validate these debts caused by parking violations, other than the word of highly incentivized and prejudiced meter-maid parties working for the SFMTA. All of which serve as gross examples of the way the policies and practices of the SFMTA are devoid of basic constitutional considerations, many of which have come to harm the Plaintiff.

12.     The Plaintiff Drotts has been forced to pay for the return of his own property on at least four occasions. Those four occasions did force Drotts to take on increasing levels of personal debt, in order to pay the demanded amounts for the return of his vehicle, until a point finally Mr. Drotts simply could not barrow or acquire any more money. It was at that point Defendant AutoReturn wrongfully declared the vehicle "abandoned," and simply stole ownership of the vehicle for itself, causing the permanent loss to Mr. Drotts. The amounts of debt or the amounts Drotts was forced to pay were: **$578.00 on 4/28/2017, $1,700 on 4/29/2017, $2300 on 6/1/2017, $1989.00 on 7/6/2017, and $5,989.00 on 8/11/2017** resulting from the permanent loss and/or control of the vehicle.

13. Respondents also violated the Due Process and Equal Protection clauses of the California and federal constitutions, by towing and depriving Mr. Drotts of his car as punishment for Mr. Drotts failure to pay parking citations, even though Mr. Drotts could not afford to pay the full cost of the citations or the tow and storage fees. Mr. Drotts seeks an order of administrative mandate under **CCP § 1094.5** overturning the SFMTA hearing decision and immediately granting Mr. Drotts a refund of all moneys paid to the codefendants.

14. The SFMTA has in no way ended their unconstitutional practices and are now claiming Mr. Drotts has over forty-five unpaid parking tickets and owes over **$7,800.00 in fines or fees.** Moreover, the Defendants have on several occasions attempted to unconstitutionally take from the Plaintiff Drotts his 2003 Lincoln Aviator, which he paid **$5,000.00** for, as a replacement for the 2003 Ford Expedition the defendants unconstitutional policies and practices permanently deprived the Plaintiff of earlier.

15.     Mr. Drotts seeks also is seeking a temporary restraining order to stop the towing of his **2003 Lincoln Aviator,** until the outcome of case number **CGC-18-563861** is determined, and the court finds the Defendant's must give the Plaintiff Drotts a fair hearing, proving the guilt or validity of the tickets issued and alleged debts owed, with a neutral magistrate, capable of aiding Mr. Drotts in gaining a payment plan for those tickets that may in fact be found valid, and not more harassment and punishment for Mr. Drotts legitimate evocation of his legal rights in the

courts. The Plaintiff therefore seeks a peremptory writ of mandate pursuant to **CCP § 1085,** directing Respondents to comply with their legal duties under the United States and California Constitutions, and grant a meaningful hearing prior to taking the vehicle.

16. Mr. Drotts requests injunctive relief under **42 U.S.C. section 1983,** to prevent Respondents to stop other unconstitutional tows on all citizens. Furthermore, that the Defendant SFMTA make meaningful pre-towing hearings available, grant a neutral magistrate to preside over such hearing, make available for examination the ticket issuing meter-maids or law enforcement professional should said ticket be issued by law enforcement, give fair and adequate warning that the taking may occur, base the fines and fees on the persons proven income and ability to pay those fines and fees, as well as there being a meaningful payment plan option.

17.     Finally, Mr. Drotts asks the Court to award damages in the amount of **$91,556.00** for the harm caused by several and then permanent loss of his vehicle, the cost of the final loss of the vehicle and its contents, as well as all lost wages. While bifurcating and preserving for separate trial the causes of action already filed in **CFP-18-516045, filed January 25, 2018, titled JOEL DROTTS IN PRO PER, vs. SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY; TEGSCO LLC DBA AUTO RETURN TOWING; JOHN DOE BADGE #426 OF SFMTA; AND JOHN DOE TOW TRUCK DRIVER.**

## II.     THE PARTIES

18.     Plaintiff/Petitioner Joel Drotts is a 40-year-old community leader and nonprofit founder, has been a resident of San Francisco, California for the past eighteen years. The Petitioner currently resides in an SRO on Jones Street, which he has shared with his fiancé for the past seven months. Aside from operating the registered California non-profit dedicated to education and the digital and electronic privacy rights of American consumers, the Petitioner earns a living as a part time security guard at a popular local nightclub, performing various "odd-jobs" as a "handy-man/mechanic," as well as freelance per a job "light industrial and retail hauling and/or material moving." His fiancé works nights as an exotic dancer on Broadway.  Prior to the agency

decisions that are the subject of this petition, Mr. Drotts regularly parked his now-towed only vehicle, and source of income on Jones Street, in San Francisco.

18. Defendant/Respondent EDWARD D. REISKIN is the Director of Transportation of the SFMTA and is responsible for managing SFMTA and its vehicle tows in accordance with the law. Respondent is sued in his official capacity as the municipal official responsible for ensuring that the SFMTA and its agents act in conformity with federal and state law. Defendant/Respondent SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY ("SFMTA" or "Respondent") is the municipal agency responsible for ensuring lawful administration of vehicle tows and impounds within the City of San Francisco.

19.    Defendant/Real party in interest TEGSCO, LLC dba SAN FRANCISCO AUTORETURN ("AutoReturn") is the exclusive provider of all tow-related services for the City and County of San Francisco. AutoReturn carried out the tow of Mr. Drotts Car on the following dates of **4/28/2017, 4/29/2017, 6/1/2017, 7/6/2017, and 8/11/2017,** and then holding his vehicle as a bailment against the wishes and permission of the Plaintiff Drotts in the following amounts **$578.00 on 4/28/2017, $1,700 on 4/29/2017, $2300 on 6/1/2017, $1989.00 on 7/6/2017, and $5,989.00 on 8/11/2017,** except of the final date which they then took permanent possession of the vehicle as Mr. Drotts could not afford to pay the final demanded amount of money losing him the full value of his **$5,000.00+** vehicle and all its contents.

20. AutoReturn has contracted with San Francisco to provide dispatch, towing, impound management and vehicle disposal services to the City and County of San Francisco since **2004**. In **2015,** AutoReturn was awarded the San Francisco contract for a five-year term beginning on **April 1, 2016.** Mandate lies against AutoReturn because serves a city function by performing city-ordered tow and storage services as part of the City's enforcement of local and state laws. See **Anchor Pacifica Mgmt. Co. v. Green, 205 Cal. App. 4th 232, 244 (2012)** (holding that private landlord was taking state action for purposes of constitutional analysis because landlord's administration of city-subsidized housing was "subject to City oversight and approval"); **City of**

**King City v. Community Bank of Central California, 131 Cal. App. 4th 913, 927 (2005)** ("[M]andate will sometimes lie against a private person to compel performance of a duty.").

21. The true names and capacities, whether individuals, corporate, associate, or otherwise, of DOES 1 through 10 are unknown to Mr. Drotts who therefore sue these Respondents by such fictitious names. Mr. Drotts is informed and believes, and based upon such information and belief, alleges that at all times material herein, each of the Doe Respondents was an agent or employee of one or more of the named Respondents, and was acting within the course and scope of said agency or employment. Mr. Drotts is further informed and believes, and based thereon alleges, that each of the Doe Respondents is legally responsible in some manner for the occurrences herein alleged. All allegations in this Petition that refer to the named Respondents refer in like manner to those Respondents identified as Respondents DOES 1-10, inclusive. Mr. Drotts will amend this Petition to allege the true names and capacities of the Doe Respondents when the same have been ascertained.

### III. LEGAL FRAMEWORK

**22. The two Defendant Agency Entities are liable and responsible for all acts and harms caused by the John Doe Defendants as their employees, due to the legal construction of respondent superior.**

23. The doctrine of respondent superior, literally "let the master answer," allows that an employer is vicariously liable for the wrongful conduct of his or her employees or agents committed within the scope of the employment or agency. **Randi W. v. Muroc Joint Unified Sch. Dist. (1997) 14 Cal.4th 1066, 1070, 929 P2d 582.** See also **California Civil Code Section 2338,** which states that a principal is liable to third persons for the negligence of its agent. The rationale for the doctrine lies in the fact that the principal or employer derives the benefit from the service of the agent or employee and is a better position to insure itself against losses arising out of the service. The losses caused by employee torts are placed on the employer as a cost of doing business. To apply the doctrine, two criteria must be established. First, the employment or agency relationship must be proven. Second, it must also be shown that the employee or agent

was acting within the scope of that employment. **Societa per Azioni de Navigazione Italia v. City of Los Angeles (1982) 31 Cal.3d 446, 461, 645 P.2d 102.** Upon establishing these two criteria, the employer or principal can be held responsible for its employees' torts absent any other showing of independent negligence on the part of the employer or principal.

24.   As such, it is undisputed that the two John Doe defendants were acting within the scope of their employment, as they were both wearing uniforms denoting as such. Moreover, the fact that the two John Doe defendants undertook all actions for the stated and purposeful benefit of the two Agency Defendants, is further undisputed factual evidence that not only were the John Doe defendants employed and on duty, were acting with-in the scope of their employment, and at times carrying out the policies of their employers. This can be further evidenced by the fact that, at least during the time period complained of, it was the standard practice and policy of the SFMTA and Auto Return to regularly send out combined agency units, early in the morning, whereby a meter-maid would travel in tow truck, with tow truck driver, and these units would essentially steal the cars of individuals suspected of having more than five over-due and unpaid parking tickets. The manner which those units chose whose car to tow on any given day remains unknown to the Plaintiff but given the racial slurs the Plaintiff was made to suffer being called while one such agency combined unit took his vehicle from his physical possession, it is a fair assumption to assume that the taking of cars is racially motivated at least in part.

### 25. A.   Reasonableness Under the Fourth Amendment to the United States Constitution and Article I, Section 13 of the California Constitution

26. The Fourth Amendment to the United States Constitution bars "unreasonable searches and seizures" of a person's property. **U.S. Const. amend. IV. Article I, Section 13 of the California Constitution** provides that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches may not be violated," a provision that provides at least as much protection as does the Fourth Amendment. **See People v. Brisendine, 13 Cal. 3d 528, 548-52 (1975),** abrogated on other grounds as discussed in **In re Lance W., 37 Cal. 3d 873, 879 (1985).**

27. A seizure "occurs when there is some meaningful interference with an individual's possessory interests in that property." **United States v. Jacobsen, 466 U.S. 109, 113 (1984).** Impounding a vehicle constitutes a seizure within the meaning of the Fourth Amendment. **Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005).**

28. Warrantless seizures are "per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions." **Minnesota v. Dickerson, 508 U.S. 366,372 (1993).**

29.    No exception to the Fourth Amendment's warrant requirement permits warrantless vehicle tows for the purpose of satisfying a municipal debt. The only warrant exception relevant to vehicle impoundment is for "community caretaking." **Miranda, 429 F.3d at 862.** The community caretaking exception permits warrantless towing "only to impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic**." Brewster v. Beck, 859 F.3d 1194, 1196 (9th Cir. 2017); see also South Dakota v. Opperman, 428 U.S. 364,369 (1976).**

30.    A tow conducted under the community caretaking doctrine must be reasonably related to furthering one of these caretaking purposes to be valid. **Miranda, 429 F.3d at 863** (noting that the U.S. Supreme Court "has limited the discretion of the impounding officer and has taken a more finely tuned approach to determining reasonableness under the Fourth Amendment").

31.    Legal violations such as parking citations are not relevant to justify the constitutionality of a tow under the community caretaking doctrine. **Miranda, 429 F.3d at 864.**

32.    An officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers. **Miranda, 429 F.3d at 866; accord United States v. Duguay, 93 F.3d 346, 353 (7th Cir. 1996)** ("The policy of impounding the car without regard to whether the defendant can

provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets.").

33. "The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale." **Miranda, 429 F.3d at 866.**

34. **California Vehicle Code 22651(i)** provides that an officer "may remove" a vehicle if "it is known that the vehicle has been issued five or more notices of parking violations...." However, a local statute authorizing impoundment "does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment, as applied to the states by the Fourteenth Amendment." **Miranda, 429 F.3d at 864; see also United States v. Cervantes, 703 F.3d 1135, 1142 (9th Cir. 2012); Lavan v. City of Los Angeles, 693 F.3d 1022, 1029 (9th Cir. 2012)** ("Violation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property. Were it otherwise, the government could seize and destroy any illegally parked car or unlawfully unattended dog without implicating the Fourth Amendment.").

**35. B. Procedural Due Process Under the Fourteenth Amendment and Article 1, Section 7 of the California Constitution**

36. A state cannot "deprive any person of life, liberty, or property, without due process of law." **U.S. Const. amend. XIV.** "A person may not be deprived of life, liberty, or property without due process of law." **Cal. Const. art. I, § 7.** The U.S. Supreme Court has determined that the process due depends on "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." **Mathews v. Eldridge, 424 U.S. 319,335 (1976).**

37. Generally, these **Mathews v. Eldridge** factors are interpreted in the vehicle tow context to require notice before the tow and the opportunity for a meaningful hearing within two days of an owner's request after the tow. See **Clement v. City of Glendale, 518 F.3d 1090, 1093 (9th Cir. 2008)** (pre-tow notices generally required); **Goichman v. Rheuban Motors, Inc., 682**

**F.2d 1320, 1325 (9th Cir. 1982)** (post-tow hearing required within forty-eight hours of a request).

38.     Under the California Constitution, there is a fourth element of the analysis: "the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official." **People v. Ramirez, 25 Cal. 3d 260,269 (1979).** Notice Under the Fourteenth Amendment, "the government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." **Clement, 518 F.3d at 1093** (requiring the government to present "strong justification" for not providing notice to a vehicle owner prior to a non-emergency tow because "removal of an automobile is a big deal" that disrupts an individual's life, imposes significant retrieval costs, and can create anxiety at the unexplained loss of a vehicle).

39.     Pre-deprivation notice has been required in the context of tows unless there is "an emergency, or if notice would defeat the entire point of the seizure, or when the interest at stake is small relative to the burden that giving notice would impose." **Clement, 518 F.3d at 1093-94.** The use of one's automobile is a significant interest compared to the small burden of notice. Id at **1094; Scofield, 862 F.2d at 762** ("The uninterrupted use of one's vehicle [on public roads] is a significant and substantial private interest.").

**40. Post-Tow Hearing**

41.     "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" **Mathews, 424 U.S. at 333** (quoting **Armstrong v. Manzo, 380 U.S. 545,552 (1965)).** An agency violates a vehicle owner's post-tow due process rights if it adopts a policy of not offering hearings or not conducting those hearings in a meaningful time and manner. **Scofield, 862 F.2d at 765. In** addition, an agency violates a vehicle owner's post-tow due process right to a meaningful hearing, if there is no opportunity to examine the evidence on which the hearing officer relies or to confront the towing officer. **See Mathews, 424 U.S. at 335.**

42.      The Supreme Court has taken for granted that a City must bring the officer who ordered the tow to the administrative tow hearing. **City of Los Angeles v. David, 538 U.S. 715, 718 (2003)** (noting that "the city has to contact the towing officer and arrange for his appearance") in detailing the administrative steps required for tow hearings). The 6th Amendment states, *"In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him."* The 14th Amendment has made the 6th Amendment's right to confrontation applicable to state court as well as federal court. The confrontation clause guarantees criminal defendants the opportunity to face the prosecution's witnesses in the case against them and dispute the witnesses' testimony. This guarantee applies to both statements made in court and statements made outside of court that are offered as evidence during trial. For a hearing to be meaningful, an agency should give notice of the criteria that will determine the administrative decision. **Anderson v. Superior Court, 213 Cal. App. 3d 1321, 1330 (1989).** Further, an agency must permit presentation of all relevant claims as required in order to exhaust the administrative remedy. See **Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal. 4th 917,933 (2004)** (exhaustion requires agency decision of "entire controversy**"); Bleeckv. State Bd. of Optometry 18 Cal. App. 3d 415,432 (1971)** (exhaustion requires "a full presentation to the administrative agency upon all issues of the case and at all prescribed stages of the administrative proceedings").

**43. C.  Due Process and Equal Protection Under the Fourteenth Amendment**

44. Using the principles of both Due Process and Equal Protection, the Supreme Court has held it is "fundamentally unfair" to punish indigent individuals for their inability to pay fines and fees. See **Bearden v. Georgia, 461 U.S. 660, 668--69 (1983)** (holding that it is unconstitutional to revoke probation for failure to pay a fine); **Griffin v. Illinois, 351 U.S. 12, 18 (1956)** (holding that it is fundamentally unfair to deny access to an appeal solely because of inability to pay court costs).

45.      The Bearden analysis requires that an ability-to-pay determination be part of the pre-punishment process and requires the consideration of alternatives to punishment**. Bearden, 461 U.S. at 674** (finding punishment unconstitutional because it was imposed "simply because [the

person] could not pay the fine, without considering the reasons for the inability to pay or the propriety of reducing the fine or extending the time for payments or making alternative orders....").

### 46. D. Trespass to Chattels/Conversion

Trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." **Thrifty-Tel, Inc. v. Bezenek, 46 Cal. App. 4th 1559, 1565 (1996).** Alleging that a vehicle has been towed and held for a prolonged time in storage with exorbitant tow and storage fees is sufficient to state a claim for trespass to chattels. **Garcia v. City of King, 2017 WL 5194519, at \*9 (N.D. Cal. Nov. 9, 2017).** Conversion is the wrongful exercise of dominion over the property of another.

47.     The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." **Lee v. Hanley, 61 Cal. 4th 1225, 1240 (2015).** The wrongful act in question need not be in bad faith to be the basis of a conversion claim; intent is not relevant. **We/co Elecs., Inc. v. Mora, 223 Cal. App. 4th 202, 208 (2014)** (finding that in deciding a conversion claim, "questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial").

### 48. E. Government Code section 815.6

49. Agent for SFMTA John Doe Meter-Maid #426 **(hereinafter #426)** and codefendant Agent for Auto Return John Doe Tow Truck Driver (hereinafter TTD) had an absolute duty to obey the enactments found in **California Vehicle Code 40220, 40221, and 40222,** according to **Government Code section 815.6. Government Code section 815.6** provides for liability when a public entity fails to discharge "a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury." To state a cause of action under Section 815.6, a plaintiff must assert an enactment that (1) imposes a mandatory rather than a discretionary duty, and (2) is intended to protect against the kind of injury suffered. "Enactments" defined by **Government Code section 810.6** include statutes, ordinances, and

regulations adopted "by an agency of the state pursuant to the Administrative Procedure Act." It is the contention of the plaintiff that **Government Code section 815.6** created a mandatory duty to obey **California Vehicle Code 40220, 40221, and 40222,** which were created to prevent the specific types of harms caused by the failure of the Defendant's to obey those statutes.

**50. F. Enactment of SFMTA Contract No. 2014-48 as San Francisco's' Administrative Code Chapter 21, Section 21.35 did give that contract the statutory force of government agency regulations.**

51.     **Government Code section 815.6** provides for liability when a public entity fails to discharge "a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury." To state a cause of action under **Section 815.6,** a plaintiff must assert an enactment that (1) imposes a mandatory rather than a discretionary duty, and (2) is intended to protect against the kind of injury suffered. "Enactments" defined by **Government Code section 810.6** include statutes, ordinances, and regulations adopted "by an agency of the state pursuant to the Administrative Procedure Act." Accordingly, the City of San Francisco and the SFMTA did adopt, and Auto Return agreed to observe and operate in accordance with, those certain regulations and policies created and contained in that certain contract titled, "Authorizing the Director of Transportation to execute **SFMTA Contract No. 2014-48,** with TEGSCO, LLC., dba San Francisco Auto Return, for the Towing, Storage and Disposal of Abandoned and Illegally-Parked Vehicles (Towing Agreement) in an amount not-to-exceed $65.4 million." **(Hereinafter: C.N.2014-48).**

## IV.     FACTUAL ALLEGATIONS

52.     At all times in this complaint the Defendant's John-Doe Meter Maid and John Doe Tow Truck Driver were employed by the City of San Francisco via the SFMTA and DBA TEGSCO, LLC DBA Auto Return San Francisco respectively. Furthermore, the John Doe defendants were both "on-duty," conducting their usual employment duties, doing so at the bequest of their respective employers, and for the benefit of those employers.

53.    The Plaintiff is now suing the Defendant's for at least four violations of the California State Constitution and other statutory violations. AutoReturn at the order of the SFMTA carried out the tow of Mr. Drotts Car on the following dates of **4/28/2017, 4/29/2017, 6/1/2017, 7/6/2017, and 8/11/2017.** . AutoRetun then held the Plaintiff's vehicle as a bailment, against the wishes and permission of the Plaintiff Drotts in the following amounts **$578.00 on 4/28/2017, $1,700 on 4/29/2017, $2300 on 6/1/2017, $1989.00 on 7/6/2017,** and **$5,989.00 on 8/11/2017. The price on 8/11/2017** is reflective of the cost and expense associated with the final and permanent taking of the Plaintiff's 2003 Ford Expedition Eddie Bauer Limited with Triton V8. This is since the Defendants did claim the Plaintiff's vehicle to be abandoned, and wrongfully took ownership of title through the DMV without the permission of Mr. Drotts. The Defendants undertook those actions due to Plaintiff Drotts inability to pay thousands of dollars for the return of his vehicle, for the fifth month in a row. As such, the full value of the vehicle of $5,000.00, along with the $5,000.00 in tools, electronics, cash, and closes also lost to the Plaintiff through the four aforementioned government takings. At the same time, Mr. Drotts must have access to a vehicle as a large part of his income. Mr. Drotts was therefore forced to purchase a comparable vehicle for $5,000.00., which he paid for a **2003** Lincoln Aviator as a replacement as vehicle of comparable size and quality.

54.    On all four occasions at issue, the Defendant's did take the Plaintiff's vehicle without his permission based on the fact the Plaintiff had more than five unpaid parking tickets. On all four occasions the Plaintiff's vehicle was lawfully parked, and fully operational. On two of the four occasions the Defendant's did forcibly take the Plaintiff's vehicle from his direct possession, resulting in a simultaneously filed second case by the Plaintiff Drotts against the same Defendants in the current case for damages as a result of battery, assault, false imprisonment, intentional infliction of emotional distress, as well as negligent harms to the Plaintiff Drotts reputation and standing in his community.

55.    The Plaintiff has sought and apparently received "post-tow hearings," according to the SFMTA. The only evidence of this supposed fact are the e-mails sent to the Plaintiff Drotts, **(Exhibit 1).** In that email, the **SFMTA** does tell the plaintiff he will be given a hearing, at which

he is not allowed to attend, which will be conducted by an employee of the **SFMTA,** and the SFMTA will inform the plaintiff as to the outcome of that **"hearing."** As stated by the **SFMTA** in its email, **"***Hi Joel, your protest will be assign to a hearing today July 24, 2017, who will review and decide on tow and citation's. You will be notified by U.S. mail within 3-4 weeks. Thank you, Carol.***"** Whether those hearing actually occurred, or the outcome of that hearing, the Plaintiff does not know. Nor has the Plaintiff been given any indication by the Defendants of the outcome either way. However, the Plaintiff Drotts believes he must have lost those hearings as he was made to pay the large bailments, in order to ensure his truck was returned to him.

56.        The Plaintiff is now seeking reimbursements in the amount of **$578.00** on **4/28/2017, $1,700 on 4/29/2017, $2300 on 6/1/2017, $1989.00 on 7/6/2017, and $5,989.00** on **8/11/2017,** which is the fines plus the price of the vehicle converted permanently to AutoReturns own use and apparently ownership.  An additional **$5,000.00+** for the value of the high-end electronics (TV Headrests, TV Radio, tow equipment), mini-generator, (power-tools three rotary saws, cordless drills, diamond cut drill bits), along with the entirety of the Plaintiff's tools. Having a total value of **$5,000.00+.** The Plaintiff also is seeking replacement of **$600.00** cash stolen. Additionally, the Plaintiff seeks an additional **$5000.00** he was made to pay, to replace the vehicle with a comparable vehicle. Finally, the Plaintiff seeks **$10,000.00** in lost wages, caused by those periods the unconstitutional tows caused a lack of his vehicle, which in turn prevented the Plaintiff from working over a four-month period.

### FIRST CAUSE OF ACTION
**57. Administrative Mandate (CCP § 1094.5): Denial of Fair Hearing and Prejudicial Abuse of Discretion. § 1094.5 applies when hearing is "required" which is not the same as when hearing is held. Therefore, administrative mandate appropriate when agency should have held a hearing but did not. Pomona College v. Superior Court 45 Cal.App.4th 1716, 1729 (1996).**

58.      Mr. Drotts re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 57, inclusive.

59. Mr. Drotts seeks a writ of administrative mandate under **CCP § 1094.5** because SFMTA denied Mr. Drotts a fair hearing and prejudicially abused its discretion, and did so by not making

available the evidence relied on at the tow hearing, denying a post-tow hearing, and substituting

that constitutionally required hearing with what can best be described as a highly prejudicial

post-tow review of the same SFMTA produced tickets and tow notes. That review being absent

any of the most basic procedural due process requirements or protections guaranteed Mr. Drotts

under the State Constitution, as evidenced by **(Exhibit One)** proves the failure of the SFMTA to

grant Mr. Drotts a constitutionally required fair hearing.

60.    Furthermore, by not considering Mr. Drotts constitutional claims, his inability to pay, or the

facts beyond the delinquent tickets when determining the validity of the tow of his vehicle,

SFMTA denied Mr. Drotts a fair hearing.  SFMTA's decision, which summarily "find[s] the tow

and storage valid," does not make findings that connect the evidence presented to the ultimate

decision. See Topanga Assn. for a **Scenic Cmty. v. Cty. of Los Angeles, 11 Cal. 3d 506, 515

(1974)** ("[I]mplicit in **section 1094.5** is a requirement that the agency which renders the

challenged decision must set forth findings to bridge the analytic gap between the raw evidence

and ultimate decision or order.").

61.    Respondents' hearing decision finding the tow and storage valid is arbitrary and

capricious and lacking substantial evidentiary support. The decision therefore constitutes a

prejudicial abuse of discretion by SFMTA. **Government Code § 54951** expressly authorizes

review of Respondents' administrative hearing decisions by means of writ of mandamus pursuant

to **CCP § 1094.5.** Mr. Drotts is beneficially interested in the outcome of the proceeding, has

exhausted all administrative remedies, and lacks a plain, speedy, and adequate remedy at law.

**SECOND CAUSE OF ACTION**
**62. Ordinary Mandamus (CCP § 1085), Unconstitutional] Seizure Fourth Amendment to
the United States Constitution Article 1, Section 13 of the California Constitution**

63.    Paragraphs 1 through 63 are incorporated herein by reference. Mr. Drotts seeks a writ of

ordinary mandate under **CCP § 1085.** Respondents have a ministerial duty to conduct vehicle

tows, which constitute seizure of property, in accordance with the **Fourth Amendment to the

United States Constitution and Article I, Section 13 of the California Constitution.**

64.     The Fourth Amendment requires that seizures of property, including vehicle tows, be reasonable. Without a warrant, and in the absence of an applicable exception to the warrant requirement, towing a vehicle is unconstitutional. SFTMA's tow of Mr. Drotts' car was repeatedly unreasonable because Mr. Drotts car was operational and not in a condition that would justify a tow for community caretaking purposes.

65.     In conducting an unconstitutional seizure via an unreasonable tow, Respondents have violated their ministerial duty to act in accordance with the law. Mr. Drotts is beneficially interested in the outcome of the proceeding, has exhausted all administrative remedies, and lacks a plain, speedy, and adequate remedy at law.

### THIRD CAUSE OF ACTION
**66. Ordinary Mandamus (CCP § 1085): Due Process Fourteenth Amendment to the United States Constitution Article 1, Section 13 of the California Constitution**

67.     Paragraphs 1 through 67 are incorporated herein by reference. Respondents have a ministerial duty to conduct vehicle tows in accordance with the **Fourteenth Amendment to the United States Constitution and Article 1, Section 13 of the California Constitution.**

68.     The Due Process clauses require the government to provide notice and a meaningful opportunity to be heard prior to depriving individuals of their property. By its policy of depriving car owners of their vehicles without due process, SFMTA violates its ministerial duty to ensure due process.

69.     By not making available the evidence relied on at the tow hearing, not presenting the officer who ordered the tow for examination, and not considering Mr. Drotts' constitutional claims, ability to pay, or evidence other than delinquent parking tickets when determining the validity of the tow, SFMTA denies vehicle owners a meaningful opportunity to be heard, thereby violating its ministerial duty to ensure due process.

70.     Mr. Drotts is beneficially interested in the outcome of the proceeding, has exhausted all administrative remedies, and lacks a plain, speedy, and adequate remedy at law.

## FOURTH CAUSE OF ACTION
**71. Ordinary Mandamus (CCP § 1085): Equal Protection Fourteenth Amendment to the United States Constitution Article 1, Section 13 of the California Constitution**

72.     Paragraphs 1 through 72 are incorporated herein by reference. Mr. Drotts seeks a writ of ordinary mandate under **CCP § 1085.** Respondents have a ministerial duty to conduct vehicle tows in accordance with the **Fourteenth Amendment to the United States Constitution and Article 1, Section 13 of the California Constitution.**

73.     Respondents' scheme of towing vehicles for failure to pay parking tickets without taking into account ability to pay impermissibly classifies and punishes similarly situated persons differently on the basis of wealth, in violation of the federal and state equal protection clauses. People who can afford to pay parking tickets can simply pay the tickets and avoid the towing of their vehicle; for those who cannot afford the tickets, the resulting tow constitutes nothing less than punishment for being poor.

74.     Towing a vehicle of a low income person or a person who is unable to pay the high cost of parking tickets serves no rational, much less a compelling, governmental interest.

75.     The Equal Protection and Due Process clauses prohibit governments from punishing low income individuals for their inability to pay fines and fees. The Bearden doctrine requires that an ability-to-pay determination be part of the pre-punishment process and requires the consideration of alternatives to punishment.

76.     By towing Mr. Drotts vehicle because he failed to pay parking citations, without an ability-to-pay determination or alternatives to paying fines for indigent people like Mr. Drotts, SFMTA violates its ministerial duty to ensure equal protection and due process. Mr. Drotts is

1   beneficially interested in the outcome of the proceeding, has exhausted all administrative

2   remedies, and lacks a plain, speedy, and adequate remedy at law.

3

4   **FIFTH CAUSE OF ACTION**
    **77. Right to Be Secure from Unreasonable Seizures 42 U.S.C. § 1983 - Fourth Amendment**

5   **Article 1, Sec. 13, California Constitution**

6   78.       Paragraphs 1 through 78 are incorporated herein by reference. Defendants/Respondents

7   have violated Mr. Drotts' right to be secure from unreasonable seizure of his property without a

    warrant.

8

9   79.       Defendant/Respondent SFMTA has a policy and practice of ordering cars, including Mr.

10  Drotts', to be towed without a warrant, without notice, and without any public safety or urgent

11  traffic convenience purpose. Respondents' seizure of his car deprived Mr. Drotts of his right to

12  be free of unreasonable seizure of his property. AutoReturn and the SFMTA continues to enjoy

13  the outrageously large amounts of money Mr. Drotts was forced to pay, in order to have his

14  vehicle returned, and finally the **$5,000.00+** cost of the loss of ownership of the 2003 Ford

15  Expedition Eddie Bower Limited Edition vehicle to AutoReturn. These acts are depriving Mr.

16  Drotts of his right to be free of unreasonable seizure of his property. Mr. Drotts is informed and

17  believes that the acts of the Defendants/Respondents were intentional in seizing and destroying

18  Plaintiffs' property and/or deliberately indifferent to the likely outcome that Plaintiffs' property

    would be seized, destroyed, or converted to the sole use by AutoReturn.

19

20  80.       As a direct and proximate consequence of the acts of the Defendants, and their

21  unconstitutional policies and practices, Plaintiff continues to suffer payments of interest on the

22  multiple loans the Plaintiff had to take-out in order to end the seizure and multiple

23  impoundments of his car, which was his primary source of income, transportation, and only

24  asset. He requests injunctive relief to stop the current policies that would allow for any further

25  impoundments of any replacement vehicles the Plaintiff may or may not have under his control,

26  for his use currently or in the future by Defendants and require Defendants to adopt

    constitutionally-sound policies.

27

28

**SIXTH CAUSE OF ACTION**
**81.    Right to Due Process of Law**
**82. 42 U.S.C. § 1983 - Fourteenth Amendment Art. 1, § 7, California Constitution**

83.    The allegations of paragraphs 1 through 83 are incorporated by reference as if set forth in their entirety herein.

84. Defendants/Respondents owe Mr. Drotts a duty under the Due Process Clause of the U.S. Constitution and California Constitution to not deprive him of his property without due process of law.

85. Defendants/Respondents' policy and practice of towing cars, including Mr. Drotts car, without notice and without a meaningful opportunity to be heard violated and continues to violate Plaintiffs' right to due process of law.

86. Defendants/Respondents' policy and practice of failing to provide a meaningful opportunity to be heard at a pre- or post-tow hearing, not making available the evidence relied on at the tow hearing, not presenting the officer who ordered the tow for examination, and not considering constitutional claims, ability to pay, or evidence other than delinquent parking tickets when determining the validity of the tow, denies vehicle owners including Mr. Drotts a meaningful opportunity to be heard, and violates their duty to ensure due process.

87. Mr. Drotts is informed and believes that the acts of the Defendants were intentional in seizing Plaintiffs' property without due process of law and/or were deliberately indifferent to the likely outcome that Mr. Drotts property would be seized and held without due process of law.

88. As a direct and proximate consequence of the acts of the Defendants, and their unconstitutional policies and practices, Plaintiff suffered from the multiple impoundment costs of his car, its eventual complete taking and loss, as well as obvious foreseeable lost income usually made with the vehicle without due process of law. The Plaintiff rightfully prays the Court order the return of all paid fines and fees, which the Plaintiff was forced to pay for the return of his vehicle, after it's unlawful and unconstitutional taking by the codefendants. The Plaintiff also

suffered loss of wages, the cost of the **$578.00 on 4/28/2017, $1,700 on 4/29/2017, $2300 on 6/1/2017, $1989.00 on 7/6/2017, and $5,989.00 on 8/11/2017**, except of the final date which they then took permanent possession of the vehicle as Mr. Drotts could not afford to pay the final demanded amount of money losing him the full value of his **$5,000.00+** vehicle and all its contents. That in addition to another **$10,000+** in lost wages, and the **$5,000.00** paid for a replacement comparable vehicle.

89. In **People v. Ramirez, 25 Cal.3d 260, 268-69 (1979),** the court concluded that, under the California Constitution, "due process safeguards required for protection of an individual's statutory interest must be analyzed applying the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty." (Emphasis added.) Id. Due process guaranteed under **Article I § 7 of the California Constitution** thus, "presumes that when an individual is subject to depravity governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity." (Emphasis added) Id. The principle that procedural due process protection is applicable to all adjudicatory action was affirmed in **Saleeby v. State Bar of California, 39 Cal.3d 547, 563-64 (1985).** Meaning that the SFMTA administrative procedures must satisfy due process requirements, especially considering a property right such as the loss of a vehicle is at issue.

90.    Even under Californian law, "identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail**." (See Civil Service Assn. v. City and County of San Francisco (1978) 22 Cal. 3d 552, 561 [150 Cal. Rptr. 129, 586 P.2d 162].).** Here, with not even so much as a nod to its duty to provide the plaintiff with

procedural due process, the defendants sent the plaintiff the email attached as **Exhibit One.**
**Exhibit One** is the email response sent to the plaintiff from the SFMTA, because of his request
for a post action hearing to protest. In that e-mail, the SFMTA makes clear its complete failing of
its duty to provide due process requirement, as a government agency taking property from the
people.

91.    **Krainski v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ., 616 F.3**
**d 963, 970 (9th Cir. 2010)** ("A procedural due process claim has two elements: deprivation of a
constitutionally protected liberty or property interest and denial of adequate procedural
protection."). The SFMTA has deprived the plaintiff of not only his property, time, money, and
personal liberty by taking the plaintiffs' vehicle. However, not before kidnapping the plaintiff
and subjecting him to false imprisonment, clearly satisfying the first prong of the deprivation of a
protected constitutional liberty. The second prong, or denial of even post deprivation adequate
procedural protections, is evidenced by the e-mail attached as evidence. In that email, the
SFMTA does tell the plaintiff he will be given a hearing, at which he is not allowed to attend,
which will be conducted by an employee of the SFMTA, and the SFMTA will inform the
plaintiff as to the outcome of that "hearing." As stated by the SFMTA in its email, *"Hi Joel, your*
*protest will be assign to a hearing today **July 24, 2017,** who will review and decide on tow and*
*citation's. You will be notified by U.S. mail within 3-4 weeks. Thank you, Carol."*

92.    Procedural due process requires at least an opportunity to be heard, and an opportunity to
face one's accuser. Should the hearing supposedly promised by the SFMTA ever even really
occur, due process is not served, nor is it afforded by having an employee that works for the
agency the plaintiff is refuting merely look over the same documents that were utilized in
arriving at the unlawful action already undertaken by the defendant agency. Even if the plaintiff
were to rely on the supposed fairness found in an administrative ruling by the very same adverse
agency, the plaintiff has a right to be afforded more procedural safeguards then the ones
promised him by the e-mail sent him by the SFMTA.

93.   This utter lack of due process prior to or even after the adverse action, is a violation of the plaintiff's fourteenth amendment rights, which state "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." While it is not always clear exactly what due process is, what it isn't can be deduced, and the review of documents, without the plaintiff in attendance, by the employee of an adverse agency it most certainly is not! This is because the plaintiff has at least a right to be heard! Moreover, the SFMTA administrative review simply does not have proper jurisdiction to rule on whether the plaintiff suffered the torts of false imprisonment or kidnapping, nor may the defendants deny the plaintiff's right to put to the jury the amount of compensation he is deserving for the humiliation, intentional emotional distress, and damage to plaintiffs' reputation caused by the defendants SFMTA action causing torts for which the plaintiff may be compensated through "administrative review."

94.   One cannot in good faith or with a straight face even call an action a "hearing," when the opportunity for oral argument is lacking. It matters not if it is pointless, given the extreme prejudice of the "hearing officer" who is hired and paid by the same agency the plaintiff is averse to. One cannot very well call anything a "hearing" without someone being heard, and due process requires the rights or ability to attend ones' own hearing, examine the evidence against him, and cross examine witnesses.  What the SFMTA proposes as due process is little more than what may be honestly described as a "biased-review," but not a hearing by even the most liberal definition possible. All which points to a very serious deprivation of the plaintiff's fourteenth Amendment right to due process.

95. Having established there to be a deprivation or denial of the rights contained in the Fourteenth Amendment, the court must then seek out the substantial need that the government claims there to be to justify this gross denial of due process. This is the point at which the governments arguments and case fail, as administrative efficiency is not a proper reason for the

37

SFMTA to deprive the plaintiff of so fundamental protective right as due process. This is especially true when the state legislature has already devised and codified into statute a less restrictive means of collecting late or overdue parking fees, which are less intrusive and harmful of the plaintiff's property rights than seizure of his vehicle. That system is one where late tickets are reported to the DMV, and the vehicle owner is denied the ability to reregister their vehicle until those fines are paid off.

96.   This system, already enacted by the state legislature, is far more respectful and careful of the property rights of Californians. Moreover, because there would be no property taken, the fourteenth amendment violations which the SFMTA has chosen to blatantly ignore, and in so doing harm greatly the plaintiff, the policy already put into statute is clearly a less restrictive and less harmful solution concerning both the deprivation of both the plaintiff's fourteenth amendment rights to due process and against government takings. Moreover, the law which states a judicial lean must be acquired prior to any seizure of the vehicle of a citizen, is also contemplated that any government branch seeking to do this is to share the wealth with the cash starved judicial branch as that same law states "the processing agency shall pay the established first paper civil filing fee at the time an entry of civil judgment is requested." Clearly, the state legislature had its own economic reasons for passing the state-wide legislation as well. Again, the SFMTA was not negligent in its belief it may tow the vehicle in the entirety, only it was negligent in believing it may initiate the towing of an occupied vehicle, without the order of a police officer who has a valid reason to order the confiscation, and/or a proper order from the court in the form of a lien. No matter which way the SFMTA tries to spin it, they were negligent in attempting to wield governmental authority that had not properly vested in that agency.

## SEVENTH CAUSE OF ACTION
**97. AGAINST DEFENDANT AUTORETURN**
**98. Conversion and Trespass to Chattels**

99. The allegations of paragraphs 1 through 99 are incorporated by reference as if set forth in their entirety herein. Mr. Drotts was at all relevant times the owner of the vehicle seized, held, and sold by Defendants/Respondents. Mr. Drotts remains entitled to the possession of his car, the

repayment of all funds Mr. Drotts was forced to pay to the Defendant AutoReturn, for the return of his 2003 Ford Expedition Eddy Bauer on four separate occasions. Furthermore, Drotts is entitled to full payment for the value of his vehicle of $5,000.00, as well as all objects, tools, electronics, clothes, and money taken and converted to the use of AutoReturn which Mr. Drotts had in that vehicle in the amount of $5,000.00. Furthermore, Mr. Drotts is entitled to the incidental lost wages of $10,000, which Mr. Drotts lost due to having no vehicle. Finally, Drotts is entitled to $5,000.00 he was forced to pay for a Lincoln 2003 Aviator, as a replacement of comparable size, value, and quality.

100. Defendant/Respondent AutoReturn's conduct continues to interfere with and deny Mr. Drotts possession of his property. Mr. Drotts has made a demand for the return of his car, and Defendant/Respondent AutoReturn has refused to return this property to Mr. Drotts.

101. As a direct and proximate consequence of the acts of Defendant/Respondent AutoReturn, Mr. Drotts has suffered and continues to suffer from the seizure and impoundment of his car, and thus is entitled to damages.

## EIGHTH CAUSE OF ACTION
**Negligence per ce**
**AutoReturn**

**102.   Auto Return was negligent per ce when it failed to perform a "dropped tow," which it had a duty to perform due to a mandatory duty imposed upon it by an enactment of SFMTA Contract No. 2014-48 as San Francisco's' Administrative Code Chapter 21, Section 21.35 did give that contract the statutory force of government agency regulations.**

**103.       Government Code section 815.6** provides for liability when a public entity fails to discharge *"a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury."* To state a cause of action under **Section 815.6,** a plaintiff must assert an enactment that (1) imposes a mandatory rather than a discretionary duty, and (2) is intended to protect against the kind of injury suffered. "Enactments" defined **by Government Code section 810.6** include statutes, ordinances, and regulations adopted "by an agency of the state pursuant to the Administrative Procedure Act." Accordingly, the City of San Francisco and

1    the SFMTA did adopt, and Auto Return agreed to observe and operate in accordance with, those

2    certain regulations and policies created and contained in that certain contract titled,

3    **"Authorizing the Director of Transportation to execute SFMTA Contract No. 2014-48, with**

4    **TEGSCO, LLC., dba San Francisco Auto Return, for the Towing, Storage and Disposal of**

5    **Abandoned and Illegally-Parked Vehicles (Towing Agreement) in an amount not-to-exceed**

6    **$65.4 million." (Hereinafter: C.N.2014-48).**

7

8    104.        The aforementioned contract is governed by **San Francisco's' Administrative Code**

9    **Chapter 21, Section 21.35, (hereinafter Section 21.35),** which is cited and included within the

10   four corners of that certain contract. The inclusion of **Section 21.35** in that **C.N.2014-48**

11   contract, does raise the duties and obligations contained in that contract to the legal level of

12   being "enactments" as defined by **Government Code section 810.6.** Among the various

13   mandatory duties outlined in contract **C.N.2014-48,** which were then given the status of being

14   "agency-imposed regulations," if not full statutory authority according to **Section 21.35,** is the

15   mandatory duty to preform dropped tows as described in that certain contract **C.N.2014-48** as:

16   *"Conditions for Dropped Tow Designation*
     *Tow Truck Operator will conduct a Dropped Tow if the vehicle owner or operator claims the*

17   *vehicle before one or more of the following has occurred:*
     *a. All required paperwork or electronic Records are complete*

18   *b. The Tow Truck Operator has completely attached the Tow Equipment to the vehicle*
     *c. The tow truck is in the lane of traffic and ready to drive to the appropriate storage facility."*

19   *Page A-23 of City Contract titled: Authorizing the Director of Transportation to execute*

20   *SFMTA Contract No. 2014-48, with TEGSCO, LLC., dba San Francisco Auto Return, for the*
     *Towing, Storage and Disposal of Abandoned and Illegally-Parked Vehicles (Towing Agreement)*

21   *in an amount not-to-exceed $65.4 million."*

22
     105.        In accordance with **Section 21.35,** Auto Return contractors did have an absolute

23   mandatory duty to perform a "dropped tow," as described by and as defined in that certain

24   contract titled **C.N.2014-48,** at the on-set of both confrontations and unlawful takings by tow of

25   the Plaintiff's vehicle, which are hereinto previously described and complained of by the

26   Plaintiff in this pleading. The **C.N.2014-48** contract does contain an enactment that (1) imposes a

27   mandatory rather than a discretionary duty, which is obvious by plain ordinary language found in

28

**C.N.2014-48** making a dropped tow mandatory as stated by: "*Tow Truck Operator will conduct a Dropped Tow.*" The use of the word *will,* denotes a mandatory and not discretionary duty which then do become the standard duty of care, for which Auto Return tow truck drivers do owe to the general public. However, on both occasions the Defendants breached that standard duty of care they owed the Plaintiff, when the Defendant's unlawfully took the Plaintiff's vehicle away from his immediate personal physical possession and did so even as the Plaintiff orally claimed physical possession. The taking of the Plaintiff's vehicle, despite his announcing himself to be present and have physical possession in relation to the vehicle as an operator, did constitute breaches of the standard duty of care the Auto Return tow truck drivers owed to the Plaintiff.

106.　　The legislature clearly sought to avoid the problems, liabilities, and harms which did occur in the current case, by essentially forbidding Auto Return tow truck drivers from taking by tow vehicles immediately in the physical possession of vehicle operators. This is obvious, as all the legislature requires a vehicle operator to do to prevent or reverse a completed tow, and thereby causing a "dropped-tow," is merely to orally claim their physical possession of the vehicle before one or more of the following has occurred: **a.** All required paperwork or electronic Records are complete. **b.** The Tow Truck Operator has completely attached the Tow Equipment to the vehicle **c.** The tow truck is in the lane of traffic and ready to drive to the appropriate storage facility." Here, the Plaintiff clearly and orally stated his presence and physical possession prior to the first tow orally, and to the second tow constructively via his visible physical presence being asleep in the vehicle. As such, both tows are breaches of a mandatory duty imposed by an enactment created by Administrative Procedure Act, and therefore creating a liability **Government Code section 815.6.**

107.　　Therefore, the Defendant's did have a specific duty placed upon them by statute, and they did breach that duty injuring the Plaintiff. As a member of the protected class of individuals the legislation contemplated protecting, Auto Return is liable per se for all damages caused to the Plaintiff, by the failure of Auto Return to perform a "dropped-tow," upon the Plaintiff identifying himself as the vehicle owner/operator of the vehicle prior to **(A)** All required paperwork or electronic Records are complete **(B)** The Tow Truck Operator has completely attached the Tow

Equipment to the vehicle **(C)**The tow truck is in the lane of traffic and ready to drive to the appropriate storage facility."  Therefore, but for Auto Returns failure to perform a dropped-tow the Plaintiff would not had suffered any of the psychological trauma, humiliation, caused by having his vehicle towed with him still in the vehicle in front of his community. Moreover, it was completely foreseeable that the Plaintiff would suffer the sort of harms he was made to suffer caused by the failure of Auto Return to perform a "dropped-tow" as was its duty per se, such as lost wages, loss of reputation in the community, as well as the towing, storage, and parking fees the Plaintiff was forced to pay for the return of his vehicle. The total monitory amount of which does equal **$235,000.**

### NINETH CAUSE OF ACTION

**108. The Defendants were negligent per se as their taking of the plaintiff's vehicle was a breach of the standard duty of care statutorily created by the California Vehicle Code 40220, 40221, and 40222.**

**Government Code section 815.6** provides for liability when a public entity fails to discharge *"a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury."* To state a cause of action under **Section 815.6,** a plaintiff must assert an enactment that (1) imposes a mandatory rather than a discretionary duty, and (2) is intended to protect against the kind of injury suffered. "Enactments" defined **by Government Code section 810.6** include statutes, ordinances, and regulations adopted "by an agency of the state pursuant to the Administrative Procedure Act." It is the contention of the plaintiff that **Agent for SFMTA John Doe Meter-Maid #426 (hereinafter #426)** and codefendant **Agent for Auto Return John Doe Tow Truck Driver (hereinafter TTD)** had an absolute duty to obey the enactments found in **California Vehicle Code 40220, 40221, and 40222, which were created to prevent the specific types of harms caused by the failure of the Defendant's to obey those statutes. California Vehicle Code 40220, 40221, and 40222 states:**

**109. California Vehicle Code *40220.*** *Except as otherwise provided in Sections 40221 and 40222, the processing agency **shall proceed under only one of the following options** in order to collect an unpaid parking penalty:*

*110. (a) File an itemization of unpaid parking penalties and service fees with the department for collection with the registration of the vehicle pursuant to Section 4760.*

*111. (b) If more than four hundred dollars ($400) in unpaid penalties and fees have been accrued by any person or registered owner, proof thereof may be **filed with the court** with the same effect as a civil judgment. Execution may be levied, and other measures may be taken for the collection of the **judgment** as are authorized for the collection of an unpaid **civil judgment** entered against a defendant in an action on a debtor. **The court** may assess costs against a **judgment** debtor to be paid upon satisfaction of the **judgment. The processing agency shall send a notice** by first-class mail to the person or registered owner **indicating that a judgment shall be entered** for the unpaid penalties, fees, and costs and that, after 21 calendar days from the date of the mailing of the notice, **the judgment shall** have the same effect as an entry of **judgment** against a **judgment** debtor. The person or registered owner **shall also be notified at that time that execution may be levied against his or her assets, liens may be placed against his or her property, his or her wages may be garnisheed, and other steps may be taken to satisfy the judgment**. If a **judgment** is rendered for the processing agency, that agency may contract with a collection agency to collect the amount of that **judgement** not withstanding any other provision of law, **the processing agency shall pay the established first paper civil filing fee at the time an entry of civil judgment is requested.***

*112. (c) If the registration of the vehicle has not been renewed for 60 days beyond the renewal date, and the citation has not been collected by the department pursuant to Section 4760, file proof of unpaid penalties and fees with the court with the same effect as a civil judgment as provided in subdivision (b).*

*113. (d) This section does not apply to a registered owner of a vehicle if the citation was issued prior to the registered owner taking possession of the vehicle and the department has notified the processing agency pursuant to Section 4764. (Amended by Stats. 2008, Ch. 741, Sec. 4. Effective January 1, 2009.*

114.   Government Liability for Failure to Perform Mandatory Duty. **Government Code section 815.6**. "'*Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.' (Gov. Code, § 815.6.) Thus, the government may be liable when (1) a mandatory duty is imposed by enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury.*" **(State Dept. of State Hospitals v. Superior Court (2015) 61 Cal.4th 339, 348 [188 Cal.Rptr.3d309, 349 P.3d 1013].**

**115. California Vehicle Code 40220,** clearly and specifically creates both the mandatory and non-discretionary nature of law, as well as stating exactly who must obey the statute, in the very first sentence of that statute by saying: *Except as otherwise provided in Sections 40221 and 40222, the processing agency **shall proceed under only one of the following options** in order to collect an unpaid parking penalty.* Therefore, when the defendants set about collecting the late parking fees the Plaintiff supposedly owed at the time, the Defendant's automatically gained a mandatory standard duty of care to collect those alleged late parking fees in the manner described in that statute, as clearly stated in the statute as: *the processing agency **shall proceed under only one of the following options.*** Those options are (A) to report the outstanding parking fees debt to the DMV, which then refuses to register the vehicle until all the fees are paid off. (B) or the Agency, the SFMTA, may go to court and get a judgement. Not until a judgement is properly ordered and possessed may the Agency, begin to execute actions as would any other debtor, and only then *liens may be placed against his or her property.*

*116.*          When the Defendant's took the Plaintiff's vehicle without first securing and possessing either a valid judgement or a lien, they breached the duty of care per se according to **California Vehicle Code 40220, 40221, and 40222 making mandatory the** securing and possessing either a valid judgement or a lien prior to any government towing.

117. But for **the breach of the statute which makes absolutely mandatory a judgement and filing with the court, prior to treating the Plaintiff's property as "***If a judgment is rendered for the processing agency, that agency may contract with a collection agency to collect the amount of that **judgement** not withstanding any other provision of law, **the processing agency shall pay the established first paper civil filing fee at the time an entry of civil judgment is requested.***"* The Plaintiff would not had suffered deprivations of his vehicle by government taking on the following dates or made to pay the amounts on those dates to have his truck returned: **$578.00 on 4/28/2017, $1,700 on 4/29/2017, $2300 on 6/1/2017, $1989.00 on 7/6/2017, and $5,989.00 on 8/11/2017** through loss of the **$5,000.00+** vehicle permanently.

118.   The plaintiff was in the class of individuals the statute is meant to protect, as an individual owing unpaid parking fees, and therefore loss the ownership of the vehicle and moneys are foreseeable damages which the statute tried to prevent, and which but for the per se breach of duty for failure to obey the statute the Plaintiff would not had suffered **$578.00 on 4/28/2017, $1,700 on 4/29/2017, $2300 on 6/1/2017, $1989.00 on 7/6/2017, and $5,989.00 on 8/11/2017** through loss of the **$5,000.00+** vehicle permanently. The defendants in breaching their duty to get a judgement, denied the plaintiff the benefit of judicial oversite of their actions contemplated by the statute and due process. Therefore, the Plaintiff did suffer **$578.00 on 4/28/2017, $1,700 on 4/29/2017, $2300 on 6/1/2017, $1989.00 on 7/6/2017, and $5,989.00 on 8/11/2017** through loss of the **$5,000.00+** vehicle permanently, plus an additional foreseeable **$10,000.00+** in lost wages, and **$5,000.00** in items, tools, clothes, electronics, and cash located in the vehicle when it was taken the fourth and final time permanently.

## 119. TENTH CAUSE OF ACTION
**Plaintiff seeks attorney's fees**

120.   Under California's Private Attorney General Statute, a successful litigant may be reimbursed, by an opposing litigant, for his attorney's fees if his case enforced an "important right affecting the public interest" and if, among other things, it resulted in a "significant benefit" to the "general public or a large class of persons." **Civ. Proc. Code §1021.5.1.** The purpose of the statute is to encourage these cases even if they might otherwise be cost prohibitive. Plaintiff seeks an award of damages for the costs of his skill and time being utilized in defending through this lawsuit a matter of great public interest, which does have an effect on every citizen of San Francisco who owns a vehicle. Furthermore, as the Plaintiff seeks to properly realign local government agencies policies with the true letter and spirit of the State and Federal Constitution, due to the obvious current lack thereof found in the SFMTA's current policies, this matter is of great public concern and importance. As such, the Plaintiff is in fact acting as a Private Attorney General in this matter, as the true defender of the rights of all Californian's whom may drive in San Francisco. Therefore, the Plaintiff seeks to be compensated for his efforts in taking up the cause and defending the rights of the general public in this matter.

**116. Prayer**

Now wherefore the Plaintiff does seek damages in the amount of
**$578.00** for the taking on **4/28/2017, $1,700.00** for the taking on **4/29/2017, $2300.00** for the
taking on **6/1/2017, $1989.00** for the taking on **7/6/2017, $5,989.00** for the taking on **8/11/2017,**
plus the value and price of the **2003** Ford Expedition Eddie Bauer Limited, which the
defendant's converted to their own use permanently. **$5,000.00** in lost tools, equipment,
electronics, and other objects of value in the Ford at the time of the final taking.
**$10,000.00** in lost wages.  **$4000.00** Price of purchased comparable vehicle, 2003 Lincoln
Aviator. **$60,000 for** private attorney general fee's.

**Total actual damages= $91,556.00**