LAWYERS' COMMITTEE FOR CIVIL RIGHTS
ELISA DELLA-PIANA (CA 226462)
JUDE POND (CA 299229)
E-Mail: EDellaPiana@lccr.com
E-Mail: JPond@lccr.com
131 Steuart Street, Ste. 400
San Francisco, CA 94102
Telephone: (415) 543-9444
Facsimile: (415) 543-0296

BAY AREA LEGAL AID
REBEKAH EVENSON (CA 207825)
CLAIRE JOHNSON RABA (CA 271691)
E-Mail: REvenson@baylegal.org
E-Mail: CJohnson@baylegal.org
1800 Market Street, 3rd Floor
San Francisco, CA 94102
Telephone: (415) 982-1300
Facsimile: (415) 982-4243

MANATT, PHELPS & PHILLIPS, LLP
BARRY W. LEE (CA 088685)
CHRISTOPHER A. RHEINHEIMER (CA 253890)
E-Mail: BWLee@manatt.com
E-Mail: CRheinheimer@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

Attorneys for Plaintiffs
JAMES SMITH and SEAN KAYODE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES SMITH; SEAN KAYODE,<br><br>    Plaintiffs,<br><br>v.<br><br>EDWARD D. REISKIN in his official capacity as the Director of Transportation of the San Francisco Municipal Transit Agency; the SAN FRANCISCO MUNICIPAL TRANSIT AGENCY; TEGSCO LLC dba SAN FRANCISCO AUTORETURN,<br><br>    Defendants. | No. 3:18-cv-01239-JSC<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL**<br><br><br>Date removed: February 26, 2018 |

## INTRODUCTION

1.     This action challenges: Defendant San Francisco Municipal Transit Agency ("SFMTA")'s tow and impoundment, without notice, of Plaintiffs James Smith's and Sean Kayode's safely parked vehicles, in violation of the Fourth and Fourteenth Amendments; and Defendants' policy and practice of seizing vehicles in an attempt to collect fines and fees owed for unpaid parking tickets. Defendants tow vehicles without notice or warrant, without providing a meaningful opportunity to be heard on the reasonableness of the tow, and without providing any opportunity for low-income drivers to assert their inability to pay the municipal citations.

2.     As alleged with more particularity below, Defendant SFMTA, joined by remaining Defendants, has an official policy and practice of towing vehicles for outstanding parking citation fines where there is no exigency that requires that the vehicle be impounded immediately.

3.     These tows are conducted without notice or with inadequate notice and in a manner that prevents vehicle owners from contesting the deprivation before the tow.

4.     Post-deprivation tow hearings are inadequate and do not provide vehicle owners a full and fair opportunity to contest the validity of citations that form the basis for the tow or the reasonableness of the tow.

5.     Plaintiffs allege that the intentional seizure of their vehicles constitutes a violation by Defendants of their federal constitutional rights to be free from unreasonable seizure, to due process of law, and to equal protection of the law, and that these seizures violate state tort law as well. Plaintiffs seek an injunction prohibiting Defendants from impounding vehicles as collateral to collect unpaid parking citation revenue, and a declaratory judgment that the policies and practices of Defendants as alleged herein are unlawful.

6.     In addition, Plaintiffs seek actual and punitive damages resulting from Defendants' intentional taking of their property.

## JURISDICTION

7.     This Court has subject matter jurisdiction over this First Amended Complaint pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims arise under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3), because these claims seek to "redress

the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution." The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

## VENUE

8.      Venue for this First Amended Complaint is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because (i) the events or omissions giving rise to Plaintiffs' claims occurred in this District; and (ii) all of the parties reside or do business in San Francisco, California.

## INTRADISTRICT ASSIGNMENT

9.      Intra-district assignment to the San Francisco Division is appropriate pursuant to Civil Local Rule 3-2(c) and (d) because the acts giving rise to the claims occurred in San Francisco County.

## PARTIES

10.      Plaintiff James Smith is a 64-year-old lifelong San Francisco resident, who has lived in San Francisco at all times relevant to this action. Mr. Smith has filed an administrative claim against the City of San Francisco, pursuant to California Government Code section 910 *et seq*. The City denied the claim on February 28, 2018.

11.      Plaintiff Sean Kayode is a longtime San Francisco resident, including at all times relevant to this action, who relied on his car to work as a delivery driver. Mr. Kayode has filed an administrative claim against the City of San Francisco, pursuant to California Government Code section 910 *et seq*. The City denied the claim on April 17, 2018.

12.      Defendant SFMTA is the municipal agency in the City and County of San Francisco responsible for management of all ground transportation in the city, including parking.

13.      Defendant Edward D. Reiskin ("Reiskin") is the Director of Transportation of SFMTA, and Plaintiffs name him as a Defendant in his official capacity as Director of SFMTA.

14.      Defendant TEGSCO LLC is a California limited liability corporation doing business in the County of San Francisco under the registered fictitious business name of San Francisco AutoReturn ("AutoReturn"). AutoReturn is the agent of Defendant SFMTA and, under

contract with the SFMTA, is responsible for tow and storage of vehicles in San Francisco on behalf of Reiskin and SFMTA.

15. At all relevant times, Defendants Reiskin and AutoReturn have been, and are now, the agent or employee of Defendant SFMTA, and each was acting within the course and scope of that agency or employment.

16. Defendants' actions, as set forth herein, occurred within San Francisco, California and constitute "state action" as that term has been interpreted by relevant case law.

17. Plaintiffs are informed and believe that the acts of Defendants complained of herein were undertaken in execution of customs, policies, and practices of authorized policymakers of Defendant SFMTA and were joined in or implemented by the remaining Defendants, and each of them, acting as the agent, servant, employee, or in concert, or in conspiracy, with each of said other Defendants. Each of the Defendants caused, and is liable for, the unconstitutional and unlawful conduct and resulting injuries by, among other things, personally participating in said conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing or setting in motion policies, plans, and actions that led to the unlawful conduct; and by failing to take action to prevent the unlawful conduct.

18. The acts complained of herein were intentionally and jointly committed, and will continue to be committed jointly and systematically by Defendants unless restrained by this Court.

## FACTUAL BACKGROUND

19. SFMTA, acting through its agent AutoReturn, impounded Mr. Smith's and Mr. Kayode's cars. As a result, Plaintiffs have been harmed by SFMTA's policy to tow vehicles with five or more unpaid parking citations.

### Tow of Mr. Kayode's Car

20. Mr. Kayode is 52 years old and has lived in San Francisco since 2016.

21. In 2016, he saved money for several months to buy a used 2003 red Mercedes C-Class with the Tennessee license plate number 8G91H3.

22. Since buying his car, his primary source of income has been delivery driving or

passenger transport for companies including Lyft, Postmates, Caviar, and UberEats.

23.     Mr. Kayode currently resides at Next Door Homeless Shelter in San Francisco and had been saving money for a security deposit to get into permanent housing.

24.     At approximately 6:00 on the morning of March 5, 2018, Mr. Kayode went outside and saw his car, which was parked on Polk Street near the shelter.

25.     He went back into the shelter to shower, eat, and get ready for work. By the time Mr. Kayode went outside again at 8:00 a.m., his car was gone. He learned that SFMTA had ordered it towed for unpaid parking tickets.

26.     That day, he visited the SFMTA office at 11 South Van Ness Avenue in San Francisco to find out how to get his car back. An SFMTA employee told him that he owed $5,893 in parking citations and $595.50 in tow and storage fees.

27.     Mr. Kayode had not realized how many citations were on the car. He did not receive notice about the number of unpaid citations he had accrued, nor did he receive notice that SFMTA planned to tow his car.

28.     The tow inventory that Mr. Kayode later obtained alleged that the car was towed because Mr. Kayode was a "scofflaw," citing California Vehicle Code section 22651(i), which gives enforcement agencies the discretion to tow a vehicle with more than five delinquent parking tickets.

29.     Mr. Kayode's car was not disabled or impeding traffic, and it posed no public safety or traffic related exigency that required that Defendant SFMTA to order Mr. Kayode's car towed without providing pre-tow notice.

30.     Mr. Kayode is aware of no attempts Defendant SFMTA made to collect the parking citation debt beyond mailed notices, which Mr. Kayode received for some, but not all, of the citations.

31.     Even though he was working as a delivery driver, Mr. Kayode could not afford to pay nearly $6,500 to get his car back. The SFMTA employee did not tell Mr. Kayode that there were any fee adjustments for low-income or homeless people, or that he had a right to a tow hearing.

32. Mr. Kayode sought and received a post-tow hearing with an SFMTA officer. At that hearing, the hearing officer refused to consider Mr. Kayode's inability to pay the parking tickets. The hearing officer also refused to consider the arguments that Mr. Kayode made through counsel alleging that the tow violated Mr. Kayode's Fourth and Fourteenth Amendment rights. The hearing officer failed to make available in advance the evidence relied on at the tow hearing; failed to make available the officer who ordered the tow for examination at the tow hearing; and failed to consider any facts beyond the existence of five delinquent parking tickets when determining the validity of the tow and continued storage of Mr. Kayode's vehicle.

33. The hearing officer rendered a final decision denying Mr. Kayode's appeal. The decision notes that Mr. Kayode "dispute[s] the validity of this tow on the basis of a 4th Amendment argument of the U.S. Constitution," but states that "[f]or the purposes of this hearing, I only have to determine whether there were five or more delinquent citations on the record for this vehicle at the time of the tow. It is evident that there were, and on that basis I must find that our parking officer was not in error for calling for this tow."

34. As of the date of this complaint, to get his car back, Mr. Kayode would have to pay $5,893 to SFMTA for parking citations and $4,712.50 to AutoReturn for tow and storage fees. The AutoReturn fees will continue to increase by at least $71 each day.

35. Mr. Kayode cannot afford to pay over $10,600 to retrieve his car.

36. As a result of this tow, Mr. Kayode cannot work at his previous job as a delivery driver. He still receives daily notifications for many available delivery jobs, including lucrative lunchtime deliveries to big companies and offices in San Francisco. However, without a car, he cannot make those deliveries. He now has no source of income.

37. Mr. Kayode was able to get a short-term cot at Next Door Homeless Shelter, so he does not have to wait in line each day for a homeless shelter bed. However, Mr. Kayode cannot stay at Next Door when his 90-day placement expires, and is scheduled to leave the shelter on May 17, 2018.

38. As a result of Defendants' tow, when he leaves the Next Door Homeless Shelter, Mr. Kayode will not have his car to sleep in, or to protect him from rain, cold, robbery, or

violence. He is no longer earning money to use for more permanent housing, and, once his shelter stay ends, he does not have anywhere to go but the street.

**Tow of Mr. Smith's Car**

39.     Mr. Smith is a 64-year-old lifelong San Francisco resident.

40.     He is the registered owner of a black 2007 Honda Accord license plate 5YVV308.

41.     Mr. Smith's car was towed by Defendant AutoReturn, as ordered by Defendant SFMTA on December 28, 2017.

42.     Mr. Smith accrued several parking tickets during the fall of 2017 when his disability largely immobilized him and he could not leave his apartment to move his car.

43.     He asked his caretaker to move his car for street sweeping and to report any parking tickets to Mr. Smith. Only after his car was towed did Mr. Smith learn that the caretaker had failed to do this multiple times.

44.     Mr. Smith was forced to start sleeping his car in October 2017. He slept in his vehicle until it was towed on December 28, 2017, from 1125 Hyde Street in San Francisco, California.

45.     At the time of the tow, Mr. Smith's vehicle was safely parked, fully operational, insured, and had current registration.

46.     At the time of the tow, a valid disability parking placard was displayed in the front window of Mr. Smith's car.

47.     Mr. Smith did not receive meaningful notice that his car was going to be towed.

48.     After his car was towed, Mr. Smith believed it had been stolen, and only learned it had been towed after the police suggested calling Defendant AutoReturn.

49.     Mr. Smith called Defendant AutoReturn to find out how to reclaim his car, and was told he had to pay both $2,848 in citation fees and $2,061 in tow and storage fees before his vehicle would be released. Mr. Smith could not afford to pay that amount, which is nearly 4 times his monthly income of $1140 a month from Social Security Disability Insurance (SSDI).

50.     When Mr. Smith attempted to get his car back, Defendant AutoReturn's employee did not inform Mr. Smith that there was a discounted tow fee for those who can prove their

indigence, nor did the employee inform Mr. Smith that he had a right to a tow hearing to challenge the validity of the tow.

51.     Each day that Mr. Smith was unable to pay, the fees increased by at least $71 per day.

52.     The tow inventory that Mr. Smith later obtained alleged that the car was towed because Mr. Smith was a "scofflaw," citing California Vehicle Code section 22651(i), which gives enforcement agencies the discretion to tow a vehicle with more than five delinquent parking tickets.

53.     Mr. Smith's car was not disabled or impeding traffic, and it posed no public safety or traffic related exigency that required that Defendant SFMTA to order Mr. Smith's car towed without providing pre-tow notice.

54.     Mr. Smith is aware of no attempts Defendant SFMTA made to collect the parking citation debt beyond mailed notices, which Mr. Smith received for some, but not all, of the citations.

55.     At the time the car was towed, the oldest parking citation was less than three months overdue.

56.     Mr. Smith's car was held for 111 days as a result of Mr. Smith's inability to pay.

57.     After the filing of this lawsuit, Defendants agreed to return Mr. Smith's car, and hold the tow and storage fees in abeyance during the pendency of the suit. Mr. Smith received his car back on April 18, 2018. However, Defendants continue to assert that he is required to pay over $7,000 in towing and storage fees as a result of Defendants' seizure of Mr. Smith's vehicle.

58.     Before filing this lawsuit, Mr. Smith attempted to get his car back through administrative channels.

59.     Between January 11 and January 17, 2018, Mr. Smith, through counsel, attempted to arrange for an alternative way to resolve the parking and towing fines and fees other than paying the full amount up front.

60.     SFMTA's websites states: "If your vehicle is still in storage and you cannot afford to get it out, you must schedule an immediate hearing by calling (415) 701-5400 or going to the

SFMTA Customer Service Center at 11 South Van Ness Ave. in San Francisco."

61.     Mr. Smith requested a post-tow hearing before the SFMTA, which was conducted on January 19, 2018. The officer refused to consider Mr. Smith's constitutional claims and asserted that the SFMTA only authorized him to consider whether five or more citations had been issued. The hearing officer informed Mr. Smith that the post-tow hearing before SFMTA was "not the proper forum" for his claims and that the agency is "not allowed to take into consideration the economic status of the person." Mr. Smith was unable to obtain the release of his vehicle through the administrative post-tow hearing process.

62.     The SFMTA hearing officer issued a final agency determination finding that the tow was valid.

63.     Defendant SFMTA's decision makes no findings on the constitutional grounds on which Mr. Smith challenged the tow.

64.     When his car was towed, Mr. Smith lost his primary shelter, and spent most nights sleeping outside, in bus stops, or in doorways. This was the first time he had been homeless and had to sleep on the street.

65.     During the 111 days Mr. Smith did not have his car, he tried to stay in shelters, but the shelter waiting list in San Francisco has over 1000 people on it. He tried waiting in line for one-night shelter vacancies, but standing or sitting for long periods of time each day was too physically taxing on account of his disability.

66.     Homeless people are more likely than the average person to be the victims of violent crime.[1] One night in January 2018, without the protection of his car, Mr. Smith was sleeping in a doorway. At approximately 4:00 a.m., Mr. Smith was awakened by people kicking him and demanding his wallet. When he initially refused, one of them kicked him in the face. He gave them the wallet, and has since had trouble accessing his money as a result of identity theft.

67.     As a result of being robbed and beaten, Mr. Smith has suffered a great deal of fear and anxiety.

---

[1] Meinbresse, Molly et al. Exploring the Experiences of Violence Among Individuals Who Are Homeless Using a Consumer-Led Approach. Violence and Victims, Volume 29, Number 1, 2014 at 123.

68.     Mr. Smith's health deteriorated after his car was towed. His already severe knee and back pain increased once he began having to spend nights outside sleeping in the cold and on hard surfaces. Mr. Smith also suffered the negative health impacts of sleep deprivation. For instance, Mr. Smith had a long bout of the flu while spending most nights on the street, and the physical pain from his disability has been aggravated by sleeping on concrete.

69.     Homeless people are 3-4 times more likely to die prematurely than the average person.[2] A 2016 study from the University of California, San Francisco found that significant periods of homelessness can reduce a person's life expectancy by an average of 25 years.

70.     Although he now has his car back, Mr. Smith continues to experience physical, mental, and financial effects of having been homeless and sleeping on the street.

71.     Mr. Smith remains at risk of having his car towed again. His financial circumstances remain dire, and he cannot afford to pay the amounts that Defendants have assessed against him for parking tickets or for their seizure of his vehicle. He is at immediate risk of accruing additional unpaid parking tickets, and again having his car towed by Defendants pursuant to the policy and practice challenged herein.

**SFMTA's Towing Policy and Practice**

72.     Defendants towed Plaintiffs' vehicles pursuant to their official policy and practice of towing vehicles that have five or more unpaid parking tickets.

73.     Defendants' policy and practice is to tow vehicles with unpaid parking tickets without a warrant, and without providing pre-tow notice. This policy was confirmed by the hearing officers, speaking for Defendant SFMTA, at both Mr. Smith's and Mr. Kayode's tow hearings.

74.     Defendants implement their policy and practice of warrantless tows even where there is no emergency, threat to public safety, or obstruction of traffic.

75.     Defendants' policies permit only a post-tow hearing, and even then Defendants prevent vehicle owners from confronting the officer who ordered the tow. SFMTA does not as a

---

[2] O'Connell, J.J. Premature Mortality in Homeless Populations: A Review of the Literature. Nashville: National Health Care for the Homeless Council, Inc., 2005 at 13.

matter of policy and practice give towed vehicle owners the evidence the SFMTA relied upon to justify the tow in advance of the hearing. They also deny vehicle owners the ability to challenge the tow on constitutional grounds, or to demonstrate that the tow was improper because the vehicle owner is unable to pay the parking tickets or towing fees.

76.     Defendants SFMTA and AutoReturn are parties to a contract under which SFMTA pays AutoReturn an annual flat-rate fee of $7,984,272 to tow vehicles on behalf of SFMTA. Pursuant to the contract, SFMTA must also pay AutoReturn a per-vehicle charge that includes, at minimum, the following: $66.55 for a tow fee, $40.63 for a dolly/flatbed fee, $31.05 for a transfer fee when stored cars are moved, and, once a vehicle is sold, SFMTA pays $15.42 for a lien sale fee, and $73.59 for an auction fee—totaling $227.24 per towed vehicle. The City of San Francisco must pay these fees even if the tow is later found invalid. If the legal basis for the tow is upheld, the owner of the vehicle has to either pay an amount that is higher than the City's fee or forfeit the vehicle to a lien sale.

77.     On information and belief, AutoReturn is reimbursed for the costs of towing and storage using the profits from lien sales of vehicles that are not recovered by the registered vehicle owners. SFMTA recoups any of its fines and fees only if the value of the vehicle is more than the cost to reimburse AutoReturn's fees in full.

78.     The daily rate for storage at Defendant AutoReturn's San Francisco facility is $71. Defendant AutoReturn's San Francisco storage lot is at 450 7th Street. The daily rate for other parking lots in that same neighborhood is approximately $30.

79.     SFMTA does not provide a reasonable reduction in the cost of tow and storage charges for individuals with little income or those on public benefits. According to Defendant SFMTA's website, the low-income towing fee reduction deducts only a flat reduction of $180 from the total amount owed in tow and storage fees. This reduction is insufficient for most low-income people, including Plaintiffs, to afford to pay the full amount required to retrieve a vehicle, which is $557 on average—the highest towing fee in the nation. Even if a driver immediately sought the return of her car, the debt collection practice under which Plaintiffs' cars were towed requires a driver to pay the cost of five parking tickets; this nominal reduction program does

1    nothing to address the costs of those out-of-reach fines and fees.

2                              **LEGAL FRAMEWORK**

3    **A.      The Tow Constitutes an Unreasonable Seizure Under the Fourth Amendment**

4           **to the United States Constitution.**

5           80.     The Fourth Amendment to the United States Constitution prohibits "unreasonable

6    searches and seizures" of a person's property. U.S. Const. Amend. IV.

7           81.     A seizure "occurs when there is some meaningful interference with an individual's

8    possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

9           82.     Impounding a vehicle constitutes a seizure within the meaning of the Fourth

10   Amendment. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005).

11          83.     Warrantless seizures are "per se unreasonable under the Fourth Amendment—

12   subject only to a few specifically established and well delineated exceptions." *Minnesota v.*

13   *Dickerson*, 508 U.S. 366, 372 (1993). The only warrant exception relevant to vehicle

14   impoundment is for "community caretaking." *Miranda*, 429 F.3d at 862.

15          84.     The community caretaking exception permits warrantless towing "only to

16   impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic."

17   *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017); *see also South Dakota v. Opperman*, 428

18   U.S. 364, 369 (1976). No exception to the Fourth Amendment's warrant requirement permits

19   warrantless vehicle tows for the purpose of satisfying a municipal debt.

20          85.     Defendants' warrantless tows of Plaintiffs' vehicles were unreasonable because

21   they did not fall into the community caretaking exception—or any other exception—to the Fourth

22   Amendment's requirement that a warrant be obtained prior to seizure.

23          **B.      Lack of Notice and Inadequate Opportunity to Be Heard Violate the**

24          **Procedural Due Process Clause of the Fourteenth Amendment.**

25          86.     A state cannot "deprive any person of life, liberty, or property, without due process

26   of law." U.S. Const. Amend. XIV.

27          87.     The process due depends on "the private interest that will be affected by the

28   official action," "the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

88.　Pre-deprivation notice has been required in the context of tows unless there is "an emergency, []or if notice would defeat the entire point of the seizure, []or when the interest at stake is small relative to the burden that giving notice would impose." *Clement v. City of Glendale*, 518 F.3d 1090, 1093-94 (9th Cir. 2008).

89.　The use of one's automobile is a significant interest compared to the small burden of notice. *Id.* at 1094; *Scofield v. City of Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988) ("The uninterrupted use of one's vehicle [on public roads] is a significant and substantial private interest.").

90.　"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The most meaningful time to be heard regarding a vehicle tow is *before* the tow occurs.

91.　Due process also includes the opportunity to examine the evidence on which the hearing officer relies or to confront the towing officer. *See Mathews*, 424 U.S. at 335.

**C.　Seizing Property As a Means of Satisfying Municipal Debt Violates Due Process and Equal Protection under the Fourteenth Amendment.**

92.　Applying the principles of both Due Process and Equal Protection, the Supreme Court has held it is "fundamentally unfair" to punish indigent individuals for their inability to pay fines and fees. *See Bearden v. Georgia*, 461 U.S. 660, 668–69 (1983) (holding that it is unconstitutional to revoke probation for failure to pay a fine); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956) (holding that it is fundamentally unfair to deny access to an appeal solely because of inability to pay court costs).

93.　The *Bearden* analysis requires that an ability-to-pay determination be part of the pre-punishment process, and requires the consideration of alternatives to punishment. *Bearden*,

461 U.S. at 674 (finding punishment unconstitutional because it was imposed "simply because [the person] could not pay the fine, without considering the reasons for the inability to pay or the propriety of reducing the fine or extending the time for payments or making alternative orders.").

**D.** **Seizing Property As a Means of Satisfying Municipal Debt Constitutes Trespass to Chattels and Conversion.**

94. Trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1565 (1996).

95. Alleging that a vehicle has been towed and held for a prolonged time in storage with exorbitant tow and storage fees is sufficient to state a claim for trespass to chattels. *Garcia v. City of King*, 2017 WL 5194519, at *9 (N.D. Cal. Nov. 9, 2017).

96. Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the Plaintiffs' ownership or right to possession of the property; (2) the Defendants' conversion by a wrongful act or disposition of property rights; and (3) damages. *See Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015).

97. The wrongful act in question need not be undertaken in bad faith to be the basis of a conversion claim; intent is not relevant to the analysis. *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014) (finding that in deciding a conversion claim, "questions of the Defendant's good faith, lack of knowledge, and motive are ordinarily immaterial").

**FIRST CLAIM FOR RELIEF**

**Right to Due Process of Law under the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983)**

98. Plaintiffs re-allege and incorporate by reference each allegation contained in paragraphs 1 through 97, inclusive.

99. The Due Process Clause requires the government to provide meaningful notice and opportunity to be heard prior to depriving individuals of their property.

100. Defendants towed Plaintiffs' vehicles in violation of the Due Process Clause because they failed to provide either Mr. Smith or Mr. Kayode with meaningful notice and

opportunity to be heard.

101. Defendants, acting under color of state law, violated and continue to violate Due Process by their official policy and practice of:

    a.    failing to provide meaningful notice of an impending tow;

    b.    failing to provide a meaningful opportunity to be heard at a meaningful time—the crucial time being *before* the tow; and

    c.    failing to provide a meaningful opportunity to be heard at a tow hearing, including by failing to make available the evidence relied on at the tow hearing; by failing to make available the officer who ordered the tow for examination at the tow hearing; by failing to consider constitutional claims at the tow hearing; failing to consider inability to pay at the tow hearing; and by failing to consider any facts beyond the existence of five delinquent parking tickets when determining the validity of the tow and continued storage of a vehicle.

102. Defendants' acts and omissions were intentional or deliberately indifferent to the likely outcome that property would be seized and held without due process of law.

103. Defendants' above-described policies, practices and conduct violate Plaintiffs' right to due process of law under the Fourteenth Amendment of the United States Constitution.

104. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein. Defendants have made it plain by their actions, the ongoing nature of their activities, and their public statements that they intend to continue the unlawful conduct described above through their policy and practice unless and until restrained by an injunctive decree of this Court.

105. As a direct and proximate consequence of Defendants' actions and unconstitutional practices, Mr. Kayode continues to suffer harm from the impoundment of his car.

106. If Mr. Kayode retrieves his car, he will be at immediate risk of having his car towed again by Defendants without notice or opportunity to be heard, pursuant to Defendants' policy and practice of towing vehicles for unpaid parking tickets.

107. As a direct and proximate consequence of Defendants' actions and unconstitutional practices, Mr. Smith suffered and continues to suffer harm resulting from the impoundment of his vehicle.

108. Defendants assert that Mr. Smith now owes them more than $7,000 arising out of the illegal tow, and Mr. Smith continues to be at risk of having his car towed again without notice or opportunity to be heard, pursuant to Defendants' policy and practice.

109. An actual controversy exists between Plaintiffs and Defendants in that Defendants have engaged in the unlawful and unconstitutional conduct as alleged herein and intend to continue this unlawful conduct as an ongoing practice and policy, whereas Plaintiffs claim that these practices are unlawful and unconstitutional and therefore seeks a declaration of rights with respect to this controversy.

## SECOND CLAIM FOR RELIEF

**Right to Be Secure from Unreasonable Seizures under the Fourth Amendment to the United States Constitution (42 U.S.C. § 1983)**

110. Paragraphs 1 through 109 are incorporated herein by reference.

111. The Fourth Amendment requires that seizures of property, including vehicle tows, be reasonable. Towing a vehicle without a warrant violates the Fourth Amendment unless there is an applicable exception to the warrant requirement.

112. Defendants towed Plaintiffs' cars while acting under color of state law, and pursuant to their policy and practice of towing cars for unpaid parking tickets without a warrant, without notice, and without any public safety or urgent traffic convenience purpose.

113. Defendant AutoReturn continues to hold Mr. Kayode's car without any public safety or traffic convenience purpose.

114. Defendants' actions were intentional and deliberately indifferent to the harm they would cause to Plaintiffs.

115. Defendants' seizure of Plaintiffs' cars deprived them of their right to be free of unreasonable seizure of their property.

116. Defendants' towing of Plaintiffs' cars was unreasonable because it was conducted

without a warrant, and there is no applicable exception to the warrant requirement: Both Mr. Smith's and Mr. Kayode's cars were operational, safely parked, not obstructing traffic, and posed no threat nor created any exigency justifying warrantless tow.

117. As a direct and proximate consequence Defendants' act and unconstitutional practices, Mr. Kayode continues to suffer from the seizure and impoundment of his car, which is his means of employment, part-time shelter, and only asset. Even if Mr. Kayode retrieves his car, he will be at immediate risk of having his car towed again by Defendants without warrant, pursuant to their towing practices.

118. As a direct and proximate consequence of Defendants' actions and unconstitutional practices, Mr. Smith suffered and continues to suffer harm from the impoundment of his vehicle. Defendants assert that Mr. Smith now owes them more than $7,000 arising out of the illegal tow, and Mr. Smith continues to be at risk of having his car towed again without warrant, pursuant to Defendants' towing practices.

119. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein.

120. Defendants have demonstrated by their actions, the ongoing nature of their activities, and their public statements that they intend to continue the unlawful conduct described above through their policy and practice unless and until restrained by an injunctive decree of this Court.

121. An actual controversy exists between Plaintiffs and Defendants in that Defendants have engaged in the unlawful and unconstitutional conduct as alleged herein and intend to continue this unlawful conduct as an ongoing practice and policy, whereas Plaintiffs claim that these practices are unlawful and unconstitutional and therefore seek a declaration of rights with respect to this controversy.

## **THIRD CLAIM FOR RELIEF**

**Equal Protection under the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983)**

122.    Paragraphs 1 through 121 are incorporated herein by reference.

123.    The Equal Protection Clause and the Due Process Clause prohibit governments from punishing indigent individuals for their inability to pay fines and fees.

124.    Defendants' tow of Plaintiffs' cars punished them for their inability to pay parking tickets by depriving Plaintiffs of their cars until their fines are paid.

125.    Defendants were acting under color of state law when they towed Plaintiffs' cars, and the tows were implemented pursuant to their official policy and practice of towing vehicles for failure to pay parking tickets. This official policy and practice impermissibly classifies and punishes similarly situated persons differently on the basis of wealth. People who can afford to pay parking tickets can easily pay and avoid the towing of their vehicle; for those who cannot afford the tickets, the resulting tow constitutes punishment for being poor.

126.    Towing a vehicle of an indigent person or a person who is unable to pay the high cost of parking tickets does not serve a rational, much less a compelling, governmental interest.

127.    By towing Plaintiffs' vehicles for unpaid fines and fees, without assessing their ability to pay those fines and fees, Defendants violated Plaintiffs' right to equal protection and due process.

128.    Defendants' actions intentional and deliberately indifferent to the harm they would cause to Plaintiffs.

129.    As a direct and proximate consequence of Defendants' acts and unconstitutional practices, Mr. Kayode continues to suffer from the seizure and impoundment of his car, which is his means of employment, alternative shelter, and only asset. If Mr. Kayode retrieves his car, he will be at immediate risk of having his car towed again by Defendants, pursuant to Defendants' policy and practice of towing vehicles for unpaid parking tickets.

130.    As a direct and proximate consequence of Defendants' actions and unconstitutional practices, Mr. Smith suffered and continues to suffer harm from the

1    impoundment of his vehicle. Defendants assert that Mr. Smith now owes them more than $7,000

2    arising out of the illegal tow, and Mr. Smith continues to be at risk of having his car towed again

3    pursuant to Defendants' towing practices.

4        131.    Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs

5    described herein.

6        132.    Defendants have demonstrated by their actions, the ongoing nature of their

7    activities, and their public statements that they intend to continue the unlawful conduct described

8    above through their policy and practice unless and until restrained by an injunctive decree of this

9    Court.

10       133.    An actual controversy exists between Plaintiffs and Defendants in that Defendants

11    have engaged in the unlawful and unconstitutional conduct as alleged herein and intend to

12    continue this unlawful conduct as an ongoing practice and policy, whereas Plaintiffs claim that

13    these practices are unlawful and unconstitutional, and therefore seeks a declaration of rights with

14    respect to this controversy.

15                    **FOURTH CLAIM FOR RELIEF**

16        **Conversion and Trespass to Chattels as to Plaintiff Sean Kayode**

17       134.    Paragraphs 1 through 133 are incorporated herein by reference.

18       135.    Mr. Kayode was at all relevant times the owner of his vehicle, which was seized

19    and is still being held by Defendants. Mr. Kayode remains entitled to the possession of his car.

20       136.    Defendants continues to interfere with and deny Mr. Kayode possession of his

21    property. Mr. Kayode has made a demand for the return of his car, which was denied by a hearing

22    officer acting on behalf of SFMTA.

23       137.    Defendants' above-described policies, practices and conduct denied Mr. Kayode

24    the possession of his property and constitute an unlawful conversion of that property to the

25    possession and control of Defendants.

26       138.    As a direct and proximate consequence of Defendants' conduct, Mr. Kayode

27    continues to suffer harm from the seizure and impoundment of his car, and thus is entitled to

28    damages.

**FIFTH CLAIM FOR RELIEF**

**Conversion and Trespass to Chattels as to Plaintiff James Smith**

139.    Paragraphs 1 through 133 are incorporated herein by reference.

140.    Mr. Smith was at all relevant times the owner of his vehicle, which was seized and held by Defendants for 111 days.

141.    Defendants interfered with and denied Mr. Smith possession of his property. Mr. Smith made a demand for the return of his car, which was only granted after nearly three months of tow and storage fees accrued.

142.    Defendants' above-described policies, practices and conduct denied Mr. Smith the possession of his property and constitute an unlawful conversion of that property to the possession and control of Defendants.

143.    As a direct and proximate consequence of Defendants' conduct, Mr. Smith suffered, and continues to suffer, harm from the seizure and impound of his car, and thus is entitled to damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.    For a permanent injunction requiring Defendants and their agents to:

    a.    immediately cease vehicle impoundment and demanding payment of impound fees where the impoundment is not related to a caretaking function and is undertaken for the purpose of satisfying a municipal debt;

    b.    immediately cease vehicle impoundment and demanding payment of impound fees where no notice of the impending tow is given to the car owner and there is no caretaking exigency that necessitates an immediate tow; and

    c.    amend Defendant SFMTA's stated policy of not providing notice to vehicle owners prior to a non-emergency tow.

2.    For a declaratory judgment that Defendants' policies, practices, and conduct as alleged herein were in violation of Plaintiffs' rights under the United States

1    Constitution;

2    3.    For the return of Mr. Kayode's vehicle at no cost to Mr. Smith;

3    4.    For the elimination of any and all tow fees charged to Mr. Kayode;

4    5.    For the elimination of any and all tow fees charged to Mr. Kayode;

5    6.    For damages proximately and actually caused by the tow and impoundment of Mr.

6          Kayode's vehicle;

7    7.    For damages proximately and actually caused by the tow and impoundment of Mr.

8          Smith's vehicle;

9    8.    For punitive and exemplary damages to be determined in accordance with proof;

10   9.    For an order granting Plaintiffs' costs and attorneys' fees; and

11   10.   For such other relief as the Court may deem just and proper.

12                          **<u>JURY TRIAL DEMAND</u>**

13   Plaintiffs demand a jury trial of all issues triable by a jury.

14   Dated:    May 4, 2018                    MANATT, PHELPS & PHILLIPS, LLP

16                                  By: <u>/s/ Christopher A. Rheinheimer</u>
                                        Christopher A. Rheinheimer
17                                      Attorneys for *Plaintiffs*
                                        JAMES SMITH and SEAN KAYODE