1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   JAMES SMITH and SEAN KAYODE,              No. C 18-01239 JSW

12            Plaintiffs,

13      v.

14   EDWARD D. REISKIN, in his official capacity    **ORDER GRANTING MOTION FOR**
     as the Director of Transportation of the San   **PRELIMINARY INJUNCTION**
15   Francisco Municipal Transportation Agency; the
     SAN FRANCISCO MUNICIPAL
16   TRANSPORTATION AGENCY; TEGSCO LLC
     dba SAN FRANCISCO AUTORETURN,

17            Defendants.

18   _____/

19

20          Now before the Court is the motion for a preliminary injunction filed by Plaintiff Sean

21   Kayode mandating that Defendants return Mr. Kayode's car without charge until he is afforded a

22   final determination on the merits as to the unlawfulness of Defendants' seizure of his car as a

23   method to collect a municipal debt.

24                                    **BACKGROUND**

25          Mr. Kayode moved this Court for a preliminary injunction ordering Defendants to return his

26   car which he claims to use as his sole source of income and for part-time shelter in the event his

27   temporary shelter housing is no longer available.  The car remains impounded by Defendants as a

28   result of a tow in early March 2018.  The tow was effectuated under California Vehicle Code

United States District Court
For the Northern District of California

Section 22651(i) which authorizes local parking authorities to tow a car that has received five or more parking citations which have gone unpaid for more than 21 days, and not to return the car to its owner absent proof that all outstanding citations have been paid.

The record demonstrates that, while living in a temporary shelter to escape homelessness, Mr. Kayode worked delivering food and received 30 parking citations in the ten months preceding the tow. Although Mr. Kayode attempted to resolve some of the outstanding citations, paying what he could afford to at the time and removing himself from the City's "booting" list, he was unable to pay the remaining tickets. On March 5, 2018, with the battery dead and the car parked nearby the homeless shelter where Mr. Kayode was staying, the car received another citation for being illegally parked during street cleaning hours. The car was then towed. The total sum Mr. Kayode would need to pay to recover his car from impound, including the amount payable for outstanding parking citations and the fees and charges related to the towing and storage of the car is $11,116.75, significantly more than the value of the car, and well in excess of a sum that Plaintiff can afford.

The Court shall address additional relevant facts in the remainder of its order.

## ANALYSIS

**A.      Legal Standards Applicable to a Motion for Preliminary Injunction.**

In order to obtain a preliminary injunction, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) (citations omitted). The *Winter* court also noted that because injunctive relief is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Thus, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (citing *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). In addition, where the government is a party, the public interest and the balance of equities factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "In exercising their sound discretion, courts of equity should pay particular regard for the

United States District Court

For the Northern District of California

2

United States District Court
For the Northern District of California

1   public consequences in employing the extraordinary remedy of injunction.'" *Id.* (citing *Weinberger*

2   *v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

3          The Ninth Circuit has stated its "serious questions" sliding scale approach survives *Winter*,

4   whereby a court may grant preliminary injunctive relief if a plaintiff demonstrates "that serious

5   questions going to the merits were raised and the balance of the hardships tips sharply in the

6   plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)

7   (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008), *overruled on other*

8   *grounds by Winter*, 555 U.S. at 22)).

9               [F]or the purposes of injunctive relief, "serious questions" refers to questions
10              which cannot be resolved one way or the other at the hearing on the
                injunction and as to which the court perceives a need to preserve the status
11              quo lest one side prevent resolution of the questions or execution of any
                judgment by altering the status quo. Serious questions are "substantial,
12              difficult and doubtful, as to make them a fair ground for litigation and thus
                for more deliberative investigation." *Hamilton Watch Co. v. Benrus Watch*
13              *Co.*, 206 F.2d 738, 740 (2d Cir. 1952) (Frank, J.). Serious questions need not
                promise a certainty of success, nor even present a probability of success, but
14              must involve a "fair chance of success on the merits." *National Wildlife*
                *Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985) (Duniway, J.).

15  *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988). Whether a plaintiff

16  establishes a likelihood of success on the merits or establishes serious questions going to the merits,

17  that plaintiff still must show the likelihood of irreparable harm and that the public interest favors an

18  injunction. *Cottrell*, 632 F.3d at 1135.

19         The burden on a plaintiff challenging the operation of a statute is particularly heavy because

20  "it is clear that a state suffers irreparable injury whenever an enactment of its people or their

21  representatives is enjoined." *Coalition for Econ. Equity v. Wilson*, 122 F.3d 781, 719 (9th Cir.

22  1997). A more rigorous standard "reflects the idea that governmental policies implemented through

23  legislation or regulations developed through presumptively reasoned democratic processes are

24  entitled to a higher degree of deference and should not be enjoined lightly." *Planned Parenthood*

25  *Minnesota v. Rounds,* 530 F.3d 724, 731 (8th Cir. 2008) (citing *Able v. United States*, 44 F.3d 128,

26  131 (2d Cir. 1995) (per curiam)). A preliminary injunction "should not be granted unless the

27  movant, *by a clear showing*, carries the burden of persuasion" and presents proof even more

28

3

1   substantial than that required on a motion for summary judgment.  *See id.* at 736 (emphasis in

2   original) (citing *Mazurek,* 520 U.S. at 972).

3   **B.      Serious Questions Go To Merits.**

4          There is no question that the impoundment of a vehicle is a seizure within the meaning of the

5   Fourth Amendment.  A seizure results if "there is some meaningful interference with an individual's

6   possessory interests in that property."  *Soldal v. Cook County*, 506 U.S. 56, 61 (1992).  "The Fourth

7   Amendment protects against unreasonable interferences in property interests regardless of whether

8   there is an invasion of privacy."  *Id.* at 62-64.  "A seizure is conducted without a warrant is per se

9   unreasonable under the Fourth Amendment – subject to only a few specifically established and well

10  delineated exceptions.  The burden is on the Government to persuade the district court that a seizure

11  comes under on of a few specifically established exceptions to the warrant requirement."  *United*

12  *States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (internal citations omitted).

13         The "decision to impound pursuant to the authority of a city ordinance and state statute does

14  not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment."

15  *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005).  "The question in this Court upon

16  review of a state-approved search or seizure is not whether the search (or seizure) was authorized by

17  state law.  The question is rather whether the search was reasonable under the Fourth Amendment."

18  *Id.* (quoting *Sibron v. New York*, 392 U.S. 40, 61 (1968)).  Accordingly, in the balance of whether

19  there are serious questions that go to the merits, this Court is obligated to determine whether the

20  seizure and retention of Mr. Kayode's vehicle was constitutionally reasonable or subject to an

21  exception of the warrant requirement.  *See also* Assembly Bill No. 2876 (emphasis added) ("Judicial

22  precedent deems the warrantless removal of a vehicle a seizure subject to the protections of the

23  Fourth Amendment of the Constitution of the United States that is permissible only pursuant to a

24  recognized exception to the warrant requirement. . . . This bill would clarify that the removal of a

25  vehicle as authorized by California statute is *also required to be constitutionally reasonable based*

26  *on the specific situation*.")

27         One of the recognized exceptions to the warrant requirement is the community caretaking

28  doctrine, which allows the impoundment of a vehicle that may "jeopardize public safety and the

*United States District Court*
For the Northern District of California

4

efficient movement of vehicular traffic." *South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976). "Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." *City of Cornelius*, 429 F.3d at 864 (citations omitted). However, both parties agree here that Mr. Kayode's vehicle was not seized as a result of the community caretaking doctrine as it was not parked in a manner that would jeopardize public safety or the efficient movement of vehicular traffic. Both parties agree that the seizure of the car was not justified by exigent circumstances or because either the car or Mr. Kayode were involved in criminal conduct. *See, e.g., Florida v. White*, 526 U.S. 559, 563-65 (1999).

Accordingly, in order to establish that the seizure and retention of the car was constitutionally reasonable based on the specific situation, Defendants argue that their impoundment of the car was proper in an effort to secure repayment of the debt owed by Mr. Kayode for his previous parking tickets under Vehicle Code Section 22651(i). *See, e.g., Tate v. District of Columbia*, 627 F.3d 904, 911 n.7 (D.C. Cir. 2010) (distinguishing the community caretaking rationale from "booting and subsequent impoundment, like other ticketing measures, have a deterrent and remedial purposes – they deter and punish delinquent payment of fines."). Towing of the vehicle pursuant to the authority of an ordinance permitting seizure for repeated non-payment of parking fees does not, in and of itself, justify the seizure. Rather, Defendants must establish that the seizure was not inconsistent with the mandates of the Fourth Amendment. Neither party nor the Court could find persuasive or binding authority to support a recognized exception to the warrant requirement under these circumstances. *See City of Cornelius*, 429 F.3d 864 n.4 ("the impoundment of a legally-parked vehicle is not necessary to enforce traffic regulations and requires some additional justification"). It is not clear from the precedent cited by either party that Defendants can justify the seizure and retention of a vehicle if its owner cannot afford the parking tickets levied upon the vehicle solely on the basis offered here, that seizure is reasonable in an effort to secure repayment of the debt owed. *See e.g., Bearden v. Georgia*, 461 U.S. 660, 667 (1983) (the court must take into account the indigent's ability to pay to determine appropriate and adequate penalty).

United States District Court
For the Northern District of California

5

1    Accordingly, the Court finds that serious questions remain making the issue a "fair ground for

2    litigation and thus for more deliberative investigation." *Hamilton Watch Co.,* 206 F.2d at 740.

3    **C.      Balance of Hardships.**

4           Mr. Kayode contends that, as result of the seizure of his vehicle, he is no longer able to

5    perform his work as a delivery driver, to earn a living, and to attempt to repay the tickets and escape

6    the cycle of homelessness.  Because Mr. Kayode is homeless, he is more vulnerable to the potential

7    irreparable injury of continued unemployment and the harm associated with the deprivation of his

8    personal effects and method of work and transportation.  *See, e.g., Lavan v. City of Los Angeles*, 693

9    F.3d 1022, 1032 (9th Cir. 2012) ("For many of us, the loss of our personal effects may pose a minor

10   inconvenience.  However . . . the loss can be devastating for the homeless.").

11          Defendants contend that the imposition of fines and the incentive for compliance are an

12   appropriate exercise of the City's legitimate police powers to enforce parking and traffic laws and

13   ensure public safety.  *See, e.g., In re Thomas*, 335 B.R. 166, 174 (2006) ("Parking laws promote the

14   safe and efficient flow of traffic through the City, and this protect the health and safety of City

15   residents.").

16          The Court considers the interests of both parties and finds, under the circumstances presented

17   here, the balance of hardships tips in favor of Mr. Kayode.  During the interim time prior to a final

18   determination on the merits of his claims, the Court finds that the return of the vehicle will enable

19   Mr. Kayode to continue to support himself and that the City's interest in seeking compliance with

20   the parking violations will be assuaged by allowing Mr. Kayode to participate in the City's new

21   payment program and by performing community service in order to work toward paying off the

22   outstanding tickets.[1]

23          In the balance, the Court finds that the hardships tips in favor of issuing the preliminary

24   injunction as there is a serious risk that Mr. Kayode will suffer irreparable harm unless an injunction

25

26

27          [1]      During oral argument on this motion, Defendants' counsel represented that Mr. Kayode
     would qualify for the City's program which permits the indigent to perform community service and
28   enroll in a payment plan to attempt to resolve payment of the tickets.  These programs are not available
     to Mr. Kayode while his car is impounded.

issues. *See Lopez v. Hackler*, 713 F.2d 1432, 1437 (9th Cir. 1983) (balancing relative hardships of the indigent litigant and government when assessing whether preliminary injunction should issue).

**CONCLUSION**

Accordingly, for good cause shown, the Court GRANTS Sean Kayode's motion for a preliminary injunction.  Defendants shall return Plaintiff's car without charge until Plaintiff is afforded a determination on the merits as to the lawfulness of Defendants' seizure of his car as a method to collect a municipal debt.

**IT IS SO ORDERED.**

Dated:  October 10, 2018

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

7